

USAO#2005R00423

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 05-249 (JLL) |
| | : | |
| v. | : | 18 U.S.C. §§ 371, 1512 & 2 |
| | : | 26 U.S.C. §§ 7206(1) & 7206(2) |
| MARCI PLOTKIN | : | |
| STANLEY BEKRITSKY | : | |
| RICHARD STADTMAUER | : | |
| ANNE AMICI | : | |

## S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury in and for the District of New Jersey,
sitting at Newark, charges:

### COUNT 1

#### Conspiracy to Impede and Impair the Functions of the IRS and Aid and Assist the Filing of False Tax Returns

##### Defendants and Entities

At all times relevant to this Indictment:

1. Defendant MARCI PLOTKIN, a resident of North Caldwell,
New Jersey, was a certified public accountant and employed as a
principal by an Accounting Firm (the "Accounting Firm") that
specialized in servicing the real estate industry and was located
in Roseland, New Jersey.  Defendant MARCI PLOTKIN's duties as a
principal included the preparation and oversight of the
preparation of tax returns for certain clients of the Accounting
Firm.

2.  Defendant STANLEY BEKRITSKY, a resident of Teaneck, New

1

Jersey, was a certified public accountant and a partner in the
Accounting Firm.  Defendant STANLEY BEKRITSKY was the designated
tax partner for the Accounting Firm and as such advised the other
partners, as well as the principals and other accounting staff,
on tax matters that arose in the course of their work for the
Accounting Firm.  His duties also included reviewing and
overseeing the preparation of tax returns and financial
statements, and signing tax returns on behalf of the Accounting
Firm for certain clients of the Accounting Firm.

        3.  Defendant ANNE AMICI, a resident of Point Pleasant, New
Jersey, was a certified public accountant who performed work for
the Accounting Firm as a contract employee.

        4.  Defendant RICHARD STADTMAUER was a certified public
accountant and an attorney, and acted as the Vice-Chairman,
Managing Partner and Vice-President of a business entity that
encompassed over one hundred residential, office, hotel, and
commercial real estate partnerships, limited liability
corporations and management companies (the "Real Estate
Partnerships"), which were located primarily in the New
Jersey/New York area, and were controlled by co-conspirator
Partner 1.  Defendant RICHARD STADTMAUER was a partner or
shareholder in many of the Real Estate Partnerships, and was co-
owner of the management company for the Real Estate Partnerships
(the "Management Company").  Defendant RICHARD STADTMAUER was

2

responsible at the Real Estate Partnerships for overseeing
financial matters, including approving expenditures, signing
checks on behalf of the Management Company, creating and
approving financial statements, and signing tax returns for the
Real Estate Partnerships.

5.   Certain of the Real Estate Partnerships owned property
and/or conducted business as follows:

A.   Partnership 1 owned a 1224-unit residential
apartment development in Flanders, New Jersey.

B.   Partnership 2 owned a 666-unit residential
apartment development in Elmwood Park, New Jersey.

C.   Partnership 3, comprised of Partnership 3a,
Partnership 3b and Partnership 3c, collectively owned a 1032-unit
residential apartment development in Plainsboro, New Jersey.
Partnership 3 maintained combined checking accounts and books and
records which were then allocated for income tax purposes based
on percentage of land ownership as follows: Partnership 3a -
37.21%; Partnership 3b - 43.41%; and Partnership 3c - 19.38%.

D.   Partnership 4 owned a business entity that, in
turn, owned a 440-unit residential apartment development in
Plainsboro, New Jersey.

E.   Partnership 5 owned a 203-unit residential
apartment development in Elizabeth, New Jersey.

F.   Partnership 6 owned a 162-unit residential

3

apartment development in Mt. Arlington, New Jersey.

G.   Partnership 7 owned a 412-unit residential apartment development in Eatontown, New Jersey.

H.   The Management Company, which was owned by defendant RICHARD STADTMAUER and co-conspirator Partner 1, operated as a property management company and collected a management fee from each of the Real Estate Partnerships.

## The Conspiracy

6.   From in or about 1997 to in or about April 2003, in Morris, Essex and Ocean Counties, in the District of New Jersey and elsewhere, defendants

> MARCI PLOTKIN,
> STANLEY BEKRITSKY,
> RICHARD STADTMAUER,
> and
> ANNE AMICI

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others to:

A. Defraud the United States and the Internal Revenue Service ("IRS") of the United States Department of Treasury by impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS to ascertain, compute, assess, and collect income and payroll taxes; and

B. Aid and assist in, and procure, counsel, and advise the preparation and presentation of U.S. Partnership Tax Returns, IRS Forms 1065, which were fraudulent and false as to

4

material matters, contrary to Title 26, United States Code,
Section 7206(2).

## Objects of the Conspiracy

7. It was an object of the conspiracy that defendants MARCI
PLOTKIN, STANLEY BEKRITSKY, RICHARD STADTMAUER and ANNE AMICI,
and others would subvert the function of the IRS to ascertain,
compute, assess, and collect income taxes by fraudulently
concealing from the IRS the true net income of the Real Estate
Partnerships through the overstatement of deductible business
expenses and other means, and thereby cause the understatement of
income reported by the Real Estate Partnerships' partners.
It also was an object of the conspiracy that defendants MARCI
PLOTKIN, STANLEY BEKRITSKY, RICHARD STADTMAUER and ANNE AMICI,
and others, would aid and assist in, and procure, counsel, and
advise the preparation and presentation of, U.S. Partnership Tax
Returns, IRS Forms 1065, which were fraudulent and false as to
material matters.

## Manner and Means of the Conspiracy

8. Among the means employed by the defendants and their co-
conspirators to carry out the conspiracy and to effect its
unlawful objects were the following:

A. Defendants MARCI PLOTKIN, ANNE AMICI, STANLEY
BEKRITSKY and others prepared, defendants MARCI PLOTKIN and
STANLEY BEKRITSKY signed as preparers, defendant RICHARD

5

STADTMAUER signed on behalf of the Real Estate Partnerships, and
all submitted to the IRS, partnership tax returns that: (a)
falsely characterized charitable contributions made by the Real
Estate Partnerships as deductible office expenses; (b) falsely
reported that no Gifts and Entertainment ("G & E") expenses had
been incurred by the Real Estate Partnerships, and misreported G
& E expenses as fully deductible office expenses; (c)
intentionally failed to depreciate capital and other depreciable
expenses incurred by the Real Estate Partnerships; (d) falsely
claimed that expenses not incurred by, or related to the
operation of, the Real Estate Partnerships were fully deductible
by the Real Estate Partnerships as business expenses; (e) falsely
claimed that payments of tuition for the dependents of defendant
MARCI PLOTKIN and employees of the Real Estate Partnerships were
charitable contributions or office expenses of the Real Estate
Partnerships; and (f) made payments which constituted income to
defendant MARCI PLOTKIN, and employees of the Real-Estate
Partnerships without withholding the required payroll taxes,
including Social Security, Medicare, and FUTA, and without
disclosing the income on IRS Forms W-2 or 1099.

           B.   Defendant RICHARD STADTMAUER and co-
conspirator Partner 1 approved, authorized, and signed checks for
expenditures by the Real Estate Partnerships, including:
charitable contributions; G & E expenses; capital and other

depreciable items such as appliances; and expenses that were not ordinary and necessary business expenses of the partnerships.

C.  Defendants MARCI PLOTKIN and RICHARD STADTMAUER, along with co-conspirators Partner 1 and the Chief Financial Officer of the Real Estate Partnerships (the "CFO"), and others, would attend regular meetings on Tuesday mornings at which financial matters of the Real Estate Partnerships would be discussed, including capital improvement projects and other expenditures. At these meetings, defendant RICHARD STADTMAUER and co-conspirator Partner 1 would direct that expenses be paid by a particular partnership and recorded on the books and records of that partnership as an expense, even though the expense was neither incurred by, nor directly related to, the business of that partnership. Defendant RICHARD STADTMAUER and co-conspirator Partner 1 would direct that bills be "lost," meaning that they would be paid for by other partnerships, when the partnership actually incurring the expense did not have sufficient cash to pay the bill.

D.  Defendant RICHARD STADTMAUER and co-conspirator Partner 1 authorized, approved and signed checks for payments to or for the benefit of defendant MARCI PLOTKIN and employees of the Real Estate Partnerships outside the normal payroll system, without including such payments as income on IRS Forms 1099 to defendant MARCI PLOTKIN or on IRS Forms W-2 issued

7

to the employees, and in a manner that avoided withholding the required payroll taxes, including Social Security, Medicare, FUTA and federal income taxes.

      E.  Defendant ANNE AMICI, under the supervision, and with the approval, of defendants MARCI PLOTKIN and STANLEY BEKRITSKY, prepared financial statements for the Real Estate Partnerships that purported to be based on the accounting basis used for income tax purposes. These financial statements, prepared by the Accounting Firm purportedly acting as the Real Estate Partnerships' outside and independent accountants, were used in part to prepare the federal tax returns for the Real Estate Partnerships. These financial statements falsely characterized capital improvements and other depreciable items as ordinary business expenses, and included, as expenses, items that neither were incurred by that specific partnership, nor related to its operation and, therefore, were not deductible business expenses.

      F.  Defendant ANNE AMICI initialed the real estate work program used to prepare the financial statements, representing that she: (i) obtained the partnership's depreciation schedules; (ii) reviewed the depreciation methods for consistency and reasonableness; (iii) examined repairs and maintenance expenses for any unusual variance from the prior year, which would have then required her to scan the general

8

ledger and investigate unusual postings for possible capital items; and (iv) obtained information necessary to complete tax return including deductible contributions and travel and entertainment expenses subject to 50% disallowance.    Despite these representations, defendant ANNE AMICI did not properly report capital improvements or other depreciable expenditures incurred during the years under review on the financial statements or tax returns; did not separately list charitable contributions on the tax returns, but instead falsely characterized them as office expenses; and failed to list G & E expenses subject to the 50% disallowance, but instead listed G & E expenses as fully deductible office expenses on the tax returns.

          G.    Defendants MARCI PLOTKIN and STANLEY BEKRITSKY reviewed, approved and initialed the financial statements and analytical reviews of the Real Estate Partnerships prepared by defendant ANNE AMICI, knowing that these documents: (i) did not properly report capital improvement or other depreciable expenditures incurred during the years under review on the financial statements or tax returns; (ii) did not separately list charitable contributions as required, but instead falsely characterized them as office expenses; and (iii) failed to list G & E expenses subject to the 50% disallowance, but instead listed G & E expenses as fully deductible office expenses on the tax

returns.

H.    Defendant ANNE AMICI and others at the
Accounting Firm prepared, and defendants MARCI PLOTKIN and
STANLEY BEKRITSKY, supervised the preparation of and approved,
the partnership tax returns for the Real Estate Partnerships,
into which had been incorporated false and fraudulent expenses,
including: charitable contributions; G & E expenses; capital and
other depreciable items; and expenses that were neither incurred
by that specific partnership, nor related to its operation and
that, therefore, were not deductible as ordinary and necessary
business expenses of the Real Estate Partnerships.

I.    Defendants MARCI PLOTKIN and STANLEY
BEKRITSKY, with knowledge that the partnership tax returns for
the Real Estate Partnerships contained these material falsehoods,
signed the returns as the preparers.

J.    Defendants MARCI PLOTKIN and STANLEY BEKRITSKY
forwarded the partnership tax returns to defendant RICHARD
STADTMAUER, who signed the returns on behalf of the Real Estate
Partnerships and then caused such returns to be filed with the
IRS.

K.    To disguise the scheme and prevent detection
by the IRS and certain partners of the Real Estate Partnerships,
defendants MARCI PLOTKIN, STANLEY BEKRITSKY and ANNE AMICI
omitted listing charitable contributions and the non-deductible

10

portion of C & E expenses on the IRS Forms K-1 distributed at
year end to the partners in the Real Estate Partnerships.

L.   To disguise the scheme and prevent detection
by the IRS and certain partners of the Real Estate Partnerships,
defendant RICHARD STADTMAUER and co-conspirator Partner 1,
refused to make the books and records of the partnerships
available to certain of the partners and refused to provide them
with accurate information about partnership expenses and
distributions. Defendant RICHARD STADTMAUER and co-conspirator
Partner 1 did so knowing that the K-1 forms issued to the
partners did not accurately reflect charitable contributions that
had been made by the partnership.

M.   Defendant MARCI PLOTKIN, with the knowledge
and assistance of defendants STANLEY BEKRITSKY and RICHARD
STADTMAUER and co-conspirator Partner 1, received from the Real
Estate Partnerships bonuses totaling approximately $20,000 to
$50,000 per year from 1997 through 2001, in addition to her full
salary from the Accounting Firm.

N.   Defendant MARCI PLOTKIN, with the knowledge
and assistance of defendant RICHARD STADTMAUER, co-conspirator
Partner 1 and others, received from the Real Estate Partnerships
tuition payments for her dependent relative. These tuition
payments were improperly recorded on the books and records of the
particular real estate partnerships which paid the tuition as

11

expenses of those partnerships, were deducted as business expenses on the tax returns prepared by defendant MARCI PLOTKIN for those partnerships, and were not listed as income to defendant MARCI PLOTKIN on any IRS Form 1099.

O.   Defendant MARCI PLOTKIN falsely attested that she was independent of the Real Estate Partnerships in documents required to be signed by the Accounting Firm in connection with the preparation of financial statement reviews.

P.   Defendant RICHARD STADTMAUER approved payments by the Real Estate Partnerships for tuition payments for employees' dependent relatives totaling in excess of $140,000 outside the normal payroll process, which amounts were not included as salary or other income on the Forms W-2 issued to the employees, or the Forms W-2 and W-3 filed with the IRS by the Real Estate Partnerships.

Q.   Defendant RICHARD STADTMAUER and co-conspirator Partner 1 approved and signed checks for payments by the Real Estate Partnerships for automobile and loan expenses totaling in excess of $200,000 for the benefit of an employee of the Real Estate Partnerships, which amounts were not processed through the payroll system and were not included as salary or other income on the Forms W-2 issued to the employee, or the Forms W-2 and W-3 filed with the IRS by the Real Estate Partnerships.

12

### Overt Acts

9.    In furtherance of the conspiracy and to effect its
unlawful objects, the following overt acts were committed in the
District of New Jersey and elsewhere:

#### Preparing and Filing False Returns

1.    1998 Tax Return for Partnership 1

A.    In or about March 1999, defendant ANNE AMICI
prepared the tax return for Partnership 1 for 1998 which: (i)
falsely characterized as office expenses approximately $40,000
worth of "contributions," including charitable and political
contributions; (ii) falsely characterized approximately $55,000
worth of G & E expenses as office expenses and (iii) falsely
characterized approximately $18,000 worth of expenses neither
incurred by, nor related to the operation of, Partnership 1 as
deductible expenses; and (iv) falsely characterized approximately
$500,000 worth of capital improvements and depreciable items as
ordinary business expenses.

B.    In or about March 1999, defendant MARCI
PLOTKIN supervised the preparation of the tax return for
Partnership 1 for 1998, reviewed the return, and approved it.

C.    In or about March 1999, defendant STANLEY
BEKRITSKY reviewed and approved the tax return for Partnership 1
for 1998.

D.    On or about March 26, 1999, defendant STANLEY

13

BEKRITSKY signed the tax return for Partnership 1 for 1998 as preparer.

E. On or about March 31, 1999, defendant RICHARD STADTMAUER signed the tax return for Partnership 1 for 1998.

F. On or about April 14, 1999, defendant RICHARD STADTMAUER caused the tax return for Partnership 1 for 1998 to be filed with the IRS.

2. 1999 Tax Return for Partnership 1

A. In or about March 2000, a co-conspirator staff accountant for the Accounting Firm prepared the tax return for Partnership 1 for 1999 which: (i) falsely characterized as office expenses approximately $90,000 worth of "contributions," including charitable and political contributions; (ii) falsely characterized approximately $45,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $90,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 1 as deductible expenses and (iv) falsely characterized approximately $225,000 worth of capital improvements and depreciable items as ordinary business expenses.

B. In or about March 2000, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 1 for 1999, reviewed the return, and approved it.

C. In or about March 2000, defendant STANLEY BEKRITSKY reviewed and approved the tax return for Partnership 1

14

for 1999.

               D.   On or about March 28, 2000, defendant STANLEY BEKRITSKY signed the tax return for Partnership 1 for 1999 as preparer.

               E.   On or about March 31, 2000, defendant RICHARD STADTMAUER signed the tax return for Partnership 1 for 1999.

               F.   On or about April 16, 2000, defendant RICHARD STADTMAUER caused the tax return for Partnership 1 for 1999 to be filed with the IRS.

     3.   2000 Tax Return for Partnership 1

               A.   From in or about February 2001 to in or about March 2001, defendant ANNE AMICI prepared the tax return for Partnership 1 for 2000 which: (i) falsely characterized as office expenses approximately $65,000 worth of "contributions," including charitable contributions; (ii) falsely characterized approximately $25,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $10,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 1 as deductible expenses and (iv) falsely characterized approximately $300,000 worth of capital improvements and depreciable items as ordinary business expenses.

               B.   From in or about February 2001 to in or about March 2001, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 1 for 2000, reviewed the return

15

and approved it.

        C.   On or about March 23, 2001, defendant MARCI
PLOTKIN signed the tax return for Partnership 1 for 2000 as the
return preparer.

        D.   On or about March 28, 2001, defendant RICHARD
STADTMAUER signed the tax return for Partnership 1 for 2000.

        E.   On or about April 15, 2001, defendant RICHARD
STADTMAUER caused the tax return for Partnership 1 for 2000 to be
filed with the IRS.

    4.  1998 Tax Return for Partnership 2

        A.   From in or about February 1999 to in or about
March 1999, defendant ANNE AMICI prepared the tax return for
Partnership 2 for 1998 which: (i) falsely characterized as office
expenses approximately $50,000 worth of "contributions,"
including charitable and political contributions; (ii) falsely
characterized approximately $20,000 worth of G & E expenses as
office expenses; (iii) falsely characterized approximately
$20,000 worth of expenses neither incurred by, nor related to the
operation of, Partnership 2 as deductible expenses and (iv)
falsely characterized approximately $275,000 worth of capital
improvements and depreciable items as ordinary business expenses.

        B.   In or about March 1999, defendant MARCI
PLOTKIN supervised the preparation of the tax return for
Partnership 2 for 1998, reviewed the return, and approved it.

16

C. In or about March, 1999, defendant STANLEY
BEKRITSKY reviewed and approved the tax return for Partnership 2
for 1998.

D. On or about March 12, 1999, defendant STANLEY
BEKRITSKY signed the tax return for Partnership 2 for 1998 as
preparer.

E. On or about April 9, 1999, defendant RICHARD
STADTMAUER signed the tax return for Partnership 2 for 1998.

F. On or about April 19, 1999, defendant RICHARD
STADTMAUER caused the tax return for Partnership 2 for 1998 to be
filed with the IRS.

5. 1999 Tax Return for Partnership 2

A. From in or about February 2000 to in or about
March 2000, defendant ANNE AMICI prepared the tax return for
Partnership 2 for 1999 which: (i) falsely characterized as office
expenses approximately $100,000 worth of "contributions,"
including charitable and political contributions; (ii) falsely
characterized approximately $30,000 worth of G & E expenses as
office expenses; (iii) falsely characterized approximately
$70,000 worth of expenses neither incurred by, nor related to the
operation of, Partnership 2 as deductible expenses and (iv)
falsely characterized approximately $80,000 worth of capital
improvements and depreciable items as ordinary business expenses.

B. In or about March 2000, defendant MARCI

17

PLOTKIN supervised the preparation of the tax return for
Partnership 2 for 1999, reviewed the return, and approved it.

C. In or about March 2000, defendant STANLEY
BEKRITSKY reviewed and approved the tax return for Partnership 2
for 1999.

D. On or about March 5, 2000, defendant STANLEY
BEKRITSKY signed the tax return for Partnership 2 for 1999 as
preparer.

E. On or about March 31, 2000, defendant RICHARD
STADTMAUER signed the tax return for Partnership 2 for 1999.

F. On or about April 13, 2000, defendant RICHARD
STADTMAUER caused the tax return of Partnership 2 for 1999 to be
filed with the IRS.

6. 2000 Tax Return for Partnership 2

A. From in or about February 2001 to in or about
March 2001, defendant ANNE AMICI prepared the tax return for
Partnership 2 for 2000 which: (i) falsely characterized as office
expenses approximately $200,000 worth of "contributions,"
including charitable contributions; (ii) falsely characterized
approximately $35,000 worth of G & E expenses as office expenses;
(iii) falsely characterized approximately $20,000 worth of
expenses neither incurred by, nor related to the operation of,
Partnership 2 as deductible expenses and (iv) falsely
characterized approximately $265,000 worth of capital

18

improvements and depreciable items as ordinary business expenses.

B. From in or about February 2001 to in or about March 2001, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 2 for 2000, reviewed the return and approved it.

C. On or about March 1, 2001, defendant MARCI PLOTKIN signed the tax return for Partnership 2 for 2000 as the return preparer.

D. On or about March 25, 2001, defendant RICHARD STADTMAUER signed the tax return for Partnership 2 for 2000.

E. On or about April 2, 2001, defendant RICHARD STADTMAUER caused the tax return of Partnership 2 for 2000 to be filed with the IRS.

7. 1998 Tax Return for Partnership 3a

A. From in or about February 1999 to in or about March 1999, defendant ANNE AMICI prepared the tax return for Partnership 3a for 1998 which: (i) falsely characterized as office expenses approximately $20,000 worth of "contributions," including charitable and political contributions; (ii) falsely characterized approximately $5,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $10,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 3a as deductible expenses and (iv) falsely characterized approximately $125,000 worth of capital

19

improvements and depreciable items as ordinary business expenses.

        B.   In or about March 1999, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 3a for 1998, reviewed the return, and approved it.

        C.   In or about March 1999, defendant STANLEY BEKRITSKY reviewed and approved the tax return for Partnership 3a for 1998.

        D.   On or about March 26, 1999, defendant STANLEY BEKRITSKY signed the tax return for Partnership 3a for 1998 as preparer.

        E.   On or about April 17, 1999, defendant RICHARD STADTMAUER signed the tax return for Partnership 3a for 1998.

        F.   On or about April 17, 1999, defendant RICHARD STADTMAUER caused the tax return for Partnership 3a for 1998 to be filed with the IRS.

        8.   1999 Tax Return for Partnership 3a

        A.   From in or about February 2000 to in or about March 2000, defendant ANNE AMICI prepared the tax return for Partnership 3a for 1999 which: (i) falsely characterized as office expenses approximately $45,000 worth of "contributions," including charitable and political contributions; (ii) falsely characterized approximately $10,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $65,000 worth of expenses neither incurred by, nor related to the

20

operation of, Partnership 3a as deductible expenses and (iv)
falsely characterized approximately $135,000 worth of capital
improvements and depreciable items as ordinary business expenses.

B.   In or about March 2000, defendant MARCI
PLOTKIN supervised the preparation of the tax return for
Partnership 3a for 1999, reviewed the return, and approved it.

C.   In or about March 2000, defendant STANLEY
BEKRITSKY reviewed and approved the tax return for Partnership 3a
for 1999.

D.   On or about March 15, 2000, defendant STANLEY
BEKRITSKY signed the tax return for Partnership 3a for 1999 as
preparer.

E.   On or about March 31, 2000, defendant RICHARD
STADTMAUER signed the tax return for Partnership 3a for 1999.

F.   On or about April 13, 2000, defendant RICHARD
STADTMAUER caused the tax return for Partnership 3a for 1999 to
be filed with the IRS.

9.   2000 Tax Return for Partnership 3a

A.   From in or about February 2001 to in or about
March 2001, a co-conspirator staff accountant for the Accounting
Firm prepared the tax return for Partnership 3a for 2000 which:
(i) falsely characterized as office expenses approximately
$130,000 worth of "contributions," including charitable
contributions; (ii) falsely characterized approximately $20,000

21

worth of G & E expenses as office expenses; (iii) falsely characterized approximately $40,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 3a as deductible expenses and (iv) falsely characterized approximately $110,000 worth of capital improvements and depreciable items as ordinary business expenses.

B.    From in or about February 2001 to in or about March 2001, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 3a for 2000, reviewed the return and approved it.

C.    On or about March 17, 2001, defendant MARCI PLOTKIN signed the tax return for Partnership 3a for 2000 as the return preparer.

D.    On or about April 14, 2001, defendant RICHARD STADTMAUER signed the tax return for Partnership 3a for 2000.

E.    On or about April 15, 2001, defendant RICHARD STADTMAUER caused the tax return for Partnership 3a for 2000 to be filed with the IRS.

10.    1998 Tax Return for Partnership 3b

A.    From in or about February 1999 to in or about March 1999, defendant ANNE AMICI prepared the tax return for Partnership 3b for 1998 which: (i) falsely characterized as office expenses approximately $25,000 worth of "contributions," including charitable and political contributions; (ii) falsely

22

characterized approximately \$10,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately \$10,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 3b as deductible expenses and (iv) falsely characterized approximately \$150,000 worth of capital improvements and depreciable items as ordinary business expenses.

B.    In or about March 1999, defendant MARC1 PLOTKIN supervised the preparation of the tax return for Partnership 3b for 1998, reviewed the return, and approved it.

C.    In or about March, 1999, defendant STANLEY BEKRITSKY reviewed and approved the tax return for Partnership 3b for 1998.

D.    On or about March 26, 1999, defendant STANLEY BEKRITSKY signed the tax return for Partnership 3b for 1998 as preparer.

E.    On or about April 14, 1999, defendant RICHARD STADTMAUER signed the tax return for Partnership 3b for 1998.

F.    On or about April 17, 1999, defendant RICHARD STADTMAUER caused the tax return for Partnership 3b for 1998 to be filed with the IRS.

11.   1999 Tax Return for Partnership 3b

A.    From in or about February 2000 to in or about March 2000, defendant ANNE AMICI prepared the tax return for Partnership 3b for 1999 which: (i) falsely characterized as

23

office expenses approximately $50,000 worth of "contributions,"
including charitable and political contributions; (ii) falsely
characterized approximately $20,000 worth of G & E expenses as
office expenses; (iii) falsely characterized approximately
$75,000 worth of expenses neither incurred by, nor related to the
operation of, Partnership 3b as deductible expenses and (iv)
falsely characterized approximately $155,000 worth of capital
improvements and depreciable items as ordinary business expenses.

      B.   In or about March 2000, defendant MARCI
PLOTKIN supervised the preparation of the tax return for
Partnership 3b for 1999, reviewed the return, and approved it.

      C.   In or about March, 2000, defendant STANLEY
BEKRITSKY reviewed and approved the tax return for Partnership 3b
for 1999.

      D.   On or about March 14, 2000, defendant STANLEY
BEKRITSKY signed the tax return for Partnership 3b for 1999 as
preparer.

      E.   On or about March 31, 2000, defendant RICHARD
STADTMAUER signed the tax return for Partnership 3b for 1999.

      F.   On or about April 16, 2000, defendant RICHARD
STADTMAUER caused the tax return for Partnership 3b for 1999 to
be filed with the IRS.

    12.   2000 Tax Return for Partnership 3b

      A.   From in or about February 2001 to in or about

24

March 2001, a co-conspirator staff accountant for the Accounting Firm prepared the tax return for Partnership 3b for 2000 which: (i) falsely characterized as office expenses approximately $150,000 worth of "contributions," including charitable contributions; (ii) falsely characterized approximately $25,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $45,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 3b as deductible expenses and (iv) falsely characterized approximately $125,000 worth of capital improvements and depreciable items as ordinary business expenses.

   B. From in or about February 2001 to in or about March 2001, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 3b for 2000, reviewed the return and approved it.

   C. On or about March 17, 2001, defendant MARCI PLOTKIN signed the tax return for Partnership 3b for 2000 as the return preparer.

   D. On or about March 25, 2001, defendant RICHARD STADTMAUER signed the tax return for Partnership 3b for 2000.

   E. On or about April 15, 2001, defendant RICHARD STADTMAUER caused the tax return for Partnership 3b for 2000 to be filed with the IRS.

### 13. 1998 Tax Return for Partnership 3c

A. From in or about February 1999 to in or about March 1999, defendant ANNE AMICI prepared the tax return for Partnership 3c for 1998 which: (i) falsely characterized as office expenses approximately $10,000 worth of "contributions," including charitable and political contributions; (ii) falsely characterized approximately $5,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $5,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 3c as deductible expenses and (iv) falsely characterized approximately $60,000 worth of capital improvements and depreciable items as ordinary business expenses.

B. In or about March 1999, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 3c for 1998, reviewed the return, and approved it.

C. In or about March 1999, defendant STANLEY BEKRITSKY reviewed and approved the tax return for Partnership 3c for 1998.

D. On or about March 26, 1999, defendant STANLEY BEKRITSKY signed the tax return for Partnership 3c for 1998 as preparer.

E. On or about April 15, 1999, defendant RICHARD STADTMAUER signed the tax return for Partnership 3c for 1998.

F. On or about April 17, 1999, defendant RICHARD

26

STADTMAUER caused the tax return for Partnership 3c for 1998 to
be filed with the IRS.

14.  1999 Tax Return for Partnership 3c

A.  From in or about February 2000 to in or about
March 2000, defendant ANNE AMICI prepared the tax return for
Partnership 3c for 1999 which: (i) falsely characterized as
office expenses approximately $20,000 worth of "contributions,"
including charitable and political contributions; (ii) falsely
characterized approximately $10,000 worth of G & E expenses as
office expenses; (iii) falsely characterized approximately
$35,000 worth of expenses neither incurred by, nor related to the
operation of, Partnership 3c as deductible expenses and (iv)
falsely characterized approximately $70,000 worth of capital
improvements and depreciable items as ordinary business expenses.

B.  In or about March 2000, defendant MARCI
PLOTKIN supervised the preparation of the tax return for
Partnership 3c for 1999, reviewed the return, and approved it.

C.  In or about March 2000, defendant STANLEY
BEKRITSKY reviewed and approved the tax return for Partnership 3c
for 1999.

D.  On or about March 14, 2000, defendant STANLEY
BEKRITSKY signed the tax return for Partnership 3c for 1999 as
preparer.

E.  On or about April 13, 2000, defendant RICHARD

27

STADTMAUER signed the tax return for Partnership 3c for 1999.

      F.  On or about March 31, 2000, defendant RICHARD STADTMAUER caused the tax return for Partnership 3c for 1999 to be filed with the IRS.

    15.  2000 Tax Return for Partnership 3c

      A.  From in or about February 2001 to in or about March 2001, a co-conspirator staff accountant for the Accounting Firm prepared the tax return for Partnership 3c for 2000 which: (i) falsely characterized as office expenses approximately $65,000 worth of "contributions," including charitable contributions; (ii) falsely characterized approximately $10,000 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $20,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 3c as deductible expenses and (iv) falsely characterized approximately $55,000 worth of capital improvements and depreciable items as ordinary business expenses.

      B.  From in or about February 2001 to in or about March 2001, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 3c for 2000, reviewed the return and approved it.

      C.  On or about March 17, 2001, defendant MARCI PLOTKIN signed the tax return for Partnership 3c for 2000 as the return preparer.

D.   On or about March 25, 2001, defendant RICHARD STADTMAUER signed the tax return for Partnership 3c for 2000.

E.   On or about April 15, 2001, defendant RICHARD STADTMAUER caused the tax return for Partnership 3c for 2000 to be filed with the IRS.

16.   1998 Tax Return for Partnership 4

A.   From in or about January 1999 to in or about March 1999, defendant ANNE AMICI prepared the tax return for Partnership 4 for 1998 which: (i) falsely characterized as office expenses approximately $1,000 worth of "contributions," including charitable and political contributions; (ii) falsely characterized approximately $26,500 worth of G & E expenses as office expenses; and (iii) falsely characterized approximately $60,000 worth of capital improvements and depreciable items as ordinary business expenses.

B.   In or about February 1999 to in or about March 1999, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 4 for 1998, reviewed the return, and approved it.

C.   In or about March 1999, defendant STANLEY BEKRITSKY reviewed and approved the tax return for Partnership 4 for 1998.

D.   On or about March 14, 1999, defendant STANLEY BEKRITSKY signed the tax return for Partnership 4 for 1998 as

29

preparer.

        E.    On or about April 9, 1999, defendant RICHARD STADTMAUER signed the tax return for Partnership 4 for 1998.

        F.    On or about April 14, 1999, defendant RICHARD STADTMAUER caused the tax return for Partnership 4 for 1998 to be filed with the IRS.

        17.   1999 Tax Return for Partnership 4

        A.    From in or about January 2000 to in or about March 2000, defendant ANNE AMICI prepared the tax return for Partnership 4 for 1999 which: (i) falsely characterized as office expenses approximately $40,000 worth of "contributions," including charitable and political contributions; (ii) falsely characterized approximately $4,500 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $20,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 4 as deductible expenses and (iv) falsely characterized approximately $150,000 worth of capital improvements and depreciable items as ordinary business expenses.

        B.    In or about March 2000, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 4 for 1999, reviewed the return, and approved it.

        C.    In or about March 2000, defendant STANLEY BEKRITSKY reviewed and approved the tax return for Partnership 4 for 1999.

D. On or about March 5, 2000, defendant STANLEY
BEKRITSKY signed the tax return for Partnership 4 for 1999 as
preparer.

E. On or about March 31, 2000, defendant RICHARD
STADTMAUER signed the tax return for Partnership 4 for 1999.

F. On or about April 16, 2000, defendant RICHARD
STADTMAUER caused the tax return for Partnership 4 for 1999 to be
filed with the IRS.

18.  2000 Tax Return for Partnership 4

A. From in or about February 2001 to in or about
March 2001, a co-conspirator staff accountant for the Accounting
Firm prepared the tax return for Partnership 4 for 2000 which:
(i) falsely characterized as office expenses approximately
$130,000 worth of "contributions," including charitable
contributions; (ii) falsely characterized approximately $5,000
worth of G & E expenses as office expenses; (iii) falsely
characterized approximately $10,000 worth of expenses neither
incurred by, nor related to the operation of, Partnership 4 as
deductible expenses and (iv) falsely characterized approximately
$130,000 worth of capital improvements and depreciable items as
ordinary business expenses.

B. From in or about February 2001 to in or about
March 2001, defendant MARCI PLOTKIN supervised the preparation of
the tax return for Partnership 4 for 2000, reviewed the return

31

and approved it.

C.   On or about March 1, 2001, defendant MARCI
PLOTKIN signed the tax return for Partnership 4 for 2000 as the
return preparer.

D.   On or about March 25, 2001, defendant RICHARD
STADTMAUER signed the tax return for Partnership 4 for 2000.

E.   ·On or about April 18, 2001, defendant RICHARD
STADTMAUER caused the tax return for Partnership 4 for 2000 to be
filed with the IRS.

19.   1998 Tax Return for Partnership 5

A.   From in or about February 1999 to in or about
March 1999, defendant ANNE AMICI prepared the tax return for
Partnership 5 for 1998 which: (i) falsely characterized as office
expenses approximately $10,000 worth of "contributions,"
including charitable and political contributions; (ii) falsely
characterized approximately $10,000 worth of expenses neither
incurred by, nor related to the operation of, Partnership 5 as
deductible expenses and (iii) falsely characterized approximately
$130,000 worth of capital improvements and depreciable items as
ordinary business expenses.

B.   In or about March 1999, defendant MARCI
PLOTKIN supervised the preparation of the tax return for
Partnership 5 for 1998, reviewed the return, and approved it.

C.   In or about March 1999, defendant STANLEY

32

BEKRITSKY reviewed and approved the tax return for Partnership 5 for 1998.

D.   On or about March 20, 1999, defendant STANLEY BEKRITSKY signed the tax return for Partnership 5 for 1998 as preparer.

E.   On or about April 9, 1999, defendant RICHARD STADTMAUER signed the tax return for Partnership 5 for 1998.

F.   On or about April 14, 1999, defendant RICHARD STADTMAUER caused the tax return for Partnership 5 for 1998 to be filed with the IRS.

20.   1999 Tax Return for Partnership 5

A.   From in or about January 2000 to in or about February 2000, defendant ANNE AMICI prepared the tax return for Partnership 5 for 1999 which: (i) falsely characterized as office expenses approximately $20,000 worth of "contributions," including charitable and political contributions; and (ii) falsely characterized approximately $1,500 worth of G & E expenses as office expenses.

B.   In or about February 2000, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 5 for 1999, reviewed the return, and approved it.

C.   In or about February 2000, defendant STANLEY BEKRITSKY reviewed and approved the tax return for Partnership 5 for 1999.

33

D.   On or about February 27, 2000, defendant
STANLEY BEKRITSKY signed the tax return for Partnership 5 for
1999 as preparer.

E.   On or about March 31, 2000, defendant RICHARD
STADTMAUER signed the tax return for Partnership 5 for 1999.

F.   On or about April 21, 2000, defendant RICHARD
STADTMAUER caused the tax return for Partnership 5 for 1999 to be
filed with the IRS.

21.   2000 Tax Return for Partnership 5

A.   From in or about February 2001 to in or about
March 2001, defendant ANNE AMICI prepared the tax return for
Partnership 5 for 2000 which: (i) falsely characterized as office
expenses approximately $8,000 worth of "contributions," including
charitable contributions; (ii) falsely characterized
approximately $1,500 worth of G & E expenses as office expenses;
and (iii) falsely characterized approximately $1,000 worth of
expenses neither incurred by, nor related to the operation of,
Partnership 5 as deductible expenses.

B.   From in or about February 2001 to in or about
March 2001, defendant MARCI PLOTKIN supervised the preparation of
the tax return for Partnership 5 for 2000, reviewed the return
and approved it.

C.   On or about March 1, 2001, defendant MARCI
PLOTKIN signed the tax return for Partnership 5 for 2000 as the

34

return preparer.

D.    On or about March 25, 2001, defendant RICHARD STADTMAUER signed the tax return for Partnership 5 for 2000.

E.    On or about April 18, 2001, defendant RICHARD STADTMAUER caused the tax return for Partnership 5 for 2000 to be filed with the IRS.

22.   2000 Tax Return for Partnership 6

A.    From in or about February 2001 to in or about March 2001, defendant ANNE AMICI prepared the tax return for Partnership 6 for 2000 which: (i) falsely characterized as office expenses approximately $3,500 worth of "contributions," including charitable contributions; (ii) falsely characterized approximately $1,500 worth of G & E expenses as office expenses; (iii) falsely characterized approximately $15,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 6 as deductible expenses; and (iv) falsely characterized approximately $90,000 worth of capital improvements and depreciable items as ordinary business expenses.

B.    From in or about February 2001 to in or about March 2001, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 6 for 2000, reviewed the return and approved it.

C.    On or about March 6, 2001, defendant MARCI PLOTKIN signed the tax return for Partnership 6 for 2000 as the

35

return preparer.

D.   On or about March 25, 2001, defendant RICHARD STADTMAUER signed the tax return for Partnership 6 for 2000.

E.   On or about April 2, 2001, defendant RICHARD STADTMAUER caused the tax return for Partnership 6 for 2000 to be filed with the IRS.

23.   2001 Tax Return for Partnership 6

A.   From in or about February 2002 to in or about March 2002, defendant ANNE AMICI prepared the tax return for Partnership 6 for 2001 which: (i) falsely characterized approximately $2,000 worth of G & E expenses as office expenses; (ii) falsely characterized approximately $1,000 worth of expenses neither incurred by, nor related to the operation of, Partnership 6 as deductible expenses and (iii) falsely characterized approximately $550,000 worth of capital improvements and depreciable items as ordinary business expenses.

B.   From in or about February 2002 to in or about March 2002, defendant MARCI PLOTKIN supervised the preparation of the tax return for Partnership 6 for 2001, reviewed the return and approved it.

C.   On or about March 14, 2002, defendant MARCI PLOTKIN signed the tax return for Partnership 6 for 2001 as the return preparer.

D.   On or about March 28, 2002, defendant RICHARD

36

STADTMAUER signed the tax return for Partnership 6 for 2001.

E. On or about April 8, 2002, defendant RICHARD STADTMAUER caused the tax return for Partnership 6 for 2001 to be filed with the IRS.

24. 2000 Tax Return for the Management Company

A. From in or about February 2001 to in or about April 2001, defendant ANNE AMICI prepared the tax return for the Management Company for 2000 which: (i) falsely characterized as office expenses approximately $110,000 worth of "contributions," including charitable contributions; and (ii) falsely characterized approximately $1,500 worth of G & E expenses as office expenses.

B. From in or about February 2001 to in or about April 2001, defendant MARCI PLOTKIN supervised the preparation of the tax return for the Management Company for 2000, reviewed the return and approved it.

C. On or about April 6, 2001, defendant MARCI PLOTKIN signed the tax return for the Management Company for 2000 as the return preparer.

D. On or about April 10, 2001, defendant RICHARD STADTMAUER signed the tax return for the Management Company for 2000.

E. On or about April 16, 2001, defendant RICHARD STADTMAUER caused the tax return for the Management Company for

2000 to be filed with the IRS.


### Tuition for Defendant Plotkin's Dependent Relative

25. In or about July 1999, co-conspirator Partner 1, in the presence of defendants RICHARD STADTMAUER and MARCI PLOTKIN and co-conspirator CFO told defendant MARCI PLOTKIN that he would take care of the tuition payments for her dependant relative's attendance at private school.

26. On or about July 1, 1999, co-conspirator Partner 1 signed four checks, drawn on the accounts of Partnership 1, Partnership 2, Partnership 3 and Partnership 7, each in the amount of $2,628.75, made payable to a private school to pay for the tuition of a dependent relative of defendant MARCI PLOTKIN.

27. On or about July 25, 2000, co-conspirator Partner 1 signed four checks, drawn on the accounts of Partnership 2, Partnership 3, Partnership 4 and Partnership 7, each in the amount of $3,384.00, made payable to a private school to pay for the tuition of a dependent relative of defendant MARCI PLOTKIN.

28. On or about July 25, 2000, co-conspirator CFO caused the four checks, drawn on the accounts of Partnership 2, Partnership 3, Partnership 4 and Partnership 7, each in the amount of $3,384.00, to be falsely characterized on the general ledgers of the partnerships as a "pledge" under charitable contributions.

38

29. On or about August 5, 2000, co-conspirator CFO sent to defendant MARCI PLOTKIN at her residence by United States mail copies of the tuition bill for her dependent relative marked with the partnerships that were paying the tuition and attached copies of the checks referred to in Paragraphs 27 and 28.

30. On or about June 20, 2001, co-conspirator CFO falsely characterized as charitable contributions on the general ledgers of Partnership 2, Partnership 3 Partnership 4 and Partnership 7, four checks that he had approved in the amounts of $3,400, $3,600, $3,600 and $3,311. These checks, which had been drawn on accounts of Partnership 2, Partnership 3, Partnership 4 and Partnership 7, were made payable to a private school and used to pay for the tuition of the dependent relative of defendant MARCI PLOTKIN.

31. On or about June 21, 2001, defendant RICHARD STADTMAUER signed the checks described in Paragraph 30, knowing that the checks were being used to pay the private school tuition of a dependent relative of defendant MARCI PLOTKIN, but were being mischaracterized as charitable contributions on the books and records of the partnerships.

32. On or about June 21, 2001, defendant RICHARD STADTMAUER refused to sign the check drawn on Partnership 7 in the amount of $3,311 because it was for an uneven amount of money that would not look like a charitable contribution.

33. On or about June 21, 2001, defendant RICHARD STADTMAUER directed co-conspirator CFO to issue a new check for an even amount of money so that it would not be obvious that it was not a charitable contribution.

34. On or about June 21, 2001, co-conspirator CFO presented to co-conspirator Partner 1 a check in the amount of $3,400 drawn on Partnership 7 made payable to a private school for the tuition of a dependent relative of defendant MARCI PLOTKIN, which co-conspirator Partner 1 signed.

35. On or about July 1, 2002, co-conspirator CFO falsely characterized as charitable contributions on the general ledgers of Partnership 1, Partnership 3, Partnership 4 and Partnership 7 checks signed by co-conspirator Partner 1 in the amounts of $3,600, $3,600, $4,800 and $3,600. These checks, which had been drawn on the accounts of the partnerships, were made payable to a private school and were used to pay for the tuition of the dependent relative of defendant MARCI PLOTKIN.

Tuition for Co-conspirator CFO's Dependent Relatives

36. In or about December 1999, defendant RICHARD STADTMAUER told co-conspirator CFO that the Real Estate Partnerships would pay for a portion of the private school tuition for co-conspirator CFO's dependant relatives in order to reimburse co-conspirator CFO for political contributions made by co-conspirator CFO at the request of defendant RICHARD STADTMAUER

40

and co-conspirator Partner 1.

37.  On or about July 25, 2000, co-conspirator Partner 1 signed a check in the amount of $3,000 drawn on Partnership 2 made payable to a private school to pay for a portion of the tuition of a dependent relative of co-conspirator CFO, which co-conspirator CFO falsely characterized on the books and records of Partnership 2 as a charitable contribution.

38.  In or about December 2000, defendant RICHARD STADTMAUER told co-conspirator CFO that the Real Estate Partnerships would pay for a portion of the private school tuition for co-conspirator CFO's dependant relatives in lieu of a bonus.

39.  On or about December 8, 2000, a check in the amount of $13,000 was drawn on Partnership 2 made payable to a private school to pay for a portion of the tuition of a dependent relative of co-conspirator CFO, which he falsely characterized on the books and records of Partnership 2 as a charitable contribution.

### Tuition for Employee A of the Real Estate Partnerships

40.  In or about the summer of 2000, when an employee of the Real Estate Partnerships ("Employee A") asked co-conspirator CFO about the possibility of obtaining a pay raise, co-conspirator Partner 1 and defendant RICHARD STADTMAUER directed that rather than give Employee A a pay raise, the partnerships would pay a portion of the private school tuition of Employee A's dependent

41

relatives.

41. On or about August 21, 2000, co-conspirator CFO falsely characterized as a charitable contribution on the general ledger of Partnership 3 checks that he had approved in the amounts of $2,375 and $2,900. These checks which had been drawn on an account of Partnership 3, were made payable to a private school and were used to pay for the tuition of Employee A's dependent relative.

42. On or about August 21, 2000, defendant RICHARD STADTMAUER signed the checks described in paragraph 41, knowing that the checks were being used to pay the private school tuition of a dependent relative of Employee A, but were being mischaracterized as charitable contributions on the books and records of the partnership.

43. On or about August 28, 2000, co-conspirator CFO falsely characterized as a charitable contribution on the general ledger of Partnership 3 a check that he had approved in the amount of $2,725. This check, which had been drawn on an account of Partnership 3, was made payable to a private school and was used to pay for the tuition of Employee A's dependent relative.

Tuition for Employee B of the Real Estate Partnerships

44. In or about January 26, 1999, at a Tuesday morning meeting, co-conspirator Partner 1, in the presence of defendant MARCI PLOTKIN and defendant RICHARD STADTMAUER, directed that

42

Partnership 4 pay a portion of the private school tuition of the dependent relatives of another employee of the Real Estate Partnerships ("Employee B").

45. On or about June 21, 1999, co-conspirator CFO falsely characterized as a charitable contribution on the general ledger of Partnership 2 a check that he had approved in the amount of $9,543.80. This check, which had been drawn on an account of Partnership 2, was made payable to a private school and used to pay for the tuition of Employee B's dependent relatives.

46. On or about November 23, 1999, co-conspirator CFO falsely characterized as a charitable contribution on the general ledger of Partnership 2 a check that he had approved in the amount of $10,000. This check, which had been drawn on an account of Partnership 2, was made payable to a private school and used to pay for the tuition of Employee B's dependent relatives.

47. On or about December 17, 1999, co-conspirator CFO falsely characterized as a charitable contribution on the general ledger of Partnership 2 a check that he had approved in the amount of $5,160. This check, which had been drawn on an account of Partnership 2, was made payable to a private school and used to pay for the tuition of Employee B's dependent relatives.

## Payments to or for Employees of the Real Estate Partnerships Not Included as Income on IRS Forms W-2

48. On or about February 1, 2000, defendants RICHARD

43

STADTMAUER and MARCI PLOTKIN, and co-conspirator Partner 1 and co-conspirator CFO attended a Tuesday morning meeting, at which they discussed using $100,000 in Management Company funds to pay for a personal line of credit and car loan of an employee of the Real Estate Partnerships ("Employee C").

49. On or about March 24, 2000, co-conspirator Partner 1 signed a check in the amount of $8,018.85 drawn on the account of the Management Company, made payable to a finance company to pay off the car loan of Employee C.

50. On or about March 24, 2000, co-conspirator Partner 1 signed a check in the amount of $41,981.15, made payable to a financial institution and applied to pay down an outstanding line of credit of Employee C.

51. On or about December 22, 2000, defendant RICHARD STADTMAUER signed a check issued outside of the normal payroll system, in the amount of $50,000, drawn on the account of the Management Company, made payable to the financial institution to pay down the line of credit of Employee C.

52. On or about December 26, 2001, defendant RICHARD STADTMAUER signed a check issued outside of the normal payroll system, in the amount of $50,000, drawn on the account of the Management Company, made payable to the financial institution to pay down the line of credit of Employee C.

All in violation of Title 18, United States Code, Section 371.

COUNTS 2-25

Aiding and Assisting in the Preparation of False Tax Returns

1.   Paragraphs 1 to 5 and 8 to 9 of Count 1 are hereby incorporated and realleged as if fully set forth herein.

2.   On or about the filing dates listed below, in Essex and Ocean Counties, in the District of New Jersey and elsewhere, the defendants set forth below did knowingly and willfully aid and assist in, and procure, counsel, and advise the preparation and presentation of U.S. Partnership Tax Returns, IRS Forms 1065, which were fraudulent and false as to material matters, as described in paragraphs 8 and 9 of Count 1:

| COUNT | DEFENDANTS | PARTNERSHIP | TAX YEAR | FILING DATE |
|-------|-----------|-------------|----------|-------------|
| 2 | Marci Plotkin | Partnership 1 | 1998 | April 14, 1999 |
| 3 | Marci Plotkin<br>Stanley Bekritsky<br>Richard Stadtmauer | Partnership 1 | 1999 | April 16, 2000 |
| 4 | Marci Plotkin<br>Richard Stadtmauer<br>Anne Amici | Partnership 1 | 2000 | April 15, 2001 |
| 5 | Marci Plotkin | Partnership 2 | 1998 | April 19, 1999 |
| 6 | Marci Plotkin<br>Stanley Bekritsky<br>Richard Stadtmauer<br>Anne Amici | Partnership 2 | 1999 | April 13, 2000 |
| 7 | Marci Plotkin<br>Richard Stadtmauer<br>Anne Amici | Partnership 2 | 2000 | April 2, 2001 |
| 8 | Marci Plotkin | Partnership 3a | 1998 | April 17, 1999 |
| 9 | Marci Plotkin | Partnership 3b | 1998 | April 17, 1999 |

| 10 | Marci Plotkin | Partnership 3c | 1998 | April 17, 1999 |
|----|---------------|----------------|------|----------------|
| 11 | Marci Plotkin<br>Stanley Bekritsky<br>Richard Stadtmauer<br>Anne Amici | Partnership 3a | 1999 | April 13, 2000 |
| 12 | Marci Plotkin<br>Stanley Bekritsky<br>Richard Stadtmauer<br>Anne Amici | Partnership 3b | 1999 | April 16, 2000 |
| 13 | Marci Plotkin<br>Stanley Bekritsky<br>Richard Stadtmauer<br>Anne Amici | Partnership 3c | 1999 | April 13, 2000 |
| 14 | Marci Plotkin<br>Richard Stadtmauer | Partnership 3a | 2000 | April 15, 2001 |
| 15 | Marci Plotkin<br>Richard Stadtmauer | Partnership 3b | 2000 | April 15, 2001 |
| 16 | Marci Plotkin<br>Richard Stadtmauer | Partnership 3c | 2000 | April 15, 2001 |
| 17 | Marci Plotkin | Partnership 4 | 1998 | April 14, 1999 |
| 18 | Marci Plotkin<br>Stanley Bekritsky<br>Richard Stadtmauer<br>Anne Amici | Partnership 4 | 1999 | April 16, 2000 |
| 19 | Marci Plotkin<br>Richard Stadtmauer | Partnership 4 | 2000 | April 18, 2001 |
| 20 | Marci Plotkin | Partnership 5 | 1998 | April 14, 1999 |
| 21 | Marci Plotkin<br>Stanley Bekritsky<br>Richard Stadtmauer<br>Anne Amici | Partnership 5 | 1999 | April 21, 2000 |
| 22 | Marci Plotkin<br>Richard Stadtmauer<br>Anne Amici | Partnership 5 | 2000 | April 18, 2001 |
| 23 | Marci Plotkin<br>Richard Stadtmauer | Partnership 6 | 2000 | April 2, 2001 |

| 24 | Marci Plotkin<br>Richard Stadtmauer<br>Anne Amici | Partnership 6 | 2001 | April 8, 2002 |
| 25 | Marci Plotkin<br>Richard Stadtmauer<br>Anne Amici | Management<br>Company | 2000 | April 16, 2001 |

In violation of Title 26, United States Code, Section 7206(2).

48

## COUNTS 26-29

### Making and Subscribing False Personal Tax Returns

1. Paragraph 1 of Count 1 is hereby incorporated and realleged as if fully set forth herein.

2. From on or about September 16, 2000 to on or about December 5, 2003, defendant MARCI PLOTKIN signed and caused to be filed with the IRS U.S. Individual Income Tax Returns, Forms 1040 for the tax years 1999, 2000, 2001 and 2002.

3. Defendant MARCI PLOTKIN intentionally did not report additional taxable income on these Form 1040 tax returns. Specifically, defendant MARCI PLOTKIN failed to report gross income received in the form of private school tuition payments made on her behalf for the benefit of her dependent relative by various Real Estate Partnerships in the following tax years in these approximate amounts:

| TAX YEAR | UNREPORTED PRIVATE SCHOOL TUITION INCOME |
|----------|------------------------------------------|
| 1999     | $10,515                                  |
| 2000     | $13,536                                  |
| 2001     | $14,200                                  |
| 2002     | $15,600                                  |

4. Defendant MARCI PLOTKIN also falsely claimed Schedule C deductions for an accounting and tax preparation business in the following tax years in these approximate amounts:

49

| TAX YEAR | APPROXIMATE AMOUNT OF FALSE DEDUCTIONS |
|----------|----------------------------------------|
| 1999 | $90,000 |
| 2000 | $130,000 |
| 2001 | $90,000 |
| 2002 | $80,000 |

5.   Defendant MARCI PLOTKIN also intentionally omitted filling out and filing a Schedule H to reflect the salary paid to, and the employment taxes that should have been withheld from, household employees in the following tax years in these approximate amounts:

| TAX YEAR | SALARY PAID TO HOUSEHOLD EMPLOYEES | EMPLOYMENT TAX DUE AND NOT REPORTED AND PAID |
|----------|-----------------------------------|----------------------------------------------|
| 1999 | $22,350 | $3,420 |
| 2000 | $23,400 | $3,580 |
| 2001 | $23,400 | $3,580 |
| 2002 | $23,400 | $3,580 |

6.   These Form 1040 tax returns contained written declarations that the returns were signed under the penalties of perjury.

7.   On or about the dates listed below, in Essex County, in the District of New Jersey and elsewhere, defendant

MARCI PLOTKIN

knowingly and willfully did make and subscribe to the following U.S. Individual Income Tax Returns, IRS Forms 1040, which she did

not believe to be true and correct as to every material matter:

| COUNT | TAX YEAR | FILING DATE | FALSE MATERIAL MATTERS |
|-------|----------|-------------|------------------------|
| 26 | 1999 | September 16, 2000 | Gross Income, Schedule C Deductions and Omission of Schedule H |
| 27 | 2000 | August 14, 2001 | Gross Income, Schedule C Deductions and Omission of Schedule H |
| 28 | 2001 | November 8, 2002 | Gross Income, Schedule C Deductions and Omission of Schedule H |
| 29 | 2002 | December 5, 2003 | Gross Income, Schedule C Deductions and Omission of Schedule H |

In violation of Title 26, United States Code, Section 7206(1).

51

COUNT 30

## Obstruction of Justice (Accounting Firm Subpoena)

1. Paragraphs 1 and 2 of Count 1 are hereby incorporated and realleged as if fully set forth herein.

2. On or about February 25, 2003, the Accounting Firm was served with federal grand jury subpoenas requiring production of documents related to a grand jury investigation.

3. Defendant MARCI PLOTKIN and defendant STANLEY BEKRITSKY, as document custodians for the Accounting Firm, intentionally did not produce documents known by them to be in the possession of the Accounting Firm and responsive to the subpoenas to the grand jury.

4. In or about December 2003, federal agents executing a search warrant at the Accounting Firm recovered documents responsive to the subpoenas to the grand jury in, and in the vicinity of, the offices of defendant MARCI PLOTKIN and defendant STANLEY BEKRITSKY, that had not been produced to the grand jury.

5. From on or about February 25, 2003 to in or about December 2003, in Essex County, in the District of New Jersey and elsewhere, defendants

MARCI PLOTKIN
and STANLEY BEKRITSKY

did knowingly, willfully and corruptly conceal a record, document, and other object, and attempt to do so, with the intent to impair the object's integrity and availability for use in an

52

official proceeding--namely the grand jury investigation--and otherwise corruptly obstruct, influence, and impede the grand jury investigation, and attempt to do so.

In violation of Title 18, United States Code, Sections 1512(c)(1) and (2) and 2.

### COUNT 31

#### Obstruction of Justice (Plotkin Subpoena)

1.  Paragraph 1 of Count 1 is hereby incorporated and realleged as if fully set forth herein.

2.  On or about February 26, 2003, defendant MARCI PLOTKIN through her representative was served with a federal grand jury subpoena requiring production of documents related to a grand jury investigation.

3.  Defendant MARCI PLOTKIN intentionally did not produce documents known by her to be in her possession and responsive to the subpoenas to the grand jury.

4.  In or about December 2003, federal agents executing a search warrant at the residence of defendant MARCI PLOTKIN recovered documents responsive to the subpoena to the grand jury that had not been produced to the grand jury.

5.  From on or about February 26, 2003 to in or about December 2003, in Essex County, in the District of New Jersey and elsewhere, defendant

#### MARCI PLOTKIN

did knowingly, willfully and corruptly conceal a record, document, and other object, and attempt to do so, with the intent to impair the object's integrity and availability for use in an official proceeding--namely the grand jury investigation--and otherwise corruptly obstruct, influence, and impede the grand

54

jury investigation, and attempt to do so.

In violation of Title 18, United States Code, Sections 1512(c)(1) and (2) and 2.

████████████████████████

FOREPERSON

CHRISTOPHER J. CHRISTIE
United States Attorney

55

CASE NUMBER: _____ 06- ____

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

MARCI PLOTKIN,
STANLEY BEKRITSKY,
RICHARD STADTMAUER, and
ANNE AMICI

# INDICTMENT FOR

18 U.S.C. §§ 371, 1512 & 2
26 U.S.C. §§ 7206(1) & 7206(2)

A True Bill,

_____
Foreperson

CHRISTOPHER J. CHRISTIE
U.S. ATTORNEY
NEWARK, NEW JERSEY

THOMAS J. EICHER AND RACHAEL A. HONIG
ASSISTANT U.S. ATTORNEYS
(973) 353-6092 AND (973) 645-2777

USA-48AD 8
(Ed. 1/97)