# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                    )
**UNITED STATES OF AMERICA**   )
                                    )
                                    )     **Crim. No.:  05-249 (JLL)**
    **v.**                       )
                                    )     **ORAL ARGUMENT**
**MARCI PLOTKIN**                )     <u>**REQUESTED**</u>
**STANLEY BEKRITSKY**        )
**RICHARD STADTMAUER**     )
**ANNE AMICI**                   )
_____ )


## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## JOINT MOTION TO DISMISS AND STRIKE, IN PART, COUNTS 1-25
## <u>OF THE SUPERSEDING INDICTMENT</u>
### <u>(Joint Pretrial Motion No. 1)</u>




KOSTELANETZ & FINK, LLP

530 5th Ave., 22nd Fl.
New York, NY 10036
(212) 808-8100

Counsel to Richard Stadtmauer


Dated:  March 9, 2007

# TABLE OF CONTENTS

Preliminary Statement........................................................................................1

ARGUMENT .....................................................................................................2

POINT I

    THE GOVERNMENT SEEKS TO INVERT THE RULE OF
        LENITY AND THE DOCTRINES OF VAGUENESS AND
        WILLFULNESS.................................................................2

POINT II

    DISMISSAL IS REQUIRED BECAUSE THE GOVERNMENT
        CANNOT ESTABLISH CLARITY IN THE LAW OF
        CAPITALIZATION.............................................................5

        A.    The Authorities Cited By the Government Fail to
                Establish Clarity...................................................5

        1.    The Government Misconstrues § 263.........................5

        2.    The Government's Authorities Are Clearly
                Distinguishable....................................................11

        B.    The Government's "General Standards" of
                Capitalization Provide No Clear Guidance................14

CONCLUSION ..................................................................................................16

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Adler v. Commissioner, 330 F.2d 91 (9th Cir. 1964)................................................11

Appeal of Cotton Concentration Co., 4 B.T.A. 121 (1926)....................................13

Beck v. Commissioner, 67 T.C.M. 2469 (1994) ........................................................6

Charlie Sturgill Motor Co. v. Commissioner, 32 T.C.M. (CCH) 1336 (1973)........13

Craig v. Commissioner, 7 T.C.M. (CCH) 532 (1948)........................................12, 13

Elect. Energy, Inc. v. United States, 13 Cl. Ct. 644, 665 (1987) ..............................5

Frank v. Commissioner, 71 T.C.M. (CCH) 2748 (1996) .........................................12

Gehl Co. v. Commissioner, 795 F.2d 1324 (7th Cir. 1986) .....................................11

H.S. Crocker Co., Inc. v. Commissioner, 15 B.T.A. 175 (1929) .............................13

Kaonis v. Commissioner, 37 T.C.M. (CCH) 792 (1978) .........................................12

McDonald v. Commissioner, 70 T.C.M. (CCH) 271 (1995) ....................................12

Midland Empire Packing Co. v. Commissioner, 14 T.C. 635 (1950).......................14

Oberman Manufacturing Co. v. Commissioner, 47 T.C. 471 (1967) ................13, 14

Ocean Sands Holding Corp. v. Commissioner, 41 T.C.M. (CCH) 1 (1980) ...........13

Otis v. Commissioner, 73 T.C. 671 (1980) ..............................................................12

Paxton v. Commissioner, 61 T.C.M. (CCH) 2630 (1991) ...................................6, 12

Rose v. Haverty Furniture Co., 15 F.2d 345 (5th Cir. 1926)....................................14

Sleiman v. Commissioner, 74 T.C.M. (CCH) 1270 (1997) ......................................12

Transport Manufacturing & Equip. Co. v. Commissioner, 434 F.2d 373 (8th Cir. 1970) ................................................................................13

Tsakopoulis v. Commissioner, 83 T.C.M. (CCH) 1064 (2002) ...............................13

United States v. D'Alessio, 822 F. Supp. 1134 (D.N.J. 1993)..................................3

United States v. Diamond, 788 F.2d 1025 (4th Cir. 1986)........................................4

United States v. George, 420 F.2d 991 (9th Cir. 2005)...................................4, 8, 15

United States v. Harris, 942 F.2d 1125 (7th Cir. 1991)...........................................15

United States v. Lanier, 520 U.S. 259 (1997) .........................................................15

United States v. Mallas, 762 F.2d 361 (4th Cir. 1985)........................................4, 15

United States v. Pirro, 212 F.3d 86 (2d Cir. 2000)..............................................4, 15

United States v. Russell, 804 F.2d 571 (9th Cir. 1986)............................................4

United States v. Thompson/Center Arms Co., 504 U.S. 505 (1992) ........................3

Watts v. Commissioner, 34 T.C.M. (CCH) 613 (1975) ..........................................12

## FEDERAL STATUTES

26 U.S.C. § 263(a) ..................................................................................................5

26 U.S.C. § 6664(c) .................................................................................................3

## FEDERAL RULES

Federal Rule of Criminal Procedure 7(d) ...............................................................16

Federal Rule of Criminal Procedure 12(b)(2)..........................................................16

## REGULATORY AUTHORITIES

31 C.F.R. § 10.34(a).................................................................................................3

Prop. Treas. Reg. §§ 1.263(a)-1 to -3, 71 Fed. Reg. 48590 (Aug. 21, 2006) ........7, 9

Proposed Regulations Issued for Capitalization of Tangible Assets, IR-2006-130 (Aug. 18, 2006)........................................................................................15

Requests for Comments Concerning the Application of Sections 162 and 263 to Tangible Property, IRS Notice 2004-6, 2004-3 I.R. B. 208 (Jan. 20, 2004) ..................................................................................................15

Treas. Reg. § 1.48-1(e)(2) ...............................................................................8

Treas. Reg. § 1.162-4 ...................................................................................2, 5

## MISCELLANEOUS AUTHORITIES

FASB Interpretation No. 48 (June 2006) ...................................................10

Fed. Tax Coordinator 2d (RIA) (2005) .....................................................8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                )
**UNITED STATES OF AMERICA**    )
                                )
                                )    **Crim. No.:  05-249 (JLL)**
        **v.**                  )
                                )    **ORAL ARGUMENT**
**MARCI PLOTKIN**               )    **REQUESTED**
**STANLEY BEKRITSKY**           )
**RICHARD STADTMAUER**          )
**ANNE AMICI**                  )
_____ )

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**JOINT MOTION TO DISMISS AND STRIKE, IN PART, COUNTS 1-25**
**OF THE SUPERSEDING INDICTMENT**
**(Joint Pretrial Motion No. 1)**

**Preliminary Statement**

The government does not dispute that the IRS concluded, prior to this case, that the capitalization rules were marked by "uncertainty" and "controversy," subject to "debate," and "not fair to taxpayers."  *See* Mem. in Supp. of Joint Mot. ("Mem.") at 5-10 (citing IRS regulatory authorities).  Indeed, the government concedes—echoing IRS pronouncements—that there is no "list of the items that must be capitalized or those that may be expensed."  *See* Opp. to Pre-Trial Mots. ("Opp.") at 14.  Nevertheless, the government now posits that this prosecution may proceed because the capitalization rules here are clear.

In attempting to concoct bright-line rules, however, the government

ignores not only the IRS's prior admissions but also the context of this case—

which, in contrast to the authorities string-cited by the government, involves

massive apartment complexes comprised of multiple buildings and apartments.  In

this context, the law lacks clarity as to whether the replacement of a refrigerator (or

a carpet, a floor, a roof, or a bathroom fixture) in an apartment would "appreciably

prolong" the life of the overall property or "materially add" to its overall value,

therefore requiring capitalization (in contrast to a smaller property, for which the

determination would be apparent).  *See* Treas. Reg. § 1.162-4.

Given these circumstances, it is impermissible to mount a criminal

prosecution because (1) the Due Process Clause forbids a prosecution based on

vague rules, and (2) the government cannot as a matter of law establish willfulness.

## ARGUMENT

## POINT I

## THE GOVERNMENT SEEKS TO INVERT THE RULE OF LENITY AND THE DOCTRINES OF VAGUENESS AND WILLFULNESS

The government leads its opposition with the remarkable and

unsupported contention that if "the law governing the treatment of a certain item is

truly 'unclear,' the tax law calls for that item to be capitalized, not expensed,"

Opp. at 14—in other words, that ambiguity should actually cut in favor of criminal

prosecution.  That proposition turns inside out established legal principles.  It not

only would reverse the burden of proof; it would also eviscerate clear law

dismissing criminal tax charges predicated on unclear tax rules.

The rule of lenity in criminal matters demands that "<u>any uncertainty</u> regarding [a given law] should be resolved in favor of the defendants." *United States v. D'Alessio*, 822 F. Supp. 1134, 1143 (D.N.J. 1993) (emphasis added). And that rule applies in tax cases no less than in other criminal prosecutions. *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 & n.10 (1992) (plurality) ("apply[ing] the rule of lenity and resolv[ing] the ambiguity" in the taxpayer's favor, even in a civil case, where the tax statute had criminal applications); *id.* at 519 (Scalia and Thomas, JJ., concurring in judgment).

In fact, if there is only a <u>small amount of uncertainty</u> about the application of a tax law, a taxpayer is entitled by regulation to take a position favorable to himself. The threshold is low: any "realistic possibility" that the taxpayer's position will later be sustained. *See* 31 C.F.R. § 10.34(a). Indeed, not even <u>civil</u> penalties for fraud or substantial understatements of tax (much less criminal prosecution) can result if the taxpayer had "reasonable cause" to take his position and acted in good faith. *See* 26 U.S.C. § 6664(c). The government's position cannot be squared with these rules.

Nor can it be squared with repeated decisions dismissing tax charges on the basis of unconstitutional vagueness and/or a failure to show willfulness as a matter of law. *See* Mem. at 11-23. Criminal charges have been dismissed, for

example, where the authority for the government's tax position was "distinguishable," *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000), and where there was "plausible support" for the defendant's position and "competing interpretations of the applicable law," *United States v. Mallas*, 762 F.2d 361, 363, 364 (4th Cir. 1985).[1]

Indeed, criminal prosecution is permissible only where the applicability of the tax law "is clear beyond any doubt." *See United States v. George*, 420 F.3d 991, 996 (9th Cir. 2005) (emphasis added) (quotation marks omitted); *United States v. Russell*, 804 F.2d 571, 575 (9th Cir. 1986). It is this standard—acknowledged by the government later in its opposition—that governs the Motion at hand. *See* Opp. at 25 (citing *Russell* for the proposition that "if no appellate court has explicitly so ruled" on the illegality of a tax treatment, fair notice exists if "it is clear beyond any doubt that [the] scheme is illegal under established principles of tax law"). It is a standard that the government cannot meet as a matter of law.

---

[1] *United States v. Diamond*, 788 F.2d 1025, 1028, 1030 (4th Cir. 1986), cited by the government, *see* Opp. at 27, is instructive. There, the court rejected a challenge to tax charges, but only where the "issue has been thoroughly litigated, and courts have clearly and consistently held" against the defendant's position, such that the "government's position in this case merely reflects the well-settled rule."

## POINT II

## DISMISSAL IS REQUIRED BECAUSE THE GOVERNMENT CANNOT ESTABLISH CLARITY IN THE LAW OF CAPITALIZATION

The government contends that "general standards" of capitalization and reported tax cases provide definitive answers here. Opp. at 14. But the government is mistaken. As the courts, commentators, and the IRS have already concluded, distinguishing between expenses and capital items presents "an almost insoluble problem." *Elec. Energy, Inc. v. United States*, 13 Cl. Ct. 644, 665 (1987) (quotation marks omitted).

### A.   The Authorities Cited By the Government Fail to Establish Clarity.

### 1.   The Government Misconstrues § 263.

The tax code requires capitalization for "[a]ny amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." 26 U.S.C. § 263(a). However, "incidental repairs which neither <u>materially</u> add to the value of the property nor <u>appreciably</u> prolong its life, . . . may be deducted as an expense . . . ." *See* Treas. Reg. § 1.162-4 (emphasis added). Thus, the question of context arises: What "property"—or, as it is known, "unit of property"—should be the baseline against which to measure the impact of a given expenditure? Depending on the answer to this question, a particular item might properly be capitalized in the context of a small property (as

5

in the government's cited cases), but properly expensed in the context of larger property (as here).[2]

In an effort to manufacture bright-line rules, the government disregards that the expenditures at issue here came in the context of a unit of property consisting of massive, multi-building apartment complexes. Instead, the government treats the colossal apartment complexes as if they were identical to a single beach-front rental in Florida. All perspective is lost in the government's analysis. Oakwood (Partnership 1) alone includes 107 buildings and 1224 units; Elmwood (Partnership 2) has 53 buildings and 666 units; Quail Ridge (Partnership 3) has 54 buildings and 1032 units; Pheasant Hollow (Partnership 4) has 28 buildings and 440 units; QEM (Partnership 5) has 2 buildings and 203 units; and Mt. Arlington (Partnership 6) has 21 buildings and 162 units. Some of these properties were valued at over $50 million.

The government's opposition fails to acknowledge what the IRS, in

---

[2] Indeed, one of the government's own cases emphasized the importance of the "relative magnitude of the expenditures" at issue in comparison to the original purchase price of rental properties as a whole. *See Paxton v. Commissioner*, 61 T.C.M. (CCH) 2630 (1991) (finding that the expenditures, for rehabilitation, were "a significant percentage of the original purchase price" of four rental units—each purchased for less than $15,000). *See also Beck v. Commissioner*, 67 T.C.M. 2469 (1994) (holding that carpet replacement costs in an apartment building did not require capitalization, emphasizing that "[t]he carpet did not materially add to the value of the property nor prolong the property's useful life"), *aff'd on other issues*, 64 F.3d 655 (4th Cir. 1995) (per curiam) (table).

issuing proposed <u>new</u> regulations under Section 263, has already all but

conceded—that the current regulations (which were in effect during the time

period of this case) "do not provide any guidance" on the question of what

constitutes the unit of property for purposes of the capitalization/expense

determination.  *See* Prop. Treas. Reg. §§ 1.263(a)-1 to -3, 71 Fed. Reg. 48590, at

48594-95 (Aug. 21, 2006) (Ex. D).  In short, the law is unclear.

      As stated by Rutgers University School of Law Professor Charles

Davenport in his attached Declaration: "In my opinion, there were no clear IRS

rules prohibiting the Kushner Companies from treating each apartment complex as

the relevant 'unit of property' for purposes of making capitalization vs. expense

determinations."  *See* Decl. of Charles Davenport ¶ 9 (attached as Ex. E).

      In the case of expenditures related to a building—the issue in this

case—the IRS's proposed regulations recognize that the law has evolved to treat

"<u>the building and its structural components (as defined in § 1.48-1(e)(2))</u>" as "<u>a</u>

<u>single unit of property</u>."  Prop. Treas. Reg. § 1.263(a)-3(d)(2)(iv), 71 Fed. Reg. at

48612 (emphasis added) (Ex. D).[3]  The government makes the outrageous assertion

that defendants have affirmatively misrepresented the import of the "unit of

property" concept because, according to the government, the types of expenditures

---

[3] As explained in their preamble, the proposed regulations synthesize principles
drawn from the case law.  *See* Prop. Treas. Reg. §§ 1.263(a)-1 to -3, 71 Fed. Reg.
48590, at 48594 (Ex. D).

at issue here (flooring, roofing, appliances, etc.) are "clearly" not "structural

components" but rather stand-alone expenditures required to be capitalized.  Opp.

at 21-22.  But the government ignores that the IRS has defined "structural

components" in broad and inclusive terms (and has cited to this definition in the

proposed regulations):

> The term "structural components" includes . . . <u>floors</u>[]
> and ceilings, as well as any permanent coverings therefor such
> as paneling or tiling; windows and doors; . . . plumbing and
> plumbing <u>fixtures, such as sinks and bathtubs</u>; . . . lighting
> fixtures; . . . and <u>other components</u> relating to the operation or
> maintenance of a building.

Treas. Reg. § 1.48-1(e)(2) (emphases added).[4]  Under this definition, the

government cannot possibly maintain that capitalization of the items at issue here

is "beyond any doubt." *George*, 420 F.2d at 996 (quotation marks omitted).

---

[4]   Section 1.48-1(e)(2) does not explicitly address appliances.  That is not
surprising.  The definition of "structural components" was borrowed from a section
of the tax regulations addressing business tax credits, which are generally not
available for properties, such as residential properties, that would contain
appliances.  *See* Treas. Reg. § 1.48-1(h).  But, given the broad scope of the
definition of "structural components" as "<u>includ[ing]</u>" such items as plumbing
fixtures, sinks, bathtubs, and lighting fixtures, it certainly seems logical that
appliances like refrigerators—so integral to the operation of an apartment unit as a
rental property—would also qualify.  If nothing else, that would be an eminently
reasonable interpretation for a taxpayer to take.  *See also* 16 Fed. Tax Coordinator
2d (RIA) ¶ L-6108 (Mar. 24, 2005) ("Where a broken part or piece of equipment is
replaced by a new one, the fact that the new one may have a useful life of more
than one year won't necessarily bar deduction of its cost as a repair expense
provided it doesn't prolong the life or increase the value of the basic property unit
of which it is a part and doesn't adapt the basic unit to a new or different use.").

Moreover, the government's contention that each item in a massive apartment complex must be considered a stand-alone item (and therefore capitalized) defies common sense. It would force taxpayers to endure extraordinary, if not impossible, administrative burdens. Unless an apartment complex were treated as the unit of property, a taxpayer would be required separately to account for and value each appliance, carpet, and floor within each and every unit of each and every apartment complex. *See* Davenport Decl. ¶ 10 (Ex. E). A sensible reading of the tax law does not require that absurd result. *See id.* ¶ 11 (finding that unit of property approach utilized here was a correct method of tax accounting).[5]

Further, the government fails to respond to defendants' additional position—that the replacement of such items as appliances may be viewed as *de minimus* expenditures in the context of massive apartment complexes and, thus, not subject to capitalization. *See* Mem. at 17 n.6 (citing authorities). In fact, the

---

[5] Keeping its blinders on, the government also tries to inflate a solitary example in the proposed regulations discussing the replacement of a refrigerator in a 10-unit apartment building. *See* Opp. at 20-21. But that example asks the reader to "assume" that "the refrigerator is the unit of property." *Id.* (*quoting* 71 Fed. Reg. at 48610 (emphasis added)). This assumption would be inapplicable in the context of massive apartment complexes like those held by partnerships here. (In circumstances not applicable here, a refrigerator might be considered its own unit of property. *See, e.g.*, Proposed Treas. Reg. § 1.263(a)-3(d)(2)(vii), 71 Fed. Reg. at 48612 (Ex. D).) In addition, the example does not even purport to address what constitutes a "unit of property." Instead, the example relates to a section of the proposed regulations regarding a different question.

practice of treating *de minimus* costs differently was recently recognized by the accounting profession in guidance issued by the Financial Accounting Standards Board.[6]

Finally, as explained by Professor Davenport, IRS rules would, in any event, have <u>prevented</u> the Kushner Companies and their accountants from switching to the capitalization approach urged by the government.  The Kushner Companies had selected a method of tax accounting, utilized it consistently, and were not permitted simply to change it on their own—even if it was (erroneously) deemed incorrect.  *See* Davenport Decl. ¶¶ 15-26 (Ex. E).  Nor is it at all clear that the approach to capitalization adopted by the Kushner Companies and their accountants resulted in a tax benefit to the partnerships.  *Id.* at ¶ 8.  In the end, it affected the timing, but not the total amount, of the deductions taken over the life of the apartment complexes.  *Id.*

At the very least, it surely cannot be said that the law of capitalization <u>clearly</u> precluded treating the expenditures at issue here as part of the overall "unit of property" consisting of massive apartment complexes.

---

[6] In discussing how to account for uncertainty in tax positions on a company's financial statements, the guidance included as an example an enterprise that "has established a capitalization threshold of $2,000 for its tax return for routine property and equipment purchases," where "management expects the taxing authority to allow this position when and if examined."  FASB Interpretation No. 48 at App. A, ¶¶ A12-A13 (June 2006).  Under the guidance, the enterprise is permitted to proceed with its accounting as if it is more likely than not that the enterprise's tax position will be sustained by the taxing authorities.  *Id.*

### 2.      The Government's Authorities Are Clearly Distinguishable.

The government's authorities do not remotely demonstrate that there

is clarity in the law of capitalization.

The government relies on an informal IRS publication, *Residential*

*Rental Property (Including Rental of Vacation Homes)*, to argue that capitalization

is mandatory for the expenditures at issue—roofing, paving, carpeting and other

flooring, appliances, and bathroom fixtures.  Opp. at 22-24.  But, as the

government frequently asserts, an informal publication is not law and is of no

precedential value.[7]  Furthermore, this IRS publication, by its own terms, is

inapplicable.  Recognizing that context matters, it instructs readers (in an excerpt

not cited by the government):  "This publication is designed for those who only

rent out a few residential dwelling units."  Gov't Ex. B at 2 (emphasis added).

Similarly, the government gathers cases that it claims establish a

bright-line test for the capitalization of expenditures.  But the government glosses

over critical differences between the facts here and the circumstances there.  Most

---

[7] *See, e.g., Gehl Co. v. Commissioner*, 795 F.2d 1324, 1333 (7th Cir. 1986) ("[A]s a
general rule, informal Treasury publications and pamphlets such as [the handbook
at issue in that case] do not bind the government."); *Adler v. Commissioner*, 330
F.2d 91, 93 (9th Cir. 1964) (taxpayer could not rely on government publication,
"Your Federal Income Tax For Individuals"); *see also* Davenport Decl. ¶¶ 13-14
(explaining, in part: "I have practiced, taught, and studied tax law since 1959.  In
that time, I have never seen a citation to an IRS publication as the establishment of
clear, accurate law.").

important, <u>none</u> of the government's cited cases involve the type of large, multi-building apartment complexes at issue here.

As with its dependence on the informal IRS publication, the government's cited cases address the question of capitalization versus expensing generally in the context of small properties:

• With respect to carpeting and other flooring, bathroom fixtures, and appliances, Opp. at 16, the government cites to cases where the taxpayer owned a one-third interest in an apparent single unit rental property, *Frank v. Commissioner*, 71 T.C.M. (CCH) 2748 (1996); where the taxpayer's property was a single rental house, *Kaonis v. Commissioner*, 37 T.C.M. (CCH) 792 (1978); or where other similarly small properties were involved.[8]

• With respect to roofing and paving, Opp. at 19, the government relies on cases involving a chiropractor's office building, *Watts v. Commissioner*, 34 T.C.M. (CCH) 613 (1975), a single rental house, *Craig v. Commissioner*, 7 T.C.M. (CCH) 532 (1948), and other relatively small, or otherwise distinguishable,

_____

[8] *See also Sleiman v. Commissioner*, 74 T.C.M. (CCH) 1270 (1997) (two video stores); *McDonald v. Commissioner*, 70 T.C.M. (CCH) 271 (1995) (duplex rental property); *Paxton v. Commissioner*, 61 T.C.M. (CCH) 2630 (1991) (four residential properties, whose purchase prices were all less than $15,000 each); *Otis v. Commissioner*, 73 T.C. 671 (1980) (rental property of unspecified dimension; no civil fraud penalty for taxpayer's position); *Watts v. Commissioner*, 34 T.C.M. (CCH) 613 (1975) (chiropractor's office building).

buildings.[9]

Moreover, the government cites no Supreme Court decision and no court of appeals decision from this circuit to support its tax position. *See Pirro*, 212 F.3d at 90 (upholding dismissal of tax charges where the government failed to provide "Second Circuit or Supreme Court authority" on the tax question at issue). Indeed, the <u>only</u> appellate decision referenced by the government recognized that "[w]here the line should be drawn between capital and current expenses often presents a practicable question of considerable difficulty." *See Transp. Mfg. & Equip. Co. v. Commissioner*, 434 F.2d 373, 378 (8th Cir. 1970).[10]

Furthermore, the government just sweeps under the rug the authorities cited by defendants in support of expensing the items at issue here. In *Oberman*

---

[9] *See Transp. Mfg. & Equip. Co. v. Commissioner*, 434 F.2d 373, 378 (8th Cir. 1970) (trucking company's terminal yards of unspecified size, where expenditures were considered "a part of the original construction"); *Tsakopoulis v. Commissioner*, 83 T.C.M. (CCH) 1064 (2002) (shopping center); *Ocean Sands Holding Corp. v. Commissioner*, 41 T.C.M. (CCH) 1 (1980) (newly paved road of unspecified length at trailer park); *Charlie Sturgill Motor Co. v. Commissioner*, 32 T.C.M. (CCH) 1336 (1973) (car dealership, and taxpayer failed to present any evidence on the issue); *Craig v. Commissioner*, 7 T.C.M. (CCH) 532 (1948) (single rental house); *H.S. Crocker Co., Inc. v. Commissioner*, 15 B.T.A. 175 (1929) (single, four-floor building requiring overhaul); *Appeal of Cotton Concentration Co.*, 4 B.T.A. 121 (1926) (warehouse owned by corporation engaged in the storage of cotton and merchandise).

[10] This case also based its decision regarding paving expenditures on the fact that they "constituted a part of the original construction" of facilities—a consideration plainly not applicable here. *See Transp. Mfg. & Equip. Co.*, 434 F.2d at 378.

*Manufacturing Co. v. Commissioner*, 47 T.C. 471, 476-77 (1967), for example, the Tax Court endorsed the expensing of extensive, structural roofing work at a factory building totaling $20,791 in 1961—approximately $140,000 in today's dollars. Moreover, in *Rose v. Haverty Furniture Co.*, 15 F.2d 345 (5th Cir. 1926), the court upheld a jury's verdict that costs for taxpayer's "new surface laid upon the old floor" could be expensed, finding that "it is difficult to see how the jury could have decided otherwise than it did." *Id.* at 346 (emphasis added). *See also Midland Empire Packing Co. v. Commissioner*, 14 T.C. 635 (1950) (lining of entire floor with concrete not required to be capitalized). So much for bright-line rules on these "bread-and-butter capital expenses." Opp. at 16.

## B.   The Government's "General Standards" of Capitalization Provide No Clear Guidance.

Without any specific authority, the government is left only with the "general standards" of capitalization, *see* Opp. at 14—principles that are fraught with ambiguity, as readily acknowledged by courts, commentators, and even the IRS. *See* Mem. at 5-10.

The government nonetheless argues that general statements of the law provide notice adequate to overcome a vagueness challenge. Opp. at 24-25. That is undoubtedly true at times. Not here, however. As the government's cited authority explains, while "general statements of the law are not inherently incapable of giving fair and clear warning," in other situations, "a very high degree

of prior factual particularity may be necessary." *See United States v. Lanier*, 520 U.S. 259, 271-72 (1997) (explaining that the unlawfulness must be "apparent").

This is especially true in tax matters, where courts have demanded that "very high degree of prior factual particularity" because the law is so complex and factual distinctions so critical. *See United States v. Harris*, 942 F.2d 1125, 1135 (7th Cir. 1991) ("broad principles contained" in a Supreme Court ruling— whose key language came from the Court's seminal decision on capitalization— "do not fill [the] gap"); *Pirro*, 212 F.3d at 91 (narrowly defining issue and rejecting authorities presented by the government as analogous to the issue); *Mallas*, 762 F.2d at 363 (framing tax question at issue in highly fact-specific terms).[11]

Here, the only question is whether capitalization is <u>clearly</u> required— "beyond any doubt," *see George*, 420 F.2d at 996 (quotation marks omitted)—for expenditures incurred in maintaining and upkeeping massive apartment complexes. No broad standard can answer that question.  It is a question for the Tax Court and civil appellate courts—not a criminal court—to determine.

---

[11] Notably, the government tries to distance this case from two of the recent IRS pronouncements acknowledging the ambiguities in the law of capitalization. *See* Opp. at 20.  But when the 2004 IRS notice and 2006 IRS press release talk about "uncertainty," "controversy," and "debate" in the law of capitalization, they are referring to the standards for repairs and improvements to tangible property—the very areas of the law of capitalization at issue here.  *See* Request for Comments Concerning the Application of Sections 162 and 263 to Tangible Property, IRS Notice 2004-6, 2004-3 I.R.B. 308 (Jan. 20, 2004) (Ex. A); Proposed Regulations Issued for Capitalization of Tangible Assets, IR-2006-130 (Aug. 18, 2006) (Ex. B).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the opening memorandum, Counts 1-25 should be dismissed and stricken, under Rule 12(b)(2) and Rule 7(d), to the extent that these Counts included allegations relating to the mischaracterization of capital improvements as ordinary business expenses.

Dated:      New York, New York
            March 9, 2007

Respectfully submitted,

KOSTELANETZ & FINK, LLP

By:     /s/ Robert S. Fink
        Robert S. Fink (RSF-7924)
        Caroline Rule (CR-6503)
        Megan L. Brackney (MLB-6870)
        530 Fifth Avenue
        New York, New York 10036
        (212) 808-8100
        Counsel to Richard Stadtmauer

WALDER, HAYDEN & BROGAN, P.A.

By:     /s/ Justin P. Walder
        Justin P. Walder
        5 Becker Farm Road
        Roseland, NJ 07068
        Counsel to Marci Plotkin

DORNBUSH SCHAEFFER STRONGIN
& VENAGLIA, LLP

By:   /s/ Richard J. Schaeffer
      Richard J. Schaeffer
      747 Third Avenue
      New York, NY 10017
      Counsel to Stanley Bekritsky

WEIR & PLAZA LLC

By:   /s/ Edward J. Plaza
      Edward J. Plaza
      321 Broad Street
      Red Bank, NJ 07701
      Counsel to Anne Amici

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the forgoing document

was served on the parties of record by electronic notification and by mailing a copy

thereof by First Class Mail, postage prepaid, to the following:

Thomas J. Eicher, AUSA
United States Attorney's Office
District of New Jersey
U.S. Department of Justice
970 Broad Street, Suite 700
Newark, NJ  07102

This, the 9th day of March 2007.


/s/ Robert S. Fink

Robert S. Fink