UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 05-249 (JLL) |
| v. | : | |
| MARCI PLOTKIN, STANLEY BEKRITSKY, RICHARD STADTMAUER, and ANNE AMICI | : : | Hon. Jose L. Linares |

SURREPLY OF THE UNITED STATES IN OPPOSITION TO
DEFENDANTS' JOINT MOTION TO DISMISS AND STRIKE,
IN PART, COUNTS 1-25 OF THE SUPERSEDING INDICTMENT

CHRISTOPHER J. CHRISTIE
United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102
(973) 645-2700

On the Brief:
Thomas J. Eicher
Rachael A. Honig
Assistant United States Attorneys

**PRELIMINARY STATEMENT**

The United States submits this surreply in response to the joint motion of defendants Marci Plotkin, Stanley Bekritsky, Richard Stadtmauer, and Anne Amici to dismiss and strike certain portions of Counts 1-25 of the Superseding Indictment. Defendants' reply brief, submitted on March 9, 2007, attaches an "expert" declaration by Charles Davenport, a tax professor at the Rutgers University School of Law. A brief surreply is necessary in order to address the contentions set forth for the first time in this declaration and incorporated in defendants' reply.

The government does not respond in this surreply to those arguments that were raised by defendants in their original moving papers and addressed by the government in its February 16, 2007, opposition brief. The government does, however, continue to respectfully reserve its right to supplement its responses by oral argument.

**ARGUMENT**

**I.   This Court is the "Expert" in What the Law Is, And Professor Davenport's Declaration Is Entitled to No Special Weight.**

As an initial matter, the government questions the propriety of defendants' submission of Professor Davenport's declaration — particularly as an attachment to a reply brief – and its relevance to this Court's determination of whether, as defendants claim, the law requiring the capitalization of the items alleged in the Superseding Indictment was so uncertain or unclear as to provide defendants with inadequate notice that their conduct was unlawful. Expert testimony that offers a legal conclusion is

1

generally inappropriate, as it is the Court, not an expert, that decides what the law is. See, e.g., United States v. Crockett, 435 F.3d 1305, 1314 (10th Cir. 2006). Moreover, Professor Davenport does not claim to have any special expertise other than in tax law generally, and a perusal of his resume reveals nothing that is particularly germane to this case. His "declaration" is therefore nothing more than yet another brief filed on behalf of defendants by yet another tax lawyer. The government respectfully submits that it should be entitled to no special weight in the Court's consideration of the matters at issue.

## II. There Is No Support For the Claim That the Tax Law Gave Defendants the Option of Treating An Entire Apartment Complex As a Single "Unit of Property."

Defendants' original brief claimed, almost as an afterthought, that there "recently" has been an "evolution in the law" that would allow taxpayers to treat an entire apartment complex and all of its contents as a single unit of property before determining whether an improvement to that property must be capitalized or instead may be expensed. (Memorandum In Support of Defendants' Joint Motion to Dismiss and Strike, In Part, Counts 1-25 of the Superseding Indictment ("Def. Memo.") at pp. 17-18.) The authorities cited by defendants in support of the existence of this so-called "evolution" date from the year 2000, at their earliest. (See id.) Defendants further claimed that this newly-evolved state of the law affirms that there has been uncertainty in the past and, retrospectively, provides "strong[] support[]" for the tax positions taken in the Real Estate Partnerships' returns. (Id. at p. 18.)

Defendants' reply brief and Professor Davenport's attached declaration now claim for the first time that at the time each of the real estate properties was purchased (in other words, as long ago as the mid-1980s), defendants and/or their business predecessors apparently foresaw this "evolution" in the law and made a deliberate, good-faith decision to treat each Real Estate Partnership — some of which, as defendants note, consisted of as many as 107 individual buildings — as a single "unit of property" for tax purposes. According to Professor Davenport, this determination was not clearly prohibited by the IRS at the time and was therefore permissible under the law. Furthermore, Professor Davenport claims, having made this election, defendants were effectively forced to continue using same "single unit of property" analysis in later years because to do otherwise would have required the permission of the IRS.

The question of what the appropriate "unit of property" should be in determining whether an expenditure should be capitalized or expensed is not a matter of the taxpayer's preference, however. See, e.g., Smith v. Commissioner, 300 F.3d 1023, 1030 (9th Cir. 2002) (rejecting taxpayer's characterization of 130-unit "cell line" in aluminum smelting facility as the applicable "unit of property" and instead considering each cell separately); United States v. Wisc. Power & Light Co., 38 F.3d 329, 337 (7th Cir. 1994) (rejecting claim that the IRS was required to accept taxpayer's classification of the applicable "unit of property" even if such classification had been consistently applied over time). It is, instead, a matter of law. Here, the law is clear: while a building and its structural components may be considered one unit of property, non-structural components must be

considered separately. This is what the proposed regulations say, and defendants do not contend that this is anything new. In fact, defendants concede that the proposed regulations "synthesize principles drawn from [existing] case law." (Def. Reply at n.3.)

Defendants claim that it is "outrageous" for the government to suggest that it is clear that, for example, a refrigerator is not a "structural component" of an apartment complex. Defendants refer to the definition of "structural component" contained in Treas. Reg. § 1.48-1, which relates to tax credits for certain depreciable property and has been expressly incorporated by reference in the proposed regulations. Defendants contend that this definition "does not explicitly address appliances" and that it would be "eminently reasonable" for a taxpayer to conclude that a refrigerator would qualify as a structural component. (Def. Reply at n.4.) Defendants would be well-served by reading the regulation in full.

Treas. Reg. § 1.48-1 deals with four kinds of depreciable property: (1) "tangible personal property"; (2) "other tangible property (not including a building and its structural components)"; (3) elevators or escalators meeting certain criteria; and (4) certain "qualified rehabilitated buildings." The language that defendants cite comes from the section of the regulation setting forth items that <u>are</u> considered "structural components" and that are therefore excluded from the definition of item no. 2, "other tangible property." <u>See</u> Treas. Reg. § 1.148-1(e). The reason that this language does not "explicitly address appliances," as defendants claim, is that <u>appliances already have been addressed — and excluded — in the section dealing with item no. 1, "tangible personal</u>

4

property." See id. at § 1.48-1(c) ("Tangible personal property includes all property (other than structural components) which is contained in or attached to a building.  Thus, such property as production machinery, printing presses, transportation and office equipment, refrigerators, grocery counters, testing equipment, display racks and shelves, and neon and other signs, which is contained in or attached to a building constitutes tangible personal property . . . .") (Emphasis added.)[1]

Professor Davenport's belated explanation for defendants' conduct therefore falls flat.  It is not up to the taxpayer to choose whichever "unit of property" characterization it finds to be the most advantageous, regardless of how consistent it might be about applying that characterization in subsequent years.  The law is clear.  The items that defendants expensed — including refrigerators — are capital items, and defendants were on notice that in failing to treat them appropriately, they were embarking on a course of conduct proscribed by law.

---

[1] This rule, incidentally, is explained to taxpayers in plain terms in IRS Publication 527, attached to the government's Memorandum in Opposition to Defendants' Pretrial Motions ("Govt. Opp.") as Exhibit B.  As set forth in the government's opposition brief, the Publication separates rental properties and their "structural components" from "personal property" such as furniture and appliances.  Contrary to Professor Davenport's, and defendants', claims, the government did not cite this publication as "prescribing rules of law." (Davenport Decl. at ¶ 14.) Rather, the government pointed out merely that it was "illustrative" in the context of the facts of this case.  ("Govt. Opp. at 22.)  Indeed, Professor Davenport himself concedes that publications "are quite frequently helpful" for "many purposes," including to "explain a common situation." Id. at ¶ 13.

### III. The Partnership's Tax Returns Contradict the Claim that Defendants Consistently Applied Any Alleged "Single Unit of Property" Approach.

Furthermore, the Partnership tax returns on which Professor Davenport's "expert" opinion relies simply do not evidence the "single unit of property" analysis that Professor Davenport claims they do. Professor Davenport states in his declaration:

> Upon purchase of an apartment complex, the partnerships capitalized the purchase cost. The purchase price of a complex was divided between land and improvements. The improvements would have included all building components, including roofing, carpeting, flooring, appliances, parking lots, etc. No component was accounted for separately at the time of purchase — that is, no portion of the purchase price was allocated to any specific component. <u>Instead, the partnerships treated the entire apartment complex of buildings, including all components, as a single unit of property.</u>

Davenport Decl. at ¶ 6(a) (emphasis added). These statements are factually inaccurate. In fact, when the Kushner Companies purchased an apartment complex, the purchase price was divided not merely between land, which is not depreciable, and improvements, which are. Instead, the Partnerships split the purchase price into at least three categories: (1) "land," (2) "building"; and (3) "improvements." More importantly, several of the Partnerships divided the cost still further. The Depreciation and Amortization Detail attached to Oakwood Gardens' 1999 tax return, for example, shows the depreciation of 196 separate assets, including each of the property's 107 buildings individually. The same document further shows that Oakwood Gardens capitalized and separately depreciated $190,264 in "building improvements" during tax year 1993, many years after the property was purchased. To take another example, Mt. Arlington Apartments separately capitalized $10,000 in "office equipment" as a component of its overall

6

purchase price, and depreciated that over seven years (as opposed to the 27.5 year life for "buildings"). And in 1996, Elmwood Village, which was purchased by the Kushner Companies in late 1995, recorded separate assets for "building," "building improvements," and more than half a million dollars in "personal property," which was depreciated using a seven-year depreciation schedule. The adjusting journal entries that defendant Anne Amici prepared in order to characterize the property's assets in this fashion show that the "building improvements" and "personal property" capitalized included roofing, signs, flooring, carpeting, and appliances.

    It is therefore flatly wrong to contend, as Professor Davenport does, that defendants were effectively forced to act as they did, in accordance with a decision made at the time the properties were purchased to treat entire apartment complexes as one "unit of property." Instead, it is clear that the Kushner Companies, and defendants, acted in whatever fashion they deemed to be in their best interest in any given year, regardless of what the tax law required. When many of the apartment complexes were purchased, it evidently was more convenient for the Kushner Companies to lump several different kinds of property together and depreciate it all using the same depreciation schedule, rather than going to the trouble of valuing separate categories of assets separately and assigning different depreciation schedules. Since the Kushner Companies chose a conservative depreciation schedule — typically 27.5 or 19 years as opposed to the five or seven year depreciation schedule that might have applied to some of the assets — this hardly would have been objectionable to the IRS. To say, however, that this entitled the

Partnerships to treat the entire apartment complex as a single "unit of property" when considering how later-acquired assets should be treated is absurd.  Capital items do not become "ordinary and necessary business expenses" just because the taxpayer has decided to use a longer depreciation schedule for such assets in the past.  Capital items must be capitalized and depreciated, just as they were when the properties were purchased.

## IV.    Preparing the Tax Returns Properly Would Not Have Been a "Mind-Boggling Administrative Task."

Professor Davenport claims that it would have been a "mind-boggling" administrative task for defendants to prepare the Partnership tax returns properly, because to do so would have required them to account separately for appliances, carpets, roofing, etcetera.  (Davenport Decl. at ¶ 10.)  Not content with "mind-boggling" as an adjective, defendants go further, claiming that such a requirement would "def[y] common sense," would impose "extraordinary, if not impossible, administrative burdens," and would be "absurd."  (Def. Reply at 9.)  A quick glance at the workpapers associated with the Partnership returns lays these outlandish claims to rest, however.  The Kushner Companies already maintain separate accounts in the Partnership books and records for these items, and did so during the time of the conduct alleged in the Superseding Indictment.  When a new flooring expenditure was made by one of the Partnerships, it typically was recorded in "flooring."  When a new appliance was purchased, it was recorded in "appliances."  When a roof was replaced, it was recorded in "roofing" — and

so on.  At the time the Partnership tax returns were prepared, therefore, these totals were readily available in the general ledger and easily could be carried over to the tax return.  Instead, the defendants falsely described them all as "repairs and maintenance" and expensed them.

That being said, the propriety or impropriety of a deduction does not turn in any way on administrative convenience.  The law is the law, and defendants were bound to comply with it no matter how onerous they found it.  See Deputy v. Du Pont, 308 U.S. 488, 493 (1940) (holding that the "allowance of deductions from gross income does not turn on general equitable considerations").

## V.     Defendants Were Not "Prohibited" From Correcting Their Unlawful Method of Accounting."

Finally, defendants and Professor Davenport claim that IRS rules would have "prevented" (Def. Reply at 10) or "prohibited" (Davenport Decl. at ¶ 4) defendants from changing their accounting practices to comply with the tax laws.  This is just silly.  IRS rules certainly provide that a taxpayer must obtain permission before changing its method of accounting, but such permission will of course be granted if the taxpayer's original method is improper and unlawful.  Furthermore, it is worth noting that defendants themselves freely switched back and forth between proper and improper tax accounting without obtaining any permission whatsoever.  For example, as set forth above, Elmwood Village in 1996 properly capitalized numerous items, such as carpets, flooring, roofing, and signs, that in later years it improperly expensed.  There is no evidence that defendants

or anyone else sought IRS permission for this change.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in the government's Memorandum in Opposition to Defendants' Pretrial Motions, the United States respectfully submits that defendants' Joint Motion to Dismiss and Strike, In Part, Counts One through 25 of the Superseding Indictment must be denied.

                                Respectfully submitted,

                                CHRISTOPHER J. CHRISTIE
                                United States Attorney

                                s/Thomas J. Eicher

By:    THOMAS J. EICHER
        Assistant U.S. Attorney

                                s/Rachael A. Honig

By:    RACHAEL A. HONIG
        Assistant U.S. Attorney

DATED:    March 15, 2007
                Newark, New Jersey

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 15th day of March, 2007, true and correct copies of the foregoing Surreply of the United States in Opposition to Defendants' Joint Motion to Dismiss and Strike, In Part, Counts 1-25 of the Superseding Indictment were sent <u>electronically</u> and by facsimile to:

| | |
|---|---|
| Robert S. Fink, Esq.<br>Kostelanetz & Fink, LLP<br>530 Fifth Avenue<br>New York, NY 10036 | Richard J. Schaeffer, Esq.<br>Dornbush Schaeffer Strongin &<br> Venaglia, LLP<br>747 Third Avenue<br>New York, NY 10017 |
| Justin P. Walder, Esq.<br>K. Roger Plawker, Esq.<br>Lin Claire Solomon, Esq.<br>Walder, Hayden & Brogan, P.A.<br>5 Becker Farm Road<br>Roseland, NJ 07068 | Edward J. Plaza, Esq.<br>Weir & Plaza, LLC<br>321 Broad Street<br>Red Bank, NJ 07701 |

              <u>s/Rachael A. Honig</u>
              Rachael A. Honig

Dated: March 15, 2007