UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 05-249 (JLL) |
| v. | : | |
| MARCI PLOTKIN, STANLEY BEKRITSKY, RICHARD STADTMAUER, and ANNE AMICI | : : | Hon. Jose L. Linares |

REPLY MEMORANDUM OF THE UNITED STATES
IN SUPPORT OF MOTION TO QUASH SUBPOENAS
ISSUED TO THE INTERNAL REVENUE SERVICE

CHRISTOPHER J. CHRISTIE
United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102
(973) 645-2700

On the Brief:
Thomas J. Eicher
Rachael A. Honig
Assistant United States Attorneys

## **ARGUMENT**

Defendant Stadtmauer apparently concedes that the portion of his subpoena that seeks audit files from the IRS should be quashed as moot in light of the Court's August 29, 2007, Order. With regard to the remaining materials called for by the subpoena, defendant has failed to demonstrate that they are relevant or admissible at trial, nor has he specifically identified the materials he seeks. The remainder of his subpoena, therefore, must be quashed as well.

Defendant Plotkin, for her part, has failed to provide any legitimate basis upon which the materials that she has requested may be produced pursuant to 26 U.S.C. § 6103. Defendant relies entirely on the disclosure exceptions contained in subsection 6103(i)(4), accusing the government of "ignoring" that subsection in its opening brief. The reason that the government has heretofore "ignored" that subsection, however, is that it applies only to the subsequent disclosure of tax information obtained by officers or employees of a federal agency via ex parte order in a non-tax case. It has no bearing here.

Moreover, defendant Plotkin's submission to the Court makes it clearer than ever that her subpoena represents precisely the kind of unauthorized fishing expedition that Rule 17(c) does not permit. Her subpoena must be quashed and any further attempt to delay this case denied.

**I.       Defendant Stadtmauer's Subpoena Cannot Be Justified Under Rule 17(c).**

Rule 17(c) was not intended to provide a means of discovery in addition to the discovery provisions contained in Rule 16.  See United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir. 1980) ("Cuthbertson I").  Accordingly, "[c]ourts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."  Id. at 146.  A subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity" in order to be permissible under the Rule.  United States v. Nixon, 418 U.S. 683, 700 (1974).  Defendant Stadtmauer's subpoena stumbles at each of these, and must be quashed.

**A.       The Evidence Defendant Stadtmauer Seeks Is Neither Relevant Nor Admissible Under Any Theory.**

Defendant Stadtmauer's opposition to the government's motion to quash grasps at straws when it comes to demonstrating the relevance of the material his subpoena seeks.  Defendant claims that evidence of so-called "uncertainty" within the IRS regarding the rules of capitalization would be relevant at trial because it would show "either that he could not possibly willfully have violated a known legal duty, or that he in fact did not do so."  (Stadtmauer Brief at 9.)  More specifically, defendant Stadtmauer asserts that he would introduce such evidence in support of a renewed motion to dismiss on the legal grounds that the tax laws are hopelessly unclear and therefore void for vagueness, or, failing that, to "persuade" the jury that defendant "himself was unsure

about what items should be expensed or capitalized, and hence that he did not, as a factual matter, act willfully."  (Stadtmauer Brief at 3.)

Neither of these arguments would make the documents defendant seeks relevant and admissible at trial, however.  The alleged vagueness of the tax laws is, of course, a legal question for the Court and not an evidentiary matter for trial, and obtaining ammunition for a renewed motion to dismiss is not a permissible use of Rule 17(c).  See United States v. Cuthbertson, 651 F.2d 189, 195 (3d Cir. 1981) ("Cuthbertson II") ("The Supreme Court has determined that a rule 17(c) subpoena reaches only evidentiary materials."); United States v. Stein, 473 F. Supp. 2d 597, 601 (S.D.N.Y. 2007) (rejecting discovery into internal IRS communications regarding alleged uncertainty in the law in part because the clarity of the law "would seem to be a question of law for the Court and thus a matter on which it would be inappropriate to take evidence before a jury."). Moreover, the internal musings of IRS personnel — relating to proposed regulations issued years after the conduct charged in this Indictment — do not reflect what the law is, only what those individual personnel might have thought about it.  Reviewing the documents defendant seeks might "satisfy [his] curiosity," Stein, 473 F. Supp. 2d at 602, therefore, but it would do nothing more.

Similarly, the evidence defendant seeks would not be admissible at trial on the factual issue of defendant's willfulness unless defendant could plausibly claim to have known of and relied upon the alleged uncertainty within the IRS.  See Stein, 473 F. Supp. 2d at 601 ("The question of what the defendants subjectively believed presumably would

be one of fact on which the views of others are pertinent principally and perhaps only to the extent that those views were known to and relied upon by the defendants."). This he does not, and presumably cannot, do.[1] The internal IRS communications defendant seeks — if they exist — would have taken place years after the conduct charged in the Superseding Indictment, and defendant would not, at any rate, have been privy to any of them. The alleged evidence is therefore irrelevant to defendant Stadtmauer's state of mind. See United States v. Curtis, 782 F.2d 593, 599 (6th Cir. 1986) (holding that uncertainty in the law cannot negate willfulness as a factual matter unless there is evidence that defendant actually consulted the law at the time he filed his returns); United States v. Ingredient Technology Corp., 698 F.2d 88, 96 (2d Cir. 1983) (rejecting an approach that "permits juries to find that uncertainty in the law negates willfulness whether or not the defendants are actually confused").

        In a last gasp, defendant suggests that the materials he seeks might be admissible in order to impeach the testimony of IRS Revenue Agent Susan Grant, who prepared the government's tax calculations in this matter and will testify at trial. However, the materials sought have nothing at all to do with Agent Grant, who does not belong to the IRS's rule-making arm; evidence of another, non-witness IRS employee's opinions on the law, therefore, are irrelevant to her testimony. See Cuthbertson I, 630

---

[1] In fact, defendant Stadtmauer concedes that he has "no access to the IRS's internal records" and goes on to represent that the evidence will show that far from having a good faith position on the application of the tax laws to the partnership tax returns at issue, defendant did not even know what the returns contained. (Stadtmauer Brief at 2 n.4 & 14.)

F.2d at 145-46 (3d Cir. 1981) ("[S]tatements made by nonwitnesses have no value as possible prior inconsistent statements to impeach trial testimony."). Having utterly failed to defend the relevance and admissibility of the materials he seeks, defendant Stadtmauer's subpoena must be quashed.

### B. Defendant Stadtmauer's Subpoena Does Not Call For Specifically Identified Evidentiary Items.

Though the lack of relevance and admissibility is sufficient for this Court to quash defendant Stadtmauer's subpoena, the subpoena fails to clear Nixon's specificity hurdle as well. As set forth above, Rule 17(c) is not a discovery tool; it is a means of securing certain, specifically-identified items for use at trial. Defendant Stadtmauer has asked for "any and all" documents that relate to an entire IRS rule-making process, as well as "any and all" documents that relate to the alleged legal uncertainty of the rules governing capitalization. This is nothing more than an attempt at wholesale discovery, which the Rule forbids. See United States v. Libby, 432 F. Supp. 2d 26, 35 (D.D.C. 2006) (observing that subpoenas requesting "any and all" information typically are quashed because Rule 17(c) subpoenas are to be used "solely to secure specifically identified evidence for trial"); United States v. Louis, 2005 WL 180885, *5 (S.D.N.Y. Jan. 27, 2005) (quashing subpoenas seeking "any and all" documents rather than specific evidentiary items); compare United States v. Skilling, 2006 WL 1006622, *2 (S.D. Tex. Apr. 13, 2006) (concluding that proposed Rule 17(c) subpoenas were sufficiently specific where they requested 180 specific files and identified them by bates number). Defendant

5

counters that "[s]ince [he] has no access to the IRS's internal records, there is no way for him to describe in greater detail the documents he seeks." (Stadtmauer Brief at 14.) This, of course, is exactly why his subpoena amounts to nothing more than a fishing expedition, and as such, it must be quashed.

**II.        Section 6103 of the Internal Revenue Code Bars Defendant Plotkin's Subpoena.**

In its opening brief, the government seemingly gave defendant Plotkin too much credit, assuming that she would seek disclosure of the requested returns under 26 U.S.C. § 6103(h)(4), which deals with the use of tax return information disclosed to federal law enforcement agencies in matters involving the administration of the tax laws. Instead, defendant inexplicably relies on 26 U.S.C. § 6103(i)(4), which deals with government disclosure of returns obtained via ex parte order in non-tax cases. That provision clearly is inapplicable here.

26 U.S.C. § 6103(i)(4), which defendant quotes in her brief but apparently has not read carefully, states that "any return or taxpayer return information <u>obtained under paragraph (1) or (7)(C)</u> may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute . . . ." (Emphasis added.) Paragraphs (1) and (7)(C) allow federal law enforcement agents to obtain return information in matters not relating to tax administration (and, in the case of Paragraph (7)(C), relating to terrorism) via ex parte order signed by a federal district court or magistrate judge. In other words, Section 6103(i) permits federal law

enforcement agents who are investigating and/or prosecuting non-tax cases to obtain tax information via ex parte order, and subsection 6103(i)(4), in turn, permits the agents to use that information in a subsequent criminal proceeding without running afoul of the law.  It has absolutely no bearing on an attempt by a defendant in a criminal tax case to gain access to return information in the possession of the IRS but not disclosed to the prosecution.

At the risk of making a stronger argument for defendant Plotkin than she has managed to make for herself, the only subsection of 26 U.S.C. § 6103 that even arguably applies is subsection (h)(4), because this is a matter that involves the administration of the tax laws.  But as set forth in the government's opening brief, that argument must fail as well.  Like subsection (i)(4), subsection (h)(4) serves only to permit federal law enforcement agents to disclose return information received from the IRS in a criminal proceeding without risking civil liability.  See Chamberlain v. Kurtz, 589 F.2d 827, 838 (5th Cir. 1979); United States v. Recognition Equipment, Inc., 720 F. Supp. 13, 14 (D.D.C. 1989); United States v. Robertson, 634 F. Supp. 1020, 1028 (E.D. Cal. 1986).  It is not a discovery device for defendants.  See id.

Defendant cites only three cases in support of her misguided argument.  One, Bolin v. United States, 1999 WL 1270979 (N.D. Ga. Nov. 16, 1999), involved a civil suit by a taxpayer against agents of the United States who obtained, via ex parte order, certain jointly-filed tax returns that were then used against the taxpayer's husband in a criminal proceeding.  The suit alleged that the government had violated its disclosure

7

obligations by so doing because the non-defendant wife's tax information was necessarily disclosed alongside the defendant husband's. The district court granted summary judgment in favor of the government, finding that the ex parte order was properly granted, that disclosure was authorized, and that the law enforcement agents were therefore immune from liability — which, as set forth above, is precisely the purpose of subsection 6103(i)(4).

Defendant also cites <u>United States v. 3814 NW Thurman Street</u>, 1996 WL 453043 (D. Or. Aug. 8, 1996), a civil forfeiture case. In it, the claimant sought civil discovery regarding the tax return information of her son. The district court rejected her discovery request, finding that the claimant had failed to make even a preliminary showing that such discovery would be probative of a matter at issue in the forfeiture proceeding. The court in no way suggested that a showing of probative value would be <u>sufficient</u> to authorize such discovery, however.

Finally, defendant cites <u>United States v. Lloyd</u>, 992 F.2d 348 (D.C. Cir. 1993), which at least pertains to a criminal tax case and the disclosure provisions of subsection 6103(h)(4) and therefore has an outside chance of being relevant here. In <u>Lloyd</u>, however, the taxpayers whose returns were at issue were trial witnesses, and the returns were actually in the possession of the prosecution. The prosecution sought to avoid turning the returns over to the defense on the grounds that they were not material because they related to years prior to the time period charged in the indictment. The D.C. Circuit rejected this position, holding that returns from earlier years could be used to

8

impeach the witnesses' testimony that they had provided the defendant (a tax preparer) with accurate information in order to prepare their returns but that the defendant had placed false information on the returns.  The court concluded that if the earlier returns contained similar false entries, and had been prepared by someone other than the defendant, this would serve to negate the prosecution's theory of the case.

   This case is a far cry from Lloyd.  As set forth in the government's opening brief, the returns defendant seeks are not in the possession of the prosecution and therefore are not subject to disclosure under subsection 6103(h)(4).  While defendant weakly claims that the fact that the prosecution does not possess these returns "is of no moment" because her subpoena is directed to the IRS,[2] this again ignores the plain language and function of the statute.  The statute serves to limit IRS disclosure of tax returns, except in certain, narrowly-defined circumstances that are not present here.  Her subpoena is barred by 26 U.S.C. § 6103, and must be quashed.

   Furthermore, unlike in Lloyd, none of the taxpayers in question are likely to be government trial witnesses; indeed, many of them are entities entirely unrelated to

---

[2] Defendant argues in a footnote that the prosecution's "discovery obligations extend to other governmental entities (like the IRS) particularly when other governmental entities are involved in the investigation."  (Plotkin Brief at 28 n.5.)  As set forth in the government's opposition to the defendants' pretrial motions, this is not a correct statement of law.  See United States v. Pelullo, 399 F.3d 197, 218 (3d Cir. 2005) (holding that because "other agents in the DOL participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team."); United States v. Bibby, 752 F.2d 1116, 1125 (6th Cir. 1985) (prosecutor in tax case not required to turn over civil audit not in his possession); United States v. Stein, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) (rejecting claim that the entire IRS should be considered part of prosecution team in tax case and refusing to order disclosure of civil audit files).

Kushner Companies who have nothing whatsoever to do with this case. The impeachment value of these returns, therefore, is non-existent. And in Lloyd, the return information sought by the defendant was relevant to the central issue at trial — namely, whether the defendant was responsible for the false information on the returns or whether it was the taxpayer-witnesses. In this case, a showing that the returns of other Schonbraun clients may have contained false information proves nothing at all about the Kushner returns at issue in this case. Indeed, that defendant Plotkin's accounting firm may have helped other clients to cheat the IRS arguably would make it more likely that defendant Plotkin did the same for the Kushner Companies.

**III.      Defendant Plotkin's Subpoena Cannot Be Justified Under Rule 17(c).**

Defendant Plotkin's subpoena must be quashed for the additional reason that it does not meet the applicable standards for issuance pursuant to Federal Rule of Criminal Procedure 17(c). As set forth above, Rule 17(c) "was not intended to be a broad discovery device, and only materials that are admissible as evidence are subject to subpoena under the rule." Cuthbertson II, 651 F.2d at 192. Defendant's subpoena calls for evidence that is neither relevant nor admissible nor specifically identified. Her subpoena, therefore, must be quashed. See Nixon, 418 U.S. 683, 700 (1974).

In its opening brief, the government noted that defendant had requested the production of tax information for 415 different business entities over a 22-year period that substantially pre- and post-dates the conspiracy charged in the Superseding Indictment without suggesting how such materials might prove relevant to this case. In her

10

opposition brief, defendant counters by claiming that the materials will show that the tax treatment alleged in the Superseding Indictment was "consistent with accepted accounting practices in the real estate industry," rather than "special treatment" for an "important client," thus demonstrating defendant's alleged good faith and negating the element of willfulness.

This is ludicrous. Most of the entities for which defendant seeks tax information are, in fact, Kushner Companies entities, and thus would prove nothing about "accepted accounting practices" for anyone other than Kushner, let alone the entire real estate industry. Defendant claims that she has subpoenaed Kushner Companies return information for time periods "before and after any involvement by Marci Plotkin," but neglects to mention that she was the Kushner Companies' Chief Financial Officer prior to her tenure at the Schonbraun accounting firm or that she returned to Kushner Companies afterwards (and apparently continues to work there to this day).

Furthermore, as the government previously pointed out in response to defendants' pretrial motions, even if the Schonbraun firm prepared tax returns for other real estate clients that flouted the tax laws in the same or similar ways as did the returns for the Kushner Companies, this would not exculpate the defendant. Such evidence, if it exists, would show only that other crimes may have been committed by others as well. The general practices of a single accounting firm — two former partners of which currently are under indictment for tax fraud — prove little to nothing about "accepted industry practice," to the extent that "accepted industry practice" itself proves anything

11

about what is permissible under the tax laws.

In addition, defendant does not contend that she was actually aware of any alleged Schonbraun "practices" at the time she participated in the preparation of the Kushner Companies' returns. (Indeed, she admits that she had only one non-Kushner client, 4C Foods, and Schonbraun's 4C files already have been provided to her in the course of discovery in this case.) Without a claim that defendant had specific, contemporaneous knowledge of the alleged firm-wide practices and that she reasonably relied upon them in preparing the Kushner returns, the materials requested are irrelevant to defendant's proffered good faith defense. See, e.g., Curtis, 782 F.2d at 599 ("Willfulness is personal. It relates to the defendant's state of mind. It does not exist in the abstract. Unless there is a connection between the external facts and the defendant's state of mind, the evidence of the external facts is not relevant."). Defendant's subpoena does nothing more than cast a wide net, hoping that some other Schonbraun client in some other year will turn out to have used similarly improper accounting on its return and buttress her *post hoc* claim to have reasonably relied upon "industry practice" in preparing the Kushner returns. Unfortunately for defendant, however, this is precisely the kind of nonspecific fishing expedition Rule 17(c) forbids.

Nor is it the case that the government has somehow conceded the relevance of the materials defendant seeks because, during the grand jury investigation that preceded the Indictment in this case, it sought to obtain from Schonbraun certain documents relating to non-Kushner clients. The grand jury investigation was — as grand

12

jury investigations typically are — far broader in scope than the matters that eventually ended up under indictment in this case. Moreover, both grand jury subpoenas and search warrants may be justified upon a far lesser showing than the showing required by Rule 17(c). A grand jury subpoena need only be based on a "reasonable possibility" that relevant evidence will be produced, just as a search warrant need only be supported by probable cause, defined as a "fair probability" that evidence of a crime will result from the search. See United States v. R. Enterprises, 498 U.S. 292, 301 (1991) (grand jury subpoena); Illinois v. Gates, 462 U.S. 213, 238 (1983) (search warrant). A Rule 17(c) subpoena, in contrast, must show that the materials requested are both relevant and admissible at trial, a much higher threshold. See R. Enterprises, 498 U.S. at 297 ("A grand jury subpoena is . . . much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged.") Defendant has not made the required showing here, and her subpoena must therefore be quashed.

## **CONCLUSION**

For all of the foregoing reasons, and the reasons set forth in its opening brief, the United States respectfully requests that the Court grant its Motion to Quash the Subpoenas Issued to the Internal Revenue Service.

                                                      Respectfully submitted,

                                                      CHRISTOPHER J. CHRISTIE
                                                      United States Attorney

                                                      s/Thomas J. Eicher

                                   By:    THOMAS J. EICHER
                                                      Assistant U.S. Attorney

                                                      s/Rachael A. Honig

                                   By:    RACHAEL A. HONIG
                                                      Assistant U.S. Attorney


DATED:      December 13, 2007
                    Newark, New Jersey

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the 13th day of December, 2007, a true and correct copy of the Reply Memorandum of the United States In Support of Motion to Quash Subpoenas Issued to the Internal Revenue Service was sent <u>electronically</u> to:

Robert S. Fink, Esq.  
Megan L. Brackney, Esq.  
Kostelanetz & Fink, LLP  
530 Fifth Avenue  
New York, NY 10036  

Richard J. Schaeffer, Esq.  
Brian Rafferty, Esq.  
Dornbush Schaeffer Strongin &  
 Venaglia, LLP  
747 Third Avenue  
New York, NY 10017  

Justin P. Walder, Esq.  
K. Roger Plawker, Esq.  
Lin Claire Solomon, Esq.  
Walder, Hayden & Brogan, P.A.  
5 Becker Farm Road  
Roseland, NJ 07068  

Edward J. Plaza, Esq.  
Weir & Plaza, LLC  
321 Broad Street  
Red Bank, NJ 07701  

              s/Rachael A. Honig  
              Rachael A. Honig

Dated: December 13, 2007