UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 05-249 (JLL) |
| v. | : | |
| MARCI PLOTKIN, STANLEY BEKRITSKY, RICHARD STADTMAUER, and ANNE AMICI | : : | Hon. Jose L. Linares |

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO
DEFENDANT STADTMAUER'S MOTION FOR A SUPPRESSION HEARING

CHRISTOPHER J. CHRISTIE
United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102
(973) 645-2700

On the Brief:
Thomas J. Eicher
Rachael A. Honig
Hallie A. Mitchell
Assistant United States Attorneys

**PRELIMINARY STATEMENT**

The United States submits this memorandum of law in response to defendant Richard Stadtmauer's "Motion for a Suppression Hearing." The United States respectfully reserves its right to supplement its responses by oral argument.

**PROCEDURAL BACKGROUND**

On January 16, 2007, the deadline for the filing of pretrial motions in this matter,[1] defendant Richard Stadtmauer filed a Motion to Compel Discovery that sought, among other items, "information concerning . . . [t]he manner in which the government came to know of, and then obtained, voluminous computer files and other documents which were stolen from Kushner Companies by Robert Yontef, a then-employee of that business." (Memorandum of Law in Support of Defendant Richard Stadtmauer's Motion to Compel Discovery Pursuant to Fed. R. Crim. P. 16 [hereinafter "1/16/07 Br."] at 44.) Defendant indicated that this was an issue that "may" implicate the Fourth Amendment, asserting that the requested discovery was necessary "in order to determine whether a Fourth Amendment violation took place." (1/16/07 Br. at 50.) Defendant did not, however, move to suppress any particular evidence, apparently arguing that the requested discovery was necessary in the first place in order to decide whether such a motion should be filed.

As defendant notes in his brief, the Court on August 29, 2007, denied defendant's motion for discovery. The Memorandum accompanying the Court's order indicated that "should more relevant evidence ultimately come to light, this Court will not hesitate to entertain a properly supported motion to suppress such evidence or whatever appropriate remedy

---

[1] The deadline set by the Court was actually January 15, 2007, which fell on a federal holiday. This made the motions due the following day, on January 16.

Stadtmauer may wish to pursue." (8/29/07 Memorandum at 8.)

On January 7, 2008, defendant filed the instant motion, which is captioned as a "Motion for a Suppression Hearing." The motion and supporting brief reference the quoted language from the Court's Memorandum and claim that "[m]ore relevant evidence *has* now come to light," leading defendant to "renew" his earlier motion for a hearing "on the issue of how and when the government came to possess the stolen documents and/or had knowledge of the stolen documents." (1/7/08 Memorandum of Law in Support of Defendant Richard Stadtmauer's Motion for a Suppression Hearing [hereinafter "1/7/08 Br."] at 2-3.) While defendant now describes the sought-for hearing as a "suppression hearing," he still has not moved to suppress any particular documents or materials. Nor has he actually alleged a Fourth Amendment violation on the part of the government, arguing instead that the government "may" have participated in and/or known of Yontef's activities and that further fact-finding, in the form of the requested hearing, is necessary.

Based on the foregoing, the government construes the instant motion as a renewed motion for discovery rather than a motion to suppress, and hereby responds to it as such. Should a motion to suppress later be filed, or should the Court desire further briefing, the government respectfully reserves its right to supplement its response accordingly.[2]

---

[2] Moreover, the government respectfully submits that before it can meaningfully respond to any suppression motion that may later be filed by defendant, defendant must, at a minimum, identify with specificity the evidence he is seeking to suppress.

**FACTUAL BACKGROUND**

As the Court is aware from earlier briefing, brothers Charles and Murray Kushner were one-time partners in various real estate entities, including several of the real estate partnerships at issue in this case. At some point, the brothers began to feud, and litigation resulted. During the litigation and eventual arbitration, it was revealed that former Kushner Companies accountant Robert Yontef had provided Murray Kushner with copies of various Kushner Companies documents from approximately October 2001 through approximately June 2002, while Yontef was still employed there. The parties then engaged in discovery as to whether Yontef had "stolen" Kushner Companies property as a result of these activities. Yontef was deposed on May 14 and May 15, 2003 regarding this issue. (See Transcript of Deposition of Robert Yontef [hereinafter "Yontef Dep."], attached to the January 15, 2007 Declaration of Robert S. Fink as Exhibits X and Y.) Attorneys representing defendant Stadtmauer were present at Yontef's deposition. (See id.)

At the deposition, Yontef testified repeatedly that while he had considered providing the documents that he had copied to "the U.S. Attorney General," he in fact only gave them to Murray Kushner and, in one instance, to Esther Schulder, another Kushner sibling. (See Yontef Dep. at 33, 56-57, 229-30, 328, 330.) He testified that he initially copied documents that he thought Murray Kushner would be interested in and that, subsequently, he copied documents that Murray Kushner specifically requested. (See id. at 155-56, 160, 167-68.) He further testified that Murray Kushner never told him why he wanted the documents, and, in particular, that Murray Kushner never told him that he wanted the documents "because his attorneys had asked him to get them." (Id. at 240-41.) In fact, Yontef testified that Murray Kushner never

3

indicated to him "in any way who or for what purpose [sic] needed the documents, data or disks that [Murray] asked him to get." (Id.)

Yontef also testified at his deposition about his conversations with Stacey Nortrup, the source of the purportedly "new" evidence precipitating the instant motion. Yontef testified that Nortrup (then known as Stacey Farro, and previously as Stacey Dolan) had been "pumping him for information" and that he had concluded that she was "trying to get information for Richard Stadtmauer and/or Charlie Kushner." (Id. at 29.) Yontef testified that he told Nortrup that he was providing documents to his lawyers, when in fact, he was not. (Id. at 29-30.) Yontef explained that he gave Nortrup "misinformation" in an effort to find out whether she was, in effect, a "mole" for defendant Stadtmauer and Charles Kushner. (Id. at 30.)

Murray Kushner was deposed two weeks after Yontef, on May 28 and 29, 2003, and again, an attorney representing defendant Stadtmauer was present. (See Transcript of Deposition of Murray Kushner, attached to the January 15, 2007 Declaration of Robert S. Fink as Exhibits Z and AA.) In his deposition, Murray, too, was questioned extensively about statements that Yontef allegedly made to Nortrup, as well as conversations between Nortrup and William Schulder, Esther Schulder's husband. (See id. at 297-311.) Murray testified that he was unaware of any conversations between Yontef and Nortrup, but that he had learned of statements allegedly made to Nortrup by Schulder. (See id.) The content of those statements was not discussed during the deposition, but Murray testified that he asked Schulder why he made them and that they were untrue. (See id. at 303.)

William Schulder also was deposed in the Kushner v. Kushner matter. While the government does not have a copy of Schulder's deposition transcript, upon information and

4

belief, Schulder also was questioned extensively about his conversations with Stacey Nortrup.

Defendant's present motion attaches a declaration from Nortrup in which she alleges that Yontef told her was that he was copying documents for the U.S. Attorney's Office, which was either "interested in" or "waiting for" the documents. (Declaration of Stacey Nortrup at ¶ 11.) Nortrup further claims that William Schulder told her at some point after "early to mid-June 2002" that Yontef was "making copies of Kushner Companies' bank statements and checks so that the copies could be delivered to someone at the U.S. Attorney's Office." (Id. at ¶¶ 6-7.) Nortrup implies that she was given the name of the individual at the U.S. Attorney's Office, but states that she "cannot remember that person's name." (Id. at ¶ 7.) Nortrup also recounts various other statements allegedly made to her by Schulder, to the effect that Charles Kushner was "going down" and "with any luck" would be indicted shortly. (Id. at ¶¶ 8-9.)

Yontef has reviewed Nortrup's declaration, and has no specific recollection of his discussions with her. (See Declaration of Robert Yontef [hereinafter "Yontef Declaration"] at ¶¶ 4-5.) Yontef has reaffirmed, however, that he provided Nortrup with "misinformation," explaining that he "thought she was spying on me and would relate to others whatever I told her." (Id. at ¶ 5.) Yontef further makes clear that, as the government previously has represented to this Court, his document-copying activities were not conducted at the request of the U.S. Attorney's Office, nor was he in direct or indirect contact with the government at the time. (See id. at ¶ 2.) He states that he provided documents to the government only pursuant to grand jury subpoena, and that this occurred in February 2003, months after the copying took place and, indeed, after Yontef had left the Kushner Companies entirely. (See id. at ¶ 3.)

5

Defendant claims that Nortrup's declaration contains "new" evidence, permitting him to relitigate his motion for discovery.[3] Specifically, defendant has renewed his call for a hearing at which Yontef, Murray Kushner; Murray Kushner's attorney, Herbert Stern; Schulder; "government agents and/or representatives of the United States Attorney's Office," and "others" will be called to testify "as to the extent of the government's involvement in Mr. Yontef's search." (1/7/08 Br. at 13.) For the reasons set forth below, defendant's motion must once again be denied.

---

[3] Defense counsel claimed in a recently published media account that Nortrup's information is a "bombshell" that came to the defense "out of the blue." (See Ted Sherman and John P. Martin, "Accused Kushner In-Law Again Claims Tainted Evidence," The Star Ledger (Jan. 11, 2008), attached to the January 18, 2008, Declaration of Rachael A. Honig as Exhibit A.) This is disingenuous, at best, given the questioning that took place at both the Yontef and Murray Kushner depositions.

**ARGUMENT**

I.  **No "New Evidence" Exists That Would Justify Disturbing The Court's Prior Ruling On Defendant's Motion for Discovery.**

Federal Rule of Criminal Procedure 12(b)(3) requires that certain pretrial motions, including motions to suppress evidence and Rule 16 motions for discovery, must be made before trial. Rule 12(c) permits the Court to set a deadline for the filing of such motions. Pursuant to Rule 12(e), a defendant "waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver." Here, the Court set a January 16, 2007, deadline for the filing of pretrial motions. Defendant's "renewed" motion, therefore, must be supported by good cause to be considered.

The Court's August 29, 2007, Memorandum anticipated the type of circumstance that might constitute "good cause" in this case, in other words, the coming to light of additional relevant evidence. The Court properly concluded that if new evidence were to surface that placed material facts in dispute, defendant would be afforded a reasonable opportunity to file a motion to suppress or pursue other remedies as he saw fit.

The evidence that defendant now proffers, however, is far from new. Stacey Nortrup's identity has long been known to defendant, as has her claim to have had conversations with Robert Yontef and William Schulder about Yontef's document-copying activities. Furthermore, Nortrup's whereabouts can hardly be said to have been a mystery to defendant over the nearly five years since the Yontef and Murray Kushner depositions took place. According to defendant's brief, she was employed until September 2007 at defendant's place of business — the Kushner Companies.

7

No good cause exists for defendant's failure to obtain a declaration from Nortrup at an earlier date and include her so-called "new evidence" in his original submission to the Court. Defendant's renewed motion should therefore be dismissed as untimely under Rule 12(e), and the Court's earlier ruling left undisturbed.

**II.      No Hearing Is Required On the Basis of the Alleged "New Evidence" Because No Material Facts Are In Dispute.**

Even if the Court considers defendant's untimely submission of the Nortrup declaration, however, defendant's motion for a "suppression hearing" still must fail. Even if assumed to be true, none of the allegations in the declaration necessitate an evidentiary hearing because they place no material facts in dispute. See United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) (A court should conduct an evidentiary hearing "only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record."); United States v. Chavez-Marquez, 66 F.3d 259, 261 (10th Cir. 1995) ("To warrant an evidentiary hearing, [a] motion to suppress must raise factual allegations that are 'sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue.'") (quoting United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986)).

Stacey Nortrup does not have and does not purport to have any personal knowledge whatsoever regarding the alleged involvement of the government in Yontef's "theft" of documents from Kushner Companies. At best, she has knowledge of what Yontef may have said about the document copying, but that is not in dispute here, because Yontef consistently has acknowledged — both at his 2003 deposition and in his present declaration — that he provided her with misinformation in an attempt to find out whether she would relate that misinformation

8

to others, including defendant Stadtmauer. Yontef's sworn statements — again, both in 2003 and in his present declaration — specifically deny that he in fact acted at the direction of the U.S. Attorney's Office, and Nortrup has no evidence that demonstrates otherwise.

Moreover, even if it was true — and to be clear, it is not — that the government was "interested in" or "waiting for" documents being provided by Yontef at the time he was copying them, this would fall far short of a Fourth Amendment violation. As defendant concedes, "the surreptitious search of premises by a private party does not violate the Fourth Amendment." United States v. Bennett, 709 F.2d 803, 805 (2d Cir. 1983). Instead, only if the searcher is acting as an instrument or agent of the Government [is there] a Fourth Amendment transgression." Id. For a private party to become a government agent, mere knowledge and passive acquiescence by the government in that party's activities is not enough. See United States v. Jarrett, 338 F.3d 339, 345 (4th Cir. 2003). Instead, there must be evidence that the government actually participated in or at least "affirmatively encouraged" the private search. Id. at 345-46; see also United States v. Momoh, 427 F.3d 137, 141 (1st Cir. 2005) (requiring affirmative encouragement); United States v. Smythe, 84 F.3d 1240, 1243 (10th Cir. 1996) ("In some affirmative way, the police must instigate, orchestrate, encourage or exceed the scope of the private search to trigger application of the Fourth Amendment."); United States v. Koenig, 856 F.2d 843, 850 (7th Cir. 1988) ("Mere knowledge of another's independent action does not produce vicarious responsibility absent some manifestation of consent and the ability to control."); United States v. Feffer, 831 F.2d 734, 738 (7th Cir. 1987) (holding that the mere acceptance of documents taken during an ongoing private search does not violate the Fourth Amendment).

9

Nortrup's declaration does not allege that Yontef told her that the government had instructed him to copy documents, only that he said that the government was either "interested in" or "waiting for" them. This is a critical distinction for Fourth Amendment purposes. In Feffer, for example, the court found that a employee who provided company documents to agents of the IRS did not act as a government agent even though she met with the IRS regularly while her search continued. See 831 F.2d at 739-40. The court found that because the IRS had never affirmatively requested the documents that she provided, the requisite element of "affirmative encouragement" or direct participation was missing. See id. Similarly, in United States v. Smith, 383 F.3d 700, 703-05 (8th Cir. 2004), the court found that a Federal Express employee did not act as a government agent when opening a suspicious package, despite the fact that she asked a police officer beforehand whether she should open it and he responded that "if she wanted to open it, that would be fine." And in United States v. Snowadzki, 723 F.2d 1427, 1429-30 (9th Cir. 1984), the court found that no government search of company premises had taken place where the employee asked an IRS agent ahead of time if copies of records would be helpful and the agent responded in the affirmative. Here, even assuming the truth of defendant's (implicit) allegation that the government was aware that Yontef was copying documents and that it somehow communicated to him either that it considered the documents "interesting" or that it would "wait for" them, this shows, at best, only knowledge and passive acquiescence, not affirmative encouragement or control.

Defendant argues, quoting United States v. Knoll, 16 F.3d 1313, 1320 (2d Cir. 1994), that "tacit approval" may be enough to create an agency relationship between the government and a private party such that the private party's activities can be attributed to the

10

government for Fourth Amendment purposes. It is clear from Knoll, however, that even "tacit" approval must rise to the level of affirmative encouragement before an agency relationship exists. In Knoll, the court was concerned that the government had "tacitly suggested and condoned" a private search by telling the searcher, "you've got to turn more over. If there's stuff out there, you've got to turn it over." Id. at 1319-20. Even with such clear evidence of government encouragement, the court remanded for further fact-finding, finding it difficult to tell whether the government had "effectively directed" the private party's actions. Id. at 1320. Similarly, in United States v. Silva, 502 F. Supp. 2d 143, 146 (1st Cir. 2007), which defendant describes as "instructive," the government specifically instructed a private party to return to the scene of an earlier, private search, take additional documents, and bring them back to the government. There is no such allegation at issue here.

Furthermore, even if the government had in some way directed Yontef's activities — and again, any such allegation is utterly false — there still would be no violation of the Fourth Amendment. Defendant refers repeatedly to Yontef's conduct as "theft," claiming that "[t]here can be no legitimate dispute as to whether Yontef stole the documents" in light of Yontef's testimony that he took the documents "secretly" and "without authorization from Mr. Stadtmauer or any other partner." (1/7/08 Br. at 8 n.2.) In the Fourth Amendment context, however, "the laws relating to ownership, custody and theft as well as other incidents of property law are not particularly relevant. . . . The Fourth Amendment clearly countenances numerous seizures where the items seized are taken without the express consent of the owner. Instead, the Fourth Amendment inquiry focuses on whether the owner had a reasonable expectation of privacy with respect to the seized items." United States v. Ziperstein, 601 F.2d 281, 289 (7th

Cir. 1979).

It is well-settled that what an employee observes in his or her daily functions "is undoubtedly beyond the employer's reasonable expectation of privacy." Marshall v. Barlow's, 436 U.S. 307, 315 (1978). It is also undisputed that the documents Yontef copied were documents to which he had access during the normal course of his employment at Kushner Companies. (See Yontef Declaration at ¶ 1; Yontef Dep. at 22-25, 71, 75, 96-98.) As a result, defendant could not have had a reasonable expectation of privacy in the documents vis-a-vis Yontef, and he further assumed the risk that Yontef might disclose them to third parties. See Ziperstein, 601 F.2d at 289 (medical clinic had no reasonable expectation of privacy in prescriptions its employee viewed during ordinary course of business and then turned over to the government); United States v. Segal, 299 F. Supp. 2d 856, 862 (N.D. Ill. 2004) (company had no reasonable expectation of privacy in petty cash receipts turned over to government by company accountant who had access to them in normal course of his duties); United States v. Longo, 70 F. Supp. 2d 225, 256 (W.D.N.Y. 1999) (employer had no reasonable expectation of privacy in computer files to which he gave his secretary access). Additionally, and in the alternative, Yontef's position as a company accountant gave him both actual and apparent authority to consent to a search of the Kushner Companies' accounting records. See United States v. Jenkins, 46 F.3d 447, 455-56 (5th Cir. 1995).[4]

In sum, defendant has provided the Court with no basis upon which an evidentiary hearing can be granted, even if his motion is considered at this late date. His motion

---

[4] Defendant's claim that "no partner" authorized Yontef to copy or disseminate the materials also ignores the fact that Murray Kushner was a partner in many of the entities whose records Yontef copied.

12

for a "suppression hearing," therefore, must be denied.

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that defendant Stadtmauer's "Motion For a Suppression Hearing" must be denied.

        Respectfully submitted,

        CHRISTOPHER J. CHRISTIE
        United States Attorney

        s/Thomas J. Eicher

By:    THOMAS J. EICHER
       Assistant U.S. Attorney

        s/Rachael A. Honig

By:    RACHAEL A. HONIG
       Assistant U.S. Attorney

        s/Hallie A. Mitchell

By:    HALLIE A. MITCHELL
       Assistant U.S. Attorney

DATED:    January 18, 2008
                Newark, New Jersey

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 18th day of January, 2008, true and correct copies of the foregoing Memorandum of the United States In Opposition to Defendant Richard Stadtmauer's Motion for a Suppression Hearing and accompanying Declarations were sent <u>electronically</u> to:

| | |
|---|---|
| Robert S. Fink, Esq.<br>Megan L. Brackney, Esq.<br>Kostelanetz & Fink, LLP<br>7 World Trade Center<br>New York, NY 10007 | Richard J. Schaeffer, Esq.<br>Brian Rafferty, Esq.<br>Dornbush Schaeffer Strongin &<br> Venaglia, LLP<br>747 Third Avenue<br>New York, NY 10017 |
| Justin P. Walder, Esq.<br>K. Roger Plawker, Esq.<br>Lin Claire Solomon, Esq.<br>Walder, Hayden & Brogan, P.A.<br>5 Becker Farm Road<br>Roseland, NJ 07068 | Edward J. Plaza, Esq.<br>Weir & Plaza, LLC<br>321 Broad Street<br>Red Bank, NJ 07701 |

                s/Rachael A. Honig
                Rachael A. Honig

Dated: January 18, 2008