IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No.: 05-249 (JLL) |
| MARCI PLOTKIN<br>STANLEY BEKRITSKY<br>RICHARD STADTMAUER<br>ANNE AMICI | ORAL ARGUMENT<br>REQUESTED |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT
RICHARD STADTMAUER'S MOTION FOR A SUPPRESSION HEARING**

KOSTELANETZ & FINK, LLP

7 World Trade Center
New York, NY 10007
(212) 808-8100

Counsel to Richard Stadtmauer

Dated: January 28, 2008

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

    A.    Mr. Stadtmauer's Motion Is a Proper Motion for a Suppression Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    The Information Contained in Ms. Nortrup's Declaration Is Newly-Discovered Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    The Government Again Fails Adequately to Respond to Mr. Stadtmauer's Serious Fourth Amendment Concerns . . . . . . . . . . . . . 6

    D.    Mr. Yontef's Declaration Is Not Credible and a Fact-Finding Hearing Is Warranted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E.    A Suppression Hearing Is Warranted to Determine Whether the Government Violated Mr. Stadtmauer's Fourth Amendment Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    F.    Mr. Stadtmauer Had a Reasonable Expectation of Privacy in the Stolen Records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Federal Cases**

*Knoll Associates, Inc. v. FTC*, 397 F.2d 530 (7th Cir. 1968) . . . . . . . . . . . 14

*United States v. Brink*, 39 F.3d 419 (3d Cir. 1994) . . . . . . . . . . . . . . . . . 3

*United States v. Brown*, 448 F.3d 239 (2006) . . . . . . . . . . . . . . . . . . . . . .4

*United States v. Knoll*, 16 F.3d 1313 (2d Cir. 1994). . . . . . . . . . . . . . . 3, 5

*United States v. Voigt*, 89 F.3d 1050 (3d Cir. 1996) . . . . . . . . . . . . . . . . 3

*Wong Sun v. United States*, 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . 5


**Federal Rules**

Fed. R. Crim. P. 16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

Robert S. Fink (RF 7924)
Caroline Rule (CR-6503)
Megan L. Brackney (MLB 6870)
KOSTELANETZ & FINK, LLP
7 World Trade Center
New York, NY 10007
Tel: (212) 808-8100
Fax: (212) 808-8108

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 05-249 (JLL) |
| v. | ORAL ARGUMENT REQUESTED |
| MARCI PLOTKIN<br>STANLEY BEKRITSKY<br>RICHARD STADTMAUER<br>ANNE AMICI | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT RICHARD STADTMAUER'S MOTION FOR A SUPPRESSION HEARING**

Defendant Richard Stadtmauer respectfully submits this reply memorandum in further support of his motion for a suppression hearing to determine whether the government violated his Fourth Amendment rights by participating in, and/or encouraging, a warrantless search and seizure of

documents and computer files that were stolen by a private citizen from Kushner Companies.

## Preliminary Statement

Mr. Stadtmauer seeks a suppression hearing to determine whether the government violated his Fourth Amendment rights. There is no dispute that the government has in its possession documents stolen from Kushner Companies by a private citizen, Robert Yontef. Stacey Nortrup, a former Kushner Companies' employee, submitted a declaration in support of Mr. Stadtmauer's motion in which she swore that Mr. Yontef and another employee, William Shulder, told her that Mr. Yontef was copying documents and computer records in order to turn them over to the United States Attorney's Office. *See* December 27, 2007 Declaration of Stacey Nortrup ("Nortrup Declaration") at ¶¶ 7-11. Moreover, as recounted in Mr. Stadtmauer's initial January 16, 2007 Motion to Compel Discovery Pursuant to Fed. R. Crim. P. 16, and in his motion for suppression hearing, other evidence indicates that the government was aware of or participated in the warrantless search and seizure while it was ongoing.

The government again has failed to offer any explanation, under oath, as to how it came to possess the stolen documents, and how they came to have knowledge of their existence. Its *only* response has been to submit a

2

highly dubious declaration from Mr. Yontef, an obviously unreliable witness (*see* Section D, *infra*), in which he denies having any contact with the government, and directly contradicts his prior sworn testimony that he did not know how the government came to have these records by alleging that his attorney turned over the stolen records to the government in response to a grand jury subpoena. The government's opposition – and particularly the continued silence from any government employee – raises more questions than it answers and a hearing is warranted to determine what transpired and whether the government violated Mr. Stadtmauer's Fourth Amendment rights.

## ARGUMENT

### A. Mr. Stadtmauer's Motion is a Proper Motion for a Suppression Hearing

As explained in Mr. Stadtmauer's opening brief, a suppression hearing should be granted where the defendant demonstrates a "colorable claim" for relief. *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (citing *United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994)). Whether evidence should be suppressed is a "highly fact-bound question of Fourth Amendment law," *United States v. Knoll*, 16 F.3d 1313, 1319 (2d Cir. 1994), and Mr. Stadtmauer is entitled to a hearing. While the government is dismissive of Mr. Stadtmauer's claim, the key facts are not in dispute: the

3

government has possession of documents stolen from Kushner Companies by a private citizen, and the government has refused to provide an explanation, under oath, as to how it came to have knowledge of and possess those documents. On the basis of these facts, considered with Ms. Nortrup's declaration and the materials presented in Mr. Stadtmauer's original discovery motion, there is more than a sufficient basis for a hearing.

The government contends that Mr. Stadtmauer's motion for a suppression hearing should be characterized as a renewal of his motion for discovery on this issue because Mr. Stadtmauer did not allege a Fourth Amendment violation on the part of the government, and because he has not sought the suppression of any particular documents. Memorandum of the United States in Opposition to Defendant Stadtmauer's Motion for a Suppression Hearing" ("Gov. Opp."), at 1-2. This response is disingenuous. Mr. Stadtmauer's motion plainly seeks a suppression hearing – and not merely further discovery – specifically to determine whether the government violated his Fourth Amendment rights.

Mr. Stadtmauer also seeks a hearing to determine the scope of the documents that should be suppressed. At a minimum, all of the documents stolen by Mr. Yontef should be suppressed. In addition, a hearing is necessary to determine whether additional documents subpoenaed

4

or seized by the government also should be suppressed as "fruit of the poisonous tree." *United States v. Brown,* 448 F.3d 239, 244 (2006) (evidence obtained pursuant to a warrantless search that does not meet an exception to the warrant requirement must be suppressed as "fruit of the poisonous tree.") (citing *Wong Sun v. United States,* 371 U.S. 471, 487-88 (1963)).

The government attempts unsuccessfully to distinguish *United States v. Knoll*, 16 F.3d 1313 (2d Cir. 1994), in which a private citizen stole records and tapes from an office and turned them over to the United States Attorney, by arguing that in *Knoll*, the Court did not order suppression, but merely remanded the matter for further fact-finding. Gov. Opp. at 11 (citing *id.* at 1320). A fact-finding hearing, however, is the exact relief Mr. Stadtmauer seeks at this juncture. Because the information as to how the government came to possess or have knowledge of the stolen documents is within the government's exclusive possession, Mr. Stadtmauer requests a fact-finding hearing to determine whether there was a Fourth Amendment violation.

**B.     The Information Contained in Ms. Nortrup's Declaration Is Newly-Discovered Evidence**

The government also contends that the Court should not consider Ms. Nortrup's declaration because it is not "new" evidence. Gov.

5

Opp. at 7-8. This is incorrect. Counsel first learned about Ms. Nortrup's conversations with Mr. Yontef when we met with her in preparation for trial in September of 2007. *See* January 28, 2008 Declaration of Megan L. Brackney, at ¶¶ 3-4. After that interview, Ms. Nortrup retained counsel, with whom we worked to obtain her declaration. *Id.* at ¶ 5. Due to circumstances beyond our control, we were not able to obtain the declaration until December 27, 2007, at which point we promptly filed the motion for a suppression hearing. *Id.* at ¶ 6.

In addition, the government is wrong in asserting that because questions about Ms. Nortrup were asked at depositions of Murray Kushner and Mr. Yontef, Ms. Nortrup's declaration cannot be characterized as new evidence. *See* Gov. Opp. at 6, n.3. The only reference to Ms. Nortrup in those depositions is Mr. Yontef's claim that he gave her misinformation. There is absolutely nothing in those depositions that would have put counsel on notice of the substance of conversations between Mr. Yontef and Ms. Nortrup.

### C. The Government Again Fails Adequately to Respond to Mr. Stadtmauer's Serious Fourth Amendment Concerns

What is most notable about the government's opposition is what it does not say. The government continues to refuse to provide any declarations or other sworn statements attesting to the assertion that it was

6

not involved in, did not have knowledge of, and did not tacitly approve of the search or seizure of the stolen documents. If the government truly had no involvement or knowledge, there is no conceivable reason why an agent of the government would not already have made a representation to that effect, under oath, to the Court. The government has repeatedly refused to do so. In addition, the government has not submitted a declaration from William Schulder, who also told Ms. Nortrup that Mr. Yontef was making copies of the Kushner Companies' bank statements and checks so that they could be delivered to someone at the United States Attorney's Office. Nortrup Declaration at ¶ 7.

The government concedes that Mr. Yontef "initially copied documents that he thought Murray Kushner would be interested in and that, subsequently, he copied documents that Murray Kushner specifically requested." Gov. Opp. at 3. As explained in Mr. Stadtmauer's original motion, the government may have been in communication with Murray Kushner directly, or indirectly through his counsel, Herbert Stern, during this time period, and thus may have participated in, or had knowledge of, the search and seizure of documents by requesting certain materials from Murray Kushner, who, in turn, asked Mr. Yontef to obtain them. The

7

government, however, has not provided declarations from Murray Kushner and Herbert Stern answering any of these issues.

The government's repeated refusal to explain how it came to possess, and have knowledge of, the stolen Kushner Companies' documents in and of itself warrants an immediate hearing to determine whether these documents should be suppressed.

### D. Mr. Yontef's Declaration Is Not Credible and a Fact-Finding Hearing Is Warranted

The government's sole factual response to Mr. Stadtmauer's motion is based on Mr. Yontef's declaration that he does not recall discussing the copying of the documents with Ms. Nortrup, and that he did not have contact with anyone at the United States Attorney's Office at the time that he was copying the documents. *See* January 16, 2008 Declaration of Robert Yontef ("Yontef Declaration"), at ¶¶ 1-2, 5. Mr. Yontef's credibility is highly questionable, however, and a hearing in which he and others are subject to cross-examination is necessary to determine whether he is being truthful. Mr. Yontef states that he "fed misinformation" to Ms. Nortrup during their conversations at Kushner Companies, *see* Yontef Declaration at ¶ 5, and the government relies on this to imply that, even if Mr. Yontef did tell Ms. Nortrup that he was copying documents for the government, he could have been lying. All the contradictions in Mr.

8

Yontef's statements, however, raise the question of whether Mr. Yontef was lying when he supposedly misled Ms. Nortrup or whether he is lying now.

Mr. Yontef's declaration directly contradicts his prior sworn testimony. In his declaration, he states that "[t]he documents that I copied at the Kushner Companies were turned over on my behalf by my attorneys pursuant to Grand Jury subpoenas that were served on me in February 2003, several months after I had copied the documents and after I had stopped working for the Kushner Companies." Yontef Declaration, at ¶ 3. In his 2003 deposition, however, Mr. Yontef testified that he did not have the stolen records in his possession, custody, or control because he had given them all to Murray Kushner and Esther Schulder. *See* Exhibit X, Transcript of May 14, 2003 Deposition of Robert Yontef, attached to the January 15, 2007 Declaration of Robert S. Fink in Support of Defendant Richard Stadtmauer's Motion to Compel Discovery Pursuant to Fed. R. Crim. P. 16 ("Fink Dec."), at 10-12, 63-64.

Indeed, Mr. Yontef stated unequivocally during his deposition that he *did not* give the records to his counsel. *Id.* at pp. 29-30. And, Mr. Yontef then expressly denied having any knowledge of how the United States Attorney's Office obtained the records that he took from Kushner Companies. *Id.* at 106-107. Now, in complete contradiction to his prior

9

testimony, Mr. Yontef claims that his attorneys produced the records to the United States Attorney's Office in response to a grand jury subpoena addressed to him. Clearly, a hearing is warranted to determine not only whether Mr. Yontef's testimony is worthy of belief, but to determine how the government actually came into possession of, and learned of, the stolen records. *See also,* Section E, *infra*.

In addition, Mr. Yontef states in his declaration that he had "full access" to the documents and computer records he copied "during the normal course of [his] employment at the Kushner Companies." Yontef Declaration at ¶ 1. This statement is also belied by his testimony during his deposition. There, Mr. Yontef first testified that he did have "complete access" to all of the records, except for certain tax returns, which he obtained from another employee and then turned over to Murray Kushner, Fink Dec. Exhibit X, at 71-72, but he later recanted and admitted that he did not, in fact, have "complete access" to the Kushner Companies' records – and that his prior testimony had been inaccurate. *Id.* at 74-75. Nevertheless, he now repeats the admittedly incorrect statement in his declaration to this Court. *See* Yontef Declaration, at ¶ 1.

In his deposition, Mr. Yontef detailed situations in

which he did not have access to the company records as part of his regular job duties but had to find another way to obtain the records. First, Mr. Yontef described an occasion in which a colleague asked him to make a copy of a CD-rom, and, without authorization, Mr. Yontef secretly made a second copy for himself, which he in turn handed over to Murray Kushner. Fink Dec. Exhibit Y, Transcript of May 15, 2003 Deposition of Robert Yontef, at 391-96. Mr. Yontef admitted that he would not have otherwise had access to this data. *Id.* at 392. As another example, Mr. Yontef testified that he did not have access to the computer accounting record system known as "Timberline" as part of his regular duties, and that he asked another Kushner Companies' employee for a guest password for another work-related purpose, but then took the opportunity to download the entire system onto a CD-rom. *Id.* at 312-320.

In light of Mr. Yontef's contradictory statements, and his admitted practice of providing "misinformation," this motion simply cannot be decided solely on the basis of his declaration, the only declaration submitted by the government on this issue.[1] Rather, a hearing should be held at which Mr. Yontef and others who have knowledge about the

---

[1] The transcripts of Mr. Yontef's depositions were provided to the government, along with the Court, with Mr. Stadtmauer's original January 16, 2007 Motion to Compel Discovery, and thus the government should have been aware that the statements in Mr. Yontef's declaration contradicted this prior sworn testimony.

11

government's possession and knowledge of the stolen records, testify and are subject to cross-examination.

### E. A Suppression Hearing Is Warranted to Determine Whether the Government Violated Mr. Stadtmauer's Fourth Amendment Rights

A suppression hearing is warranted in this case based on Ms. Nortup's declaration and the prior evidence presented to the Court. In addition, the government's opposition raises additional questions that it should be required to answer. As noted above, Mr. Yontef states that he provided documents to the government "only pursuant to grand jury subpoena" in February 2003. Gov. Opp. at 5. Putting aside the fact that this contradicts Mr. Yontef's prior sworn testimony, it also raises the additional question as to how the government knew to issue a grand subpoena for the records to Mr. Yontef in February 2003, when he was not deposed about his taking of the records until May 14, 2003. *See* Fink Dec. Exhibit X. It is also notable that the grand jury did not subpoena documents from any other Kushner Companies' internal accountants or employees. The government should also be required to explain how it knew specifically to subpoena Mr. Yontef, and how it knew which documents to direct him to produce.[2] The Government appears to have had knowledge of the theft,

---

[2] The government did not attach the subpoena as an exhibit to its opposition, leaving the Court with no way to determine whether the description of the request

12

knowledge of the contents of the record (through conversations with representatives of Murray Kushner), and, at the very least, to have tacitly approved of the search and seizure. We submit that it is very likely that the government already had the records in its possession at the time of the subpoena or had knowledge of their existence and substance substantially before the issuance of the subpoena and that the true purpose of the subpoena was to legitimatize these records after the fact.

### F. Mr. Stadtmauer Had a Reasonable Expectation of Privacy in the Stolen Records

The government's argument that there can be no Fourth Amendment violation here because Mr. Stadtmauer had no expectation of privacy in the records stolen by Mr. Yontef is also without merit. Gov. Opp. at 12. The argument is simply not supported by the facts.

As an initial matter, the Kushner Companies' employee manual, which Mr. Yontef received, read, and signed, *see* January 4, 2002 Handbook Receipt Acknowledgment Form signed by Robert Yontef, attached hereto as Exhibit A, provided as follows:

> Every employee agrees as a condition of employment that he or she shall keep confidential from disclosure outside the Employer and/or an affiliate to which employee is assigned, all

---

contained therein indicates that the government already had possession of or specific knowledge of the stolen records.

13

>information (including written, verbal, electronic, data, copies, diskettes, and any other type of communications media) gained or acquired during employment with Employer, other than information which is in the public domain and authorized for release by Employer. A violation of this policy is cause for termination, and can expose employee to a claim for damages by Employer. . . .
>
>Employees must keep information that is acquired within the course of employment confidential and in particular no such information can be furnished to an employee of our Company or person unrelated to Employer or to anyone outside the Employer (except as required by management).

*See* Excerpts from Kushner Companies' Employee Manual, attached hereto as Exhibit B.[3]

Moreover, as noted above, Mr. Yontef did not have "full access" to the Kushner Companies' records during the normal course of his employment, as wrongly alleged by the government and stated by Mr. Yontef in his declaration. Mr. Yontef admitted in his deposition that he did not have full access to the information in the course of his regular duties, and he described occasions in which he only was able to obtain access to records by secret copying or by deceiving another employees.

Under these circumstances, Mr. Stadtmauer had a reasonable

---

[3] The Kushner Companies' employee handbook and Mr. Yontef's Handbook Receipt Acknowledgement Form were produced by the government to the defendants in discovery in this case.

expectation of privacy in the records stolen by Mr. Yontef. *See Knoll Associates, Inc. v. FTC*, 397 F.2d 530, 535-36 (7th Cir. 1968) (reasonable expectation of privacy where stolen documents were not related to the duties of the employee who took them).

The government essentially admits the weakness of its position by making the outlandish alternative argument that Mr. Yontef's position as a mere company accountant gave him "actual and apparent authority" to consent to a search of the Kushner Companies' records, including records to which he did not even have legitimate access during work hours. The government provides no factual basis for this assertion, and, indeed, Mr. Yontef himself does not make any claim that he had such authority. Moreover, in light of the company's confidentiality requirements, he clearly did not.

The government also implies, once again without any sworn statements, that Murray Kushner, as a partner in some of the entities, authorized Mr. Yontef to copy the records. *See* Gov. Opp. at p. 12, n. 4. This is again incorrect as a factual matter. Mr. Yontef testified at length that he gave Murray Kushner volumes of information related to entities in which Murray Kushner had no partnership interest whatsoever, and thus had no right to copies of these records. *See, e.g.*, Fink Dec. Exhibit Y, at 262-64,

15

267-68, 302-304, 326-29, 334, 354, 356-57, 361-62, 370-71. Moreover, the government appears to concede that Murray Kushner directed Mr. Yontef surreptitiously to take the records, thus belying the government's assertion that Murray Kushner had the authority to order legitimate copying of the records,[4] and thus making the government's failure to submit declarations from Mr. Kushner and Mr. Stern all the more glaring.

In sum, the government has failed adequately to explain how it came into possession of, and or came to have knowledge of, the stolen records, and therefore, a suppression hearing is warranted to determine whether Mr. Stadtmauer's Fourth Amendment rights were violated by the government's conduct in this case.

## Conclusion

For all of the foregoing reasons, Mr. Stadtmauer's motion should be granted in its entirety.

---

[4] Indeed, at the time of Mr. Yontef's theft, Murray Kushner and Charles Kushner were involved in the civil litigation and all discovery was under control of the court, and Murray Kushner had no right as a partner to take records out of the Kushner Companies without court authorization.

16

Dated: New York, New York
January 28, 2008

        Respectfully submitted,

        KOSTELANETZ & FINK, LLP

By:  /s/ Robert S. Fink
      Robert S. Fink (RSF-7924)
      Caroline Rule (CR-6503)
      Megan L. Brackney (MLB-6870)
      7 World Trade Center
      New York, New York 10007
      (212) 808-8100

      Counsel to Richard Stadtmauer