UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 05-249 (JLL) |
| v. | : | |
| MARCI PLOTKIN, | : | Hon. Jose L. Linares |
| STANLEY BEKRITSKY, | | |
| RICHARD STADTMAUER, and | : | |
| ANNE AMICI | | |

MEMORANDUM OF THE UNITED STATES IN OPPOSITION
TO DEFENDANTS' JOINT MOTION *IN LIMINE* REGARDING
THE EXPERT TESTIMONY OF IRS REVENUE AGENT SUSAN GRANT

CHRISTOPHER J. CHRISTIE
United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102
(973) 645-2700

On the Brief:
Thomas J. Eicher
Rachael A. Honig
Hallie A. Mitchell
Assistant United States Attorneys

## **PRELIMINARY STATEMENT**

The United States submits this memorandum of law in response to the defendants' joint Motion to Deem Summary of Sue Grant Insufficient; Barring Testimony; Or For a Daubert Hearing.  The United States respectfully reserves its right to supplement its responses by oral argument.

**BACKGROUND**

This brief assumes the Court's familiarity with the factual allegations set forth in the Superseding Indictment, and does not discuss them in detail herein.

This matter is scheduled for trial on February 13, 2008. On December 13, 2007, two months in advance of trial, the government officially notified the defendants of its intention to call Internal Revenue Service ("IRS") Revenue Agent Susan Grant as an expert witness at trial. (See January 30, 2008, Declaration of Rachael A. Honig In Support of Motion By the United States to Exclude Expert Testimony and For a Daubert Hearing [hereinafter "1/30/08 Honig Decl."], Ex. A.) Defendants have long been on informal notice of the government's intention to do so, based on the government's earlier provision to the defendants of draft versions of Agent Grant's summary charts. Agent Grant's charts set forth her detailed tax calculations, which will be the basis for the majority of her testimony at trial.

As required by Federal Rule of Criminal Procedure 16(a)(1)(G), the government's December 13, 2007 notice provided defendants with a summary of Agent Grant's expected testimony, describing her opinions, the bases and reasons for those opinions, and her qualifications. (See 1/30/08 Honig Decl., Ex. A.) The summary referenced Agent Grant's detailed charts, noting that they provide the substance of Agent Grant's tax calculations, and explained that Agent Grant would opine further that (1) capital and depreciable assets were improperly expensed in full by the real estate partnerships referenced in the Superseding Indictment; (2) charitable contributions were improperly deducted in full on the partnership returns; (3) expenses for gifts and entertainment were improperly deducted in full on the partnership returns; (4) items were improperly deducted as business expenses on the partnership

tax returns that were not ordinary and necessary business expenses of those partnerships; and (5) these improper deductions all had potential effects on the individual partners' tax returns.  (See id.)  In the full month that followed the government's Rule 16(a)(1)(G) disclosure, no defendant asked for more details or complained that the government's disclosure was insufficient.

On January 14, 2008, the government produced a marked set of its trial exhibits, including updated versions of Agent Grant's charts that provided even more supporting detail (including, for example, references to specific trial exhibit numbers) than the draft versions previously provided.  On the same date, defendant Marci Plotkin provided notice of her intention to call as an expert witness at trial a certified public accountant named Roger Upton.  (See 1/30/08 Honig Decl., Ex. B.)  In her notice, defendant claimed for the first time that the government's disclosure regarding Agent Grant was inadequate.  (See id.)  Defendant thus refused to furnish a summary of the relevant areas of Mr. Upton's proposed testimony, and announced her intention to await "either a supplemental Rule 16 summary from the government or the Court's ruling on the motion that we will file."  (See id.)

In response to defendant Plotkin's January 14, 2008 letter, and in an attempt to satisfy her concerns, the government on January 30, 2008 issued a letter supplementing its disclosure regarding Agent Grant.  (See February 5, 2008 Declaration of Rachael A. Honig In Opposition to Defendants' Joint Motion In Limine Regarding the Expert Testimony of IRS Revenue Agent Susan Grant [hereinafter "2/5/08 Honig Decl.], Ex. A.)  The supplemental disclosure provided the following additional details, among others:

> [T]he government expects that Agent Grant will testify regarding how a partnership tax return works.  She will explain that certain items, such as charitable contributions, are "pass-through" items and that other expenditures, such as political contributions, are

3

> non-deductible and must be recorded as distributions to the appropriate partner(s). She will also testify that the partnership tax return contains separate lines for the reporting of charitable contributions and meals and entertainment expenses, and that the latter are subject to a 50 percent limitation on deduction. She will further explain that business gifts are also subject to limitation. Agent Grant will also explain that newly-acquired assets with a life exceeding one year as well as capital improvements to existing assets should be recorded as such on the tax return and depreciated according to their useful life. She will explain generally what constitutes a "partnership expense." She will further testify that there is no "immateriality" or "de minimus" exception for the depreciation of capital expenditures or the reporting of meals and entertainment expenses or charitable contributions.
>
> Agent Grant further will explain the detailed calculations in the summary charts that have already been provided to you. She will testify as to the nature of the expenditures that make up the amounts summarized in the charts and will explain that these amounts were deducted in full on the partnership returns. Agent Grant will explain that these deductions had the potential to affect individual partners' tax returns on a going-forward basis in a number of ways. First, the deductions lowered the amount of income or, in most cases, increased the loss reported to individual partners on their Forms K-1. While charitable contributions may be deducted by individual partners, there are limits on such contributions, as well as on the amount of time that unused contributions may be carried forward. Loss from the partnership is not subject to the same restrictions. In addition, the increased loss reported to the partners increased each partner's basis in the property. This allowed the partners to reduce the amount of gain likely to be realized if and when the property was disposed of.

(2/5/08 Honig Decl., Ex. A.)  Neither defendant Plotkin nor any other defendant has yet indicated whether, in light of this supplemental disclosure, they continue to deem the government's Rule 16 obligations undischarged.

On January 15, 2008, defendant Richard Stadtmauer provided notice of his own intention to call Professor Charles Davenport as a witness at trial.  (1/30/08 Honig Decl., Ex. C.) As set forth in the government's motion to exclude Professor Davenport's testimony, defendant

4

Stadtmauer has indicated that Professor Davenport will opine as to "whether there were clear IRS rules prohibiting a taxpayer like the Kushner Companies from treating an entire apartment complex as the 'unit of property' for purpose of making capitalization vs. expense determinations . . . ."  (Declaration of Charles Davenport [hereinafter "Davenport Decl."] ¶ 3, 1/30/08 Honig Decl., Ex. C.)  The summary of Professor Davenport's testimony does not apply the "single unit of property" theory it espouses to any of the specific facts of this case, other than to state that "payments for $12,622.49 were made to Morris Sign Co. and Landscape Maintenance Co." and opining that it is "so improbable there is no ground even for speculation" that any signs or landscaping of that value could have enhanced the value of or extended the life of an entire apartment complex.  (Davenport Decl. ¶ 12.)

In the instant motion, defendants claim that they will defend this case at trial, in part, by arguing "that many of the claimed false characterizations were, in fact, properly characterized as deductible expenses."  (Defendant's Brief in Support of Motion to Deem Government Rule 16 Summary of Expert Testimony Is Insufficient, Barring Testimony of Expert or Alternatively For a Dauber [sic] Hearing [hereinafter "Def. Br."] at 3.)  However, the government has received no other disclosures from the defense purporting to provide notice of expert testimony on tax issues, other than defendant Bekritsky's indication that his proposed expert witness, Edward Waddington, C.P.A., may testify to the general legal principle that charitable contributions may be deductible when the payments bear a direct relationship to the taxpayer's business and are made with a reasonable expectation of commensurate financial return.  (See 1/30/08 Honig Decl., Exs. D & E.)  Like Professor Davenport, the summary of Mr. Waddington's testimony does not purport to apply this legal principle to the facts of this case.

5

(See id.)

The present motion requests that the Court "initially" order the government to provide a summary of Agent Grant's testimony that satisfies the requirements set forth in Rule 16, and, further, that the Court "should prohibit the proposed expert testimony of [Agent Grant] or at a minimum conduct a Daubert hearing to determine the admissibility of her proposed expert testimony." (Def. Br. at 20.) Embedded within defendants' moving papers is an additional demand that the government identify rebuttal experts now, in advance of trial. (Def. Br. at 18-19.) The government opposes these requests, and submits that Agent Grant's testimony is proper and admissible at trial; that there is no reason for a Daubert hearing, and that it is not required to now identify and provide notice of potential witnesses that it has not yet decided to call in its rebuttal case.

**ARGUMENT**

I.        **The Government's Disclosures Regarding Agent Grant Are Sufficient Under Rule 16(a)(1)(G)**

At the outset, the government queries why, if defendants truly found the government's Rule 16(a)(1)(G) disclosures to be inadequate, they did not simply contact the government and request more detail.  The original disclosure was made on December 13, 2007, and defendant Plotkin did not complain until January 14, 2008 — shortly before filing the instant motion to preclude Agent Grant's testimony — that more information was needed.  The government quickly responded with additional detail, but was not able to do so before defendants' motion was filed.  Had defendants notified the government earlier, perhaps this motion could have been avoided.

Regardless, it is clear that the government's disclosures regarding Agent Grant are more than adequate to summarize Agent Grant's testimony and "describe [her] opinions, the bases and reasons for these opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  The government has indicated that, among other things, Agent Grant will explain that capital expenditures, meal and entertainment expenses, non-property-related expenses, and charitable and political expenses should not be deducted in full on a partnership tax return.  She will then, using her charts, summarize the specific items that were, in fact, deducted in full on the real estate partnerships' tax returns, and explain what the tax consequences of those deductions were.  She will further explain how that impacted the reporting of income to the individual partners — namely, by reducing the amount of income to each partner reported on the partner's Form K-1, and by "stepping up" each partner's basis in the property.  The contours of her testimony thus being clear, no further disclosure is required.

## II. Agent Grant's Testimony Is Admissible Pursuant to Rule 702.

It is further evident from the government's disclosures that Agent Grant's proposed testimony is both appropriate and admissible pursuant to Federal Rule of Evidence 702. That Rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (codifying Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)). This Court exercises a "gatekeeping" function that requires it to determine, as an initial matter, whether proposed expert testimony meets the standards for admissibility contained in the rule. Testimony is admissible if (1) the expert is qualified; (2) the proposed testimony is "reliable"; and (3) the proposed testimony "fits" with the facts of the case, or in other words, is helpful to the jury. See Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). Defendants apparently do not contest either Agent Grant's qualifications or the reliability of her conclusions, but claim instead that her testimony will be unhelpful because it will "confuse the jury and usurp[] the judicial function as well as the role of the jury on issues for their ultimate determination." This is an issue of "fit."

### A. Agent Grant's Proposed Testimony Does Not State Legal Conclusions.

Agent Grant's testimony at trial will summarize voluminous financial information, explain the IRS's reporting requirements, opine as to what should or should not have been reported to the IRS on the partnership tax returns, and set forth the tax consequences

of defendants' reporting or non-reporting. Courts routinely uphold the admission of expert testimony from IRS agents under these circumstances. See e.g., United States v. Pree, 408 F.3d 855, 870 (7th Cir. 2005) (affirming the admission of testimony of IRS agent who "analyzed the stock sales and described the income tax consequences"); United States v. Tarwater, 308 F.3d 494, 514 (6th Cir. 2002) (affirming admission of testimony of IRS agent who "review[ed] the documentary evidence" and "rendered an opinion about the accuracy of [defendant's] tax returns based on that evidence"); United States v. West, 58 F.3d 133, 140 (5th Cir. 1995) (affirming admission of testimony of IRS agent as "adequately suited to assist the jury in understanding the large amount of documentary evidence presented by the government and the tax implications"); United States v. Duncan, 42 F.3d 97, 102 (2d Cir. 1994); United States v. Moore, 997 F.2d 55, 58 (5th Cir. 1993) (holding that IRS agent "was qualified to explain to the jury the procedures used to prepare income tax returns and the types of deductions claimed by the defendants"); United States v. DeClue, 899 G.2d 1465, 1473 (6th Cir. 1990) (affirming the admission of testimony of IRS agent who opined as to whether tax was due and owing for the years in question); United States v. Windfelder, 790 F.2d 576, 581 (7th Cir. 1986) (holding that IRS agent may analyze a transaction and express an opinion as to the proper tax consequences of that transaction); United States v. Binstein, 1996 WL 19132, *13 (D.N.J. Jan. 3, 1996) (Simandle, J.). The fact that taxation is a governmental scheme that is based on laws and regulations does not make Agent Grant's testimony a "legal opinion." See Duncan, 42 F.3d at 101 n.3 (holding that IRS agent's testimony did not "express legal conclusions, but only [] explain[ed] sophisticated aspects of a regulatory system for which the witness had expertise"). Rather, the testimony will explain for the jury the basic workings of a partnership tax return and the proper reporting of

certain types of expenses, areas that are likely to be beyond the average juror's knowledge and understanding. The testimony therefore will "assist the trier of fact to understand the evidence," making it admissible pursuant to Rule 702.

Moreover, to the extent that Agent Grant's testimony will describe the application of the tax laws to the specific facts of this case, this is a permissible use of expert testimony under Rule 702. See Fiataruolo v. United States, 8 F.3d 930, 941 (2d Cir. 1993) (affirming admission of expert testimony that defendant did not qualify as a "responsible person" under Section 6672 of the Internal Revenue Code, finding it a "mixed question of fact and law"). What is prohibited is "bald assertion[s] of the law" — in other words, the type of evidence that defendants themselves have attempted to introduce through the proposed testimony of Professor Davenport. It is the Court who decides what the law is, or what it does or does not allow, and instructs the jury accordingly. How the law applies to the facts of the case, however, is a different matter.

Defendants claim that the government's initial Rule 16(a)(1)(G) disclosure regarding Agent Grant sets forth legal conclusions because it states that her summary charts "reflect 'the substance of her criminal tax calculations' as well as 'the appropriate tax law.'" (Def. Br. at 8.) This is disingenuous. The disclosure actually states that the charts are based on the appropriate tax law, as of course they should be. (See 1/30/08 Honig Decl., Ex. A.) Furthermore, the word "criminal" was included not to suggest that Agent Grant would be opining that the defendants are criminals, but to distinguish her calculations from civil tax calculations, which, among other differences, include penalties and interest.

Defendants also complain about the word "improper," contending that if Agent Grant opines that certain deductions were "improper," then she "invades the province of the judge." This is incorrect. While it is indisputably the judge who instructs the jury what the law is, it is the jury who applies that law to the facts. Expert testimony that assists the jury in doing so is appropriate and admissible under Rule 702. See Fed. R. Evid. 704 ("[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.").

Defendants further assert that the Court "will be asked (and has been in a pre-trial motion) to tell the jury that it was not 'improper' to treat the entire apartment complex as a unit of property. This is wholly a matter of law; not expert opinion." (Def. Br. at 10.) The government whole-heartedly agrees with the latter assessment, and assumes that defendants will therefore withdraw their attempt to offer the testimony of Professor Davenport, who purports to opine on precisely this matter. Moreover, the government has at no time indicated that Agent Grant intends to testify as to the propriety or impropriety of defendants' "single unit of property" theory. If the Court were to deny the government's motion regarding Professor Davenport, of course, this may change. For defendants to offer improper legal argument in the guise of expert testimony and then claim that the government cannot respond directly to that argument because to do so would "invade the province of the judge" is absurd.[1]

---

[1] The government further notes that the Court has in fact never been asked to instruct the jury on the "single unit of property" theory. Defendants offered the theory in a pretrial motion claiming that the law of capitalization was hopelessly unclear and therefore void for vagueness, a motion that the Court denied. Moreover, the proposed jury instructions that defendants have shared with the government contain no mention of the "single unit of property" theory or, indeed, any instructions at all on substantive tax law. If defendants propose such an instruction in the future, the government will energetically oppose it.

Similarly, Agent Grant's testimony regarding the propriety of the partnerships' deductions for meal and entertainment, charitable, and non-property-related expenses (including start up costs for unrelated business ventures that never succeeded) will be appropriate and admissible at trial. Defendants correctly state that Agent Grant will testify as to her opinion that the meal and entertainment expenses detailed in her chart "factually fit[] into the 50% [deductibility] category." Agent Grant will be subject to cross-examination on her opinion, and the jury is free to decide that the expenses instead "factually fit" in a 100 percent deductibility category, as defendants apparently claim. Likewise, Agent Grant's implicit factual conclusion that monies paid to Israeli charities, French educational institutions, and to put Norcrown Bank's name on a parade float — to take just a few examples — were not part of some global advertising campaign intended to "market the Kushner Name for Kushner Companies' Success" will be subject to cross-examination as well. The jury will be able to reach its own factual conclusions, and will not be prevented from making an independent determination of witness credibility.

### B.     Agent Grant Properly May Testify As to Factual Conclusions.

Perhaps the most puzzling aspect of defendants' moving papers is their frequent claim that Agent Grant's testimony will, "of necessity, invade the province of the . . . jury" because it involves factual conclusions. As set forth above, however, Federal Rule of Evidence 704 expressly provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Judge Weinstein stated it succinctly in United States v. Sessa, 806 F. Supp. 1063, 1067 (E.D.N.Y. 1992): "An expert cannot deprive a jury of its authority to determine facts because a

jury always retains the power to reject the expert's view.  Nor is it sensible to preclude an expert's testimony on a question of fact on the ground that it goes to 'the very issue before the jury.'  A jury does not lose its ability to critically evaluate an expert's opinion simply because that opinion touches an 'ultimate' question." Id. (citation omitted).

Defendants lamely offer the assertion that Agent Grant's testimony will somehow involve a credibility determination regarding the government's or the defendants' witnesses without explaining why this should be so.  Contrary to defendants' assertion, however, the government is entitled to call an expert witness to offer an opinion that is based on "disputed" facts.  See Pree, 408 F.3d at 871 (holding that IRS agent was permitted to testify based on a "selective summary" of evidence in case and observing that "that is why cross examination is allowed") (quoting Moore, 997 F.2d at 58).  An expert certainly may not testify that she personally finds particular witnesses more or less credible than others, see United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1988), but Agent Grant will not do so in this case.  Defendants' objection is therefore unfounded.

   **C.** **Agent Grant's Proposed Testimony Regarding the Understatement of Income to the Partnerships' Partners Is Relevant and Admissible.**

Defendants rightly observe that the Superseding Indictment alleges that the overstatement of deductible expenses on the partnerships' tax returns "caus[ed] the understatement of net income by the [partnerships'] partners."  Superseding Indictment at ¶ 7.  Defendants somehow convert this into an allegation requiring proof that "the conspirator partners understated their net income on their own personal returns for the indictment years . . . ."  (Def. Br. at 14.)  As the government has explained to the Court, and defendants, previously, this is not so.  A partnership is a pass-through entity that reports net income to its partners on a

13

Form K-1. If, as here, the partnership understates its income through the use of overstated deductions, then the necessary result is that net income to the partners is understated on the Forms K-1. It is as simple as that.

The government expects that Agent Grant will further testify, however, that this understatement of income had additional consequences. For example, it allowed partners to make use of deductions for charitable contributions that might otherwise be disallowed due to the limitations individual taxpayers must observe on the dollar amount of such contributions and the number of years that unused contributions can be carried forward. As set forth in the government's supplemental disclosure, the understatement also had the effect of increasing the partners' basis in the property, which allowed the partners to shelter some of their potential gain at the time the property was sold (an event, incidentally, that has since come to pass). This is clearly relevant to the co-conspirator partners' motive for committing the offense charged, and is therefore admissible at trial. See United States v. Sriyuth, 98 F.3d 739, 747 n.12 (3d Cir. 1996) (stating that "motive is always relevant in a criminal case, even if it is not an element of the crime").

**III.        There Is No Need For a Daubert Hearing Regarding Agent Grant.**

Defendants request that the Court hold a Daubert hearing on Agent Grant's proposed testimony in order to "flesh out the meager information contained within the government's Rule 16 summary." While the government disputes the assertion that its original disclosure to defendants was inadequate, it has since supplemented and clarified that disclosure in an attempt to satisfy defendants' demands. On the current record, it is clear that Agent Grant is qualified, and that her testimony is reliable and likely to be helpful to the jury. There is thus

no reason for a <u>Daubert</u> hearing, and her proposed testimony should be deemed admissible.

**IV.         The Government Cannot Be Required to Disclose Rebuttal Experts That It Has Not Yet Decided to Call as Witnesses.**

Finally, defendants claim that the government is "holding back" rebuttal experts that it should be ordered to disclose now pursuant to Rule 16. According to defendants, the government is obligated to identify, pretrial, any witnesses that it will "probably" produce in its rebuttal case. (Def. Br. at 19.) Rule 16, however, includes no such requirement; instead, it expressly states that notice must be given only of experts that the government intends to call in its case-in-chief. <u>See</u> Fed. R. Crim. P. 16(a)(1)(G); <u>see also</u> <u>United States v. Frazier</u>, 387 F.2d 1244, 1269 (11th Cir. 2004) ("Our case law establishes that, consistent with the plain language of the Rule, the government's presentation of *rebuttal* testimony without prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief.") (emphasis in original) (collecting cases). Moreover, the government cannot determine at this point which expert witnesses, if any, it will "probably" call its case-in-chief. Much depends on the Court's rulings as well as on the arguments defendants present at trial. For example, if the Court properly excludes Professor Davenport's legal opinion regarding the "single unit of property" theory, the government will not need to call an expert witness to rebut it. If the evidence is allowed in, however, the government may very well do so.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully submits that the defendants' joint Motion to Deem Summary of Sue Grant Insufficient; Barring Testimony; Or For a Daubert Hearing must be denied.

                                                      Respectfully submitted,

                                                     CHRISTOPHER J. CHRISTIE
                                                   United States Attorney

                                                   s/Thomas J. Eicher

                                    By:    THOMAS J. EICHER
                                                   Assistant U.S. Attorney

                                                   s/Rachael A. Honig

                                    By:    RACHAEL A. HONIG
                                                   Assistant U.S. Attorney

                                                   s/Hallie A. Mitchell

                                    By:    HALLIE A. MITCHELL
                                                   Assistant U.S. Attorney

DATED:      February 5, 2008
                    Newark, New Jersey

**CERTIFICATE OF SERVICE**

        I hereby certify that on the 5th day of February, 2008, true and correct copies of the foregoing Memorandum of the United States In Opposition to Defendants' Joint Motion *In Limine* Regarding the Expert Testimony of IRS Revenue Agent Susan Grant and accompanying Declaration of Rachael A. Honig were sent <u>electronically</u> to:

| | |
|---|---|
| Robert S. Fink, Esq. | Richard J. Schaeffer, Esq. |
| Caroline Rule, Esq. | Brian Rafferty, Esq. |
| Megan L. Brackney, Esq. | Dornbush Schaeffer Strongin & |
| Kostelanetz & Fink, LLP |    Venaglia, LLP |
| 7 World Trade Center | 747 Third Avenue |
| New York, NY 10007 | New York, NY 10017 |
| | |
| Justin P. Walder, Esq. | Edward J. Plaza, Esq. |
| K. Roger Plawker, Esq. | Weir & Plaza, LLC |
| Lin Claire Solomon, Esq. | 321 Broad Street |
| Walder, Hayden & Brogan, P.A. | Red Bank, NJ 07701 |
| 5 Becker Farm Road | |
| Roseland, NJ 07068 | |

                                                s/Rachael A. Honig
                                                Rachael A. Honig

Dated: February 5, 2008