UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA          :          Crim. No. 05-249 (JLL)

                    v.                          :

MARCI PLOTKIN,                         :          Hon. Jose L. Linares, U.S.D.J.
STANLEY BEKRITSKY,
RICHARD STADTMAUER, and       :
ANNE AMICI

---

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO DEFENDANT
MARCI PLOTKIN'S MOTION TO SUPPRESS AFFIDAVITS AND BAR
TESTIMONY RELATIVE TO ATTORNEY-CLIENT PRIVILEGED
COMMUNICATIONS

---

                                        CHRISTOPHER J. CHRISTIE
                                        United States Attorney
                                        970 Broad Street
                                        Suite 700
                                        Newark, New Jersey 07102
                                        (973) 645-2700

On the Brief:
Thomas J. Eicher
Rachael A. Honig
Hallie Mitchell
Steven G. Sanders
Assistant United States Attorneys

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES............................................... iii

TABLE OF ABBREVIATIONS............................................ v

PRELIMINARY STATEMENT........................................... 1

RELEVANT FACTUAL BACKGROUND.................................. 2

    The Obstructive Conduct............................................ 2

    The Motion To Dismiss Counts 30 & 31............................... 3

    The *Jencks* Material.............................................. 5

ARGUMENT......................................................... 6

I.     PLOTKIN HAS FAILED TO CARRY HER BURDEN OF
      ESTABLISHING THAT AN INDIVIDUAL ATTORNEY-CLIENT
      RELATIONSHIP EXISTED WITH SSMB'S COUNSEL.............. 7

II.    THE SINGLE COMMUNICATION PLOTKIN IDENTIFIES IS
      CLEARLY NOT PRIVILEGED BECAUSE IT WAS NOT MADE
      FOR THE PURPOSE OF OBTAINING LEGAL ADVICE AND WAS
      INTENDED TO BE DISCLOSED TO THE GOVERNMENT......... 12

      A.    Plotkin Was Not Seeking Legal Advice When She Made The
          Statement In Question..................................... 12

      B.    Plotkin Had No Expectation Of Confidentiality Because She
          Knew Her Communication With Kipnees Would Be Relayed To
          The Government. ........................................ 14

III.   SSMB PROPERLY WAIVED ANY ATTORNEY-CLIENT
      PRIVILEGE THAT ATTACHED TO COMMUNICATIONS
      BETWEEN ITS COUNSEL AND SSMB EMPLOYEES
      REGARDING SSMB'S COMPLIANCE WITH THE GRAND JURY
      SUBPOENAS. ............................................. 15

IV.   THE CRIME-FRAUD EXCEPTION VITIATES ANY CLAIM OF
      PRIVILEGE AS A MATTER OF LAW. ......................... 18

**V.     PLOTKIN  WAIVED  ANY  PRIVILEGE  BY  AFFIRMATIVELY RELYING ON COMMUNICATIONS WITH SSMB'S COUNSEL IN MOVING  TO  DISMISS  COUNTS  30  AND  31  OF  THE SUPERSEDING INDICTMENT.................................. 22**

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## Cases

In re Antitrust Grand Jury,
    805 F.2d 155 (6th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Bevill, Bresler & Schulman Asset Management Corp.,
    805 F.2d 120 (3d Cir. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 15, 16, 17

In re Bonanno,
    344 F.2d 830 (2d Cir. 1965).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bulow v. von Bulow,
    811 F.2d 136 (2d Cir. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Clark v. United States,
    289 U.S. 1 (1933). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Computer Network Corp. v. Spohler,
    95 F.R.D. 500 (D.D.C. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

Crawford v. Washington,
    541 U.S. 36 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Matter of Feldberg,
    862 F.2d 622 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Glick v. White Motor Co.,
    458 F.2d 1287 (3d Cir. 1972).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Grand Jury Investigation,
    445 F.3d 266 (3d Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

Matter of Grand Jury Proceeding,
    68 F.3d 193 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Grand Jury Proceedings (FMC),
    604 F.2d 798 (3d Cir. 1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Grand Jury Subpoena,
    223 F.3d 213 (3d Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Grand Jury Subpoena,
   274 F.3d 563 (1st Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Grand Jury Subpoena Duces Tecum (Rich),
   731 F.2d 1032 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Livingstone v. North Belle Vernon Borough,
   91 F.3d 515 (3d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rhone-Poulenc Rorer, Inc. v. Aetna Casualty & Surety,
   32 F.3d 851 (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 22

Trammel v. United States,
   445 U.S. 40 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Aramony,
   88 F.3d 1369 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Bilzerian,
   926 F.2d 1285 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

United States v. Davis,
   1 F.3d 606 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

United States v. Furst,
   886 F.2d 558 (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Hall,
   346 F.2d 875 (2d Cir. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Rockwell Intern.,
   897 F.2d 1255 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. White,
   970 F.2d 328 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Zolin,
   491 U.S. 554 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re von Bulow,
   828 F.2d 94 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

Other Authorities

2 Christopher B. Mueller & Laird C. Kirkpatrick,
Federal Evidence (2d ed. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| "Gov't Opp. Br." | refers to the Memorandum of the United States in Opposition to Defendants' Pretrial Motions [Docket Entry No. 69] |
| "Hoffman Aff." | refers to the Affidavit of Lauren Hoffman in Support of Marci Plotkin's Motion to Dismiss Counts 30 & 31of the Superseding Indictment [Docket Entry No. 47]. |
| "Plawker Cert." | refers to the Certification of K. Roger Plawker, Esq. in Support of Defendant Marci Plotkin's Motion to Suppress Affidavits and Bar Testimony Relative to Attorney-client Privileged Communications [Docket Entry No. 154] |
| "Plotkin Mot. to Dismiss Br." | refers to the Brief In Support of Defendant Marci Plotkin's Motion to Dismiss Counts 30 & 31 of the Superseding Indictment [Docket Entry No. 47] |
| "Plotkin Moving Br." | refers to the Brief in Support of Defendant Marci Plotkin's Motion to Suppress Affidavits and Bar Testimony Relative to Attorney-client Privileged Communications [Docket Entry No. 154] |
| "SSMB" | refers to the accounting firm of Schonbraun Safris McCann & Bekritsky |

## PRELIMINARY STATEMENT

The United States submits this memorandum of law in opposition to the motion by defendant Marci Plotkin "to suppress affidavits and bar testimony relative to attorney-client privileged communications."[1]

Directly contradicting the factual position she took in moving to dismiss Counts 30 and 31 of the Superseding Indictment, Plotkin now claims that she enjoyed an individual attorney-client relationship with Michael Himmel, Esq. and Robert Kipnees, Esq., outside counsel for SSMB, and that SSMB was powerless to waive the privilege attaching to her communications with them.  Plotkin's motion should be denied for any of five independent reasons:

- First, Plotkin has not establish that an attorney-client relationship actually existed.  She did not filed a sworn declaration, nor did she produce a written retainer agreement.  Instead, she relies on inference, innuendo, and the conclusory, unsworn assertions of defense counsel.

- Second, the only communication Plotkin identifies as privileged — her statement to corporate counsel that she did not possess certain documents the Government said were responsive to subpoenas served on SSMB — is clearly **not** privileged because it was not made for the purpose of securing legal advice, and was intended to be (and was) disclosed to the Government.

- Third, "[a] corporate official . . . may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters."  In re Bevill, Bresler & Schulman Asset Management Corp., 805 F.2d 120, 125 (3d Cir. 1986).

---

[1]Because the Confrontation Clause bars the Government from introducing the affidavits for the truth of the matters asserted therein, Crawford v. Washington, 541 U.S. 36 (2004), Plotkin's motion to suppress those affidavits is academic.  However, Plotkin's decision to make them publicly available by attaching them to a court-filed pleading undermines her claim that the information therein is confidential.

- <u>Fourth</u>, as a matter of law, the crime-fraud exception precludes Plotkin from using corporate counsel to conceal subpoenaed documents from the Grand Jury and then claiming a personal attorney-client relationship with that counsel to thwart an obstruction of justice prosecution.

- <u>Fifth</u>, having asserted in a previous motion that the Government could not prove an obstruction charge simply because SSMB's counsel had not yet asked her for specific documents, Plotkin waived any privilege attaching to questions from counsel about specific documents.

## RELEVANT FACTUAL BACKGROUND

### <u>The Obstructive Conduct</u>

Plotkin was a principal of SSMB, the outside accountant for the Kushner Companies.  In February 2003, the Government served both Plotkin and SSMB with grand jury subpoenas seeking documents relevant to an ongoing investigation into the tax returns filed by real estate partnerships controlled by the Kushner Companies.  Michael Himmel, Esq. and Robert Kipnees, Esq. represented SSMB in connection with its response to the subpoena.  Kipnees and Himmel also accepted service of the subpoena issued to Plotkin and had preliminary communications with the Government regarding Plotkin's compliance therewith.

On July 25, 2003, an FBI agent informed Himmel that various computerized schedules called "skeletons" had not been produced in response to the subpoenas served on SSMB.  Because Plotkin and to codefendant Stanley Bekritsky had assumed the role of document custodians, Kipnees "specifically discussed the government's request for skeletons with Stanely Bekritsky and Marci Plotkin.  Plawker Cert. Exh. C (Kipnees Aff. ¶ 6).  According to Kipnees, "Marci Plotkin stated that SSMBC did not have the skeletons

and they would have to be obtained from the Kushner Companies." Id. Ultimately, a search of SSMB's offices uncovered several "skeletons" in a file cabinet containing the central administrative files for the Kushner account located just outside Plotkin's office. The Government also recovered from Plotkin's own office documents that were responsive to the subpoena but that had not been produced. Plotkin, therefore, stands charged with obstructing justice for withholding documents responsive to the subpoenas that had been served on SSMB. (Superseding Indictment Count 30).[2]

**The Motion To Dismiss Counts 30 & 31**

On January 16, 2007, Plotkin moved to dismiss Counts 30 and 31, claiming that the Government would not be able to sustain its burden of proof at trial. In stark contrast to her current position, Plotkin's moving brief repeatedly asserted that Himmel and Kipnees were SSMB's lawyers, and that they had assumed the obligation to produce Kushner documents that were responsive to all subpoenas. Plotkin also claimed that the Government could not prove an obstruction charge where the evidence would establish only that SSMB's counsel had not yet asked her about specific, potentially responsive documents. We quote Plotkin's earlier moving brief at some length because her assertions there fatally contradict her current assertions:

- "Service of both subpoenas was accepted by **counsel for SSMB**, who confirmed to the government that they would authorize production of the 'Schonbraun' documents on behalf of SSMB and Ms. Plotkin pursuant to both subpoenas." Plotkin Mot. to Dismiss Br. at 3;

_____

[2] Plotkin also stands charged with a separate count of obstruction of justice. (Superseding Indictment Count 31), which, along with counts 26 through 29 of the Superseding Indictment, has been severed.

- "On February 23, 2003, a meeting took place between **counsel for SSMB** and the U.S. Attorney's Office with respect to the organization of the massive production."  Id.;

- "Although SSMB was continuing to respond to the subpoenas, and was in frequent communication with the government regarding forthcoming and particularized lists of documents . . . ."  Id. at 4;

- "the government would have received all the documents . . . had it continued to abide by the terms of the rolling production it had arranged and agreed to **with SSMB's lawyers**."  Id. at 5.

- Correspondence between **counsel for SSMB** and the U.S. Attorneys Office, prior to the search, demonstrates that it was understood by all parties and Ms. Plotkin that all Kushner related production obligations would be handled by SSMB, her employer."  Id. at 6.

- Over the course of the ten months prior to the search, **SSMB's counsel**, not Ms. Plotkin individually, maintained continuous contact with the government with respect to the production."  Id.

- SSMB cooperated, through numerous individuals to the exclusion of Marci Plotkin, in a continuing course of document production and a stream of responsive documents were channeled to the government up to and through November 6, 2003."  Id. at 7.

- "To the extent the government sought more, it had made an agreement with SSMB counsel to receive documents through a rolling production."  Id. at 13.

- "Throughout the process . . . there were frequent communications back and forth between the government and SSMB as to the documents to be produced.  **In this complex scenario, the fact that Marci Plotkin had not been asked <u>by SSMB counsel</u> for documents . . .  cannot establish a corrupt intent to obstruct."**  Id.

- Nor, since it was SSMB that was organizing the chain of production, can Ms. Plotkin be held responsible for the fact that she was not told to bring forth documents from her home."  Id. at 15.

- **"Because of the numerous communications with respect to the production . . . between the government and <u>counsel for SSMB</u>, it is**

4

> **impossible with any reasonable probability to prove that the documents
> in Marci Plotkin's office had been concealed, or were simply waiting in
> line to be reviewed and produced."** <u>Id.</u> at 19.

In opposition to Plotkin's motion, the Government described some of the evidence

it intended to elicit in support of Count 30.  In the process, the Government revealed

critical information that Plotkin had withheld from her current counsel:

> as to the Kushner Companies "skeletons," counsel for SSMB had
> specifically told the government that no such documents were located at
> SSMB and that its assurance in this regard was based on representations
> made by defendants.

Gov't Opp. Br. at 33; <u>accord</u> <u>id.</u> at 61.  Armed with the knowledge that Plotkin had made

affirmative misrepresentations to the Government through SSMB's counsel (powerful

evidence of her corrupt intent), Plotkin's counsel suddenly claimed that SSMB's counsel

personally represented her and questioned the propriety of Himmel and disclosing to the

Government Plotkin's communications with them: "I have not heard the Government

even respond to whether or not they in fact have such statements from Messrs. Himmel

and Kipnees of what they supposedly were told by their client, Ms. Plotkin."  Plawker

Cert. Exh. A (Hearing Tr. at 268).  The Government confirmed that there were, in fact,

such statements.  <u>Id.</u>  This Court denied Plotkin's motion as tantamount to an improper

attempt to obtain summary judgment in a criminal case.  <u>United States v. Plotkin</u>, Crim.

No. 05-249, slip op. at 23-25 (D.N.J. Aug. 30, 2007).

### The *Jencks* Material

On January 7, 2008, the Government produced <u>Jencks</u> material to Plotkin.

Included within that production were the statements mentioned at the June 7, 2007,

hearing.  Specifically, the Government produced affidavits executed in December 2004 by Himmel and Kipnees (1) disclosing that SSMB had waived any attorney-client privilege attaching to communications concerning SSMB's compliance with the Grand Jury subpoenas , and (2) describing that compliance and, more specifically, their interaction with Plotkin regarding the existence and whereabouts of the "skeletons."

## ARGUMENT

Plotkin repeatedly characterized Himmel and Kipnees as "SSMB's counsel" in a previous court-filed pleading.  In fact, she went so far as to claim that she could not be convicted of obstructing justice merely because Himmel and Kipnees had not yet requested specific documents from her.  Now, confronted with evidence that they **did** ask her about specific documents, Plotkin predictably moves to bar them from testifying against her at trial by claiming that they were her personal counsel, too.

As set forth below, Plotkin's motion fails for any of five independent reasons. First, Plotkin has failed to carry her burden of establishing an individual attorney-client relationship with SSMB's counsel.  Second, the only communication Plotkin identifies as privileged was not made for the purpose of securing legal advice and was intended to be (and was) disclosed to a third party (i.e., the Government).  Third, "[a] corporate official . . . may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters" that are inextricably intertwined with personal matters.  In re Beville, Bresler & Schulman Asset Management Corp., 805 F. 2d 120, 125 (3d Cir. 1986).  Fourth, as a matter of law, the crime-fraud exception prevents a

6

client from using her attorney to obstruct justice.  Fifth, Plotkin waived any privilege by putting her conversations with counsel in issue in moving to dismiss Counts 30 & 31.

## I.   PLOTKIN HAS FAILED TO CARRY HER BURDEN OF ESTABLISHING THAT AN INDIVIDUAL ATTORNEY-CLIENT RELATIONSHIP EXISTED WITH SSMB'S COUNSEL.

The attorney-client privilege is construed narrowly because it contravenes the basic principle that the public has a right to everyone's evidence.  Trammel v. United States, 445 U.S. 40, 50 (1980).  To establish the existence of the privilege, "the asserted holder" must prove that she "is or sought to become a client[.]"  Rhone-Poulenc Rorer, Inc. v. Aetna Casualty & Surety, 32 F.3d 851, 862 (3d Cir. 1994).  Corporate employees seeking to make that showing with respect to corporate counsel bear the added burden of proving: (1) "that they approached [counsel] for the purpose of seeking legal advice;" (2) "that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities;" and (3) "that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise."  Beville, Bresler & Schulman, 805 F. 2d at 123.

Significantly, a "party cannot invoke a privilege by remaining silent."  Id. at 126. Nor can the proponent discharge her burden by "mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed."  In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965); accord von Bulow v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987).  Here, however, Plotkin attempts to "invoke a privilege by remaining silent" and

7

by relying on "mere conclusory or ipse dixit assertions."  Indeed, Plotkin's privilege claim rests primarily on the unsupported, conclusory assertion that "[i]t was understood and known by all involved that Messrs. Himmel and Kipnees were representing both Ms. Plotkin, individually, and the Schonbraun firm, as well as a number of other individuals from the Schonbraun firm."  Plotkin Moving Br. at 4.

First, Plotkin has failed to submit a sworn declaration attesting to facts satisfying the existence of any of the element prescribed in Beville, Bresler & Schulman.  Nor has she submitted a retainer agreement with Himmel or Kipnees or any other document proving that she "made it clear that [she] was seeking legal advice in [her] individual rather than in [her] representative capacit[y]."  Plotkin also has not produced a signed conflict waiver, something that Kimmel and Kipnees likely would have procured before undertaking any such individual representation.  See N.J. R.P.C. 1.7(b).  Thus, she is unable to prove that SSMB's counsel "saw fit to communicate with [her] in [her] individual capacit[y], knowing that a possible conflict could arise."  That is sufficient, standing alone, to deny her motion.

Second, Plotkin's attempt to claim an individual attorney-client relationship with counsel for SSMB runs squarely counter to the factual assertions advanced in her brief in support of her motion to dismiss Counts 30 and 31.  As set forth at length above, Plotkin repeatedly referred to Himmel and Kipnees as "SSMB's counsel," and she went out of her way to make it appear as if SSMB had assumed the obligation to comply with her subpoena since it called on her to produce materials responsive to the subpoenas issued to

8

SSMB.  Not once did Plotkin refer to Himmel and Kipnees as "my lawyers," casting a dark cloud over her eve-of-trial effort to change positions to suit her current litigation posture.  See generally Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972) ("judicial admissions are binding for the purpose of the case in which the admissions are made").

Third, Plotkin's attempt to rely on circumstantial evidence of an attorney-client relationship is unavailing.  For example, Plotkin claims that, because her current counsel characterized her as Himmel's and Kipnees' former "client" at the June 2007 hearing on the pretrial motions, and because the Government somehow acquiesced in that description, she has proved the existence of an individual attorney-client relationship with SSMB's counsel.  Plotkin Moving Br. at 1.  That is sheer sophistry.  Plotkin — not the U.S. Attorney's Office — is the one with superior knowledge of any such relationship, yet she has failed to file a declaration attesting to its existence.  Besides, the Government was simply confirming that it was in possession of statements from Plotkin to Himmel and Kipnees, not that they represented her in her individual capacity.[3]

---

[3]Similarly unavailing is Plotkin's reliance on an FBI agent's description of the persons accepting service of the subpoena as "attorneys for Marci Plotkin."  Moving Br. at 2.  An FBI agent's characterization of a relationship as attorney-client obviously does not make it so.  Further, even if Himmel and Kipnees agreed to act as agents authorized to accept service of the subpoena, that falls far short of proving that they also agreed to act as **individual** counsel for her in responding to that subpoena.  Additionally, Plotkin's reliance on the return of service is fatally undermined by her previous assertion that "[s]ervice of both subpoenas was accepted by **counsel for SSMB**, who confirmed to the government that they would authorize production of the 'Schonbraun' documents on behalf of SSMB and Ms. Plotkin pursuant to both subpoenas."  Plotkin Mot. to Dismiss Br. at 3.

Further, Plotkin's reliance on her own counsel's assertions at the February 2007 hearing is disingenuous.  According to Himmel's Affidavit, an FBI agent inquired as to why SSMB had not produced any "skeletons" on July 26, 2003.  Thus, the only communication Plotkin identifies as privileged — the one described in paragraph 6 of the Kipnees Affidavit — most likely occurred on or after July 26, 2003.  Although Plotkin retained her current counsel sometime after she was served with the grand jury subpoena naming her personally, she has withheld any information about when that occurred.  Of course, if Plotkin had personal counsel in place by July 26, 2003, her claim of an individual attorney-client relationship with SSMB's counsel would ring particularly hollow.  Plotkin, however, simply ignores this significant timing issue.

Similarly, Plotkin relies on correspondence that, she claims, proves that SSMB's counsel represented her in her individual capacity.  These include: (1) a letter from SSMB's counsel referring to the subpoenas issued to SSMB and to Plotkin; (2) a different letter rescheduling Plotkin's appearance before the Grand Jury and noting that documents responsive to Plotkin's subpoena would be produced in response to SSMB's subpoena; and (3) a letter from Executive Assistant U.S. Attorney Ralph Marra confirming the order in which SSMB's counsel would produce documents responsive to both the SSMB and Plotkin subpoenas.  Plotkin Moving Br. at 2-3.  These letters establish nothing of substance and certainly do not prove the existence of an individual attorney-client relationship.  At most, they confirm that SSMB's lawyers were representing Plotkin in her corporate capacity since documents responsive to her subpoena were equally responsive

to SSMB's subpoenas.[4]  It is common for corporate counsel to accept service of subpoenas on behalf of corporate employees and to represent them in their corporate capacities until the need for individual representation arises, which is what occurred in this case.

Fourth, Plotkin relies on an August 27, 2003, letter in which Robert Kipnees claimed that his firm represents codefendant Anne Amici and transmitted documents responsive to a subpoena served on her.  Plotkin Moving Br. at 3.  However, even if this letter demonstrates that the Greenbaum, Rowe firm represented Amici in her individual (not corporate) capacity (something that is unclear), it **undermines** Plotkin's claim that the firm represented her individually because it shows that the firm knew full well how to describe its client.  Thus, the failure to use similar language in the March 5, 2003 letter adjourning Plotkin's appearance before the grand jury demonstrates that the Firm did not represent Plotkin in an individual capacity.  This is corroborated by the fact that almost all correspondence between the Greenbaum, Rowe firm and the Government began with the sentence, "As you are aware, this firm represents  [SSMB] in the above referenced matter."  Hoffman Aff. Exhs. 5 though 14.

In sum, Plotkin has failed to carry her burden of establishing an individual attorney-client relationship with outside counsel for SSMB.[5]

---

[4]In fact, it benefitted Plotkin to have documents responsive to her subpoena produced pursuant to SSMB's subpoena because it allowed her to avoid revealing to the Government that she personally possessed certain responsive documents.

[5]Although Plotkin has not requested an evidentiary hearing, she likely will use her reply brief to request such a hearing and to demand that Himmel and Kipnees be required

## II.   THE SINGLE COMMUNICATION PLOTKIN IDENTIFIES IS CLEARLY NOT PRIVILEGED BECAUSE IT WAS NOT MADE FOR THE PURPOSE OF OBTAINING LEGAL ADVICE AND WAS INTENDED TO BE DISCLOSED TO THE GOVERNMENT.

To support her claim that she enjoyed an individual attorney-client relationship with SSMB's counsel, Plotkin cites paragraph 6 of the Kipnees Affidavit.  That paragraph discloses that the Government had inquired into the existence of "skeletons;" that Kipnees had relayed this query to Plotkin; and that Plotkin had responded by representing that the "skeletons" were not located at SSMB's offices and would have to be obtained from the Kushner Companies.  This communication was not privileged for two, interrelated reasons.

### A.   Plotkin Was Not Seeking Legal Advice When She Made The Statement In Question.

The person asserting the privilege must prove that the communication from the client to the lawyer was made for the purposes of seeking legal advice.  Rhone-Poulenc Rorer, Inc., 32 F.3d at 862.  In Matter of Feldberg, 862 F.2d 622 (7th Cir. 1988), Judge Easterbrook, writing for the Seventh Circuit, explained that a corporation served with a grand jury subpoena cannot render all aspects of the search for documents privileged simply by involving a lawyer in the production:

---

to testify.  Having failed to put forth her own declaration, Plotkin is in no position to make such a demand, which would be a transparent effort to obtain a free preview of the Government's case against her.  Regardless, District Courts have refused to hold evidentiary hearings even where (unlike here) the defendant submitted an affidavit supporting his claim that an attorney-client relationship existed.  United States v. Aramony, 88 F.3d 1369, 1389 n.12 (4th Cir. 1996).  At all events, because this Court can dispose of Plotkin's motion on any of the four alternative grounds advanced in Points II through V below, an evidentiary hearing is unnecessary.

> There is no need for a privilege to cover information exchanged in the
> course of document searches, which are mostly mechanical yet which entail
> great risks of dishonest claims of complete compliance. Dropping a cone of
> silence over the process of searching for documents would do more harm
> than good.

Id. at 627.  Thus, while asking a "lawyer whether the document fell within the scope of the subpoena (and whether, if it did, it had to be produced)" would be privileged, routine questions "about the adequacy of the search do not entail legal advice."  Id.  The Seventh Circuit subsequently clarified that its holding in Matter of Feldberg did not turn on the unique fact that the attorney there was also the president of the subpoenaed corporation and its document custodian.  Matter of Grand Jury Proceeding, 68 F.3d 193, 197 (7th Cir. 1995) ("We fail to see how our holding in Feldberg could, consistently with our reasoning in that case, be limited to the grand jury testimony of attorneys who also serve as records custodians.").  Simply put, if "the questions do not entail legal advice, the attorney-client privilege does not come into play-irrespective of whether the attorney is or is not also the records custodian.  The privilege is limited to legal advice."  Id.

Here, the only communication at issue is a question from SSMB's counsel relaying a question from the Government about the adequacy of SSMB's production and Plotkin's response thereto.  As set forth in Feldberg, this is precisely the sort of mechanical question to which no privilege attaches: SSMB's counsel was acting as an intermediary, not seeking information for the purpose of providing legal advice to the corporation.  See Computer Network Corp. v. Spohler, 95 F.R.D. 500, 502 (D.D.C. 1982) ("it appears that the purpose of the conversations with other corporate officials was to obtain facts to

represent to the court, and not for the purpose of rendering legal advice to his client."); United States v. Hall, 346 F.2d 875, 882 (2d Cir. 1965) (finding that "counsel served merely as a conduit for transmission of a message").

**B.    Plotkin Had No Expectation Of Confidentiality Because She Knew Her Communication With Kipnees Would Be Relayed To The Government.**

An individual attempting to invoke the attorney-client privilege must prove that the communication was made in confidence and expected it to remain confidential. United States v. Furst, 886 F.2d 558, 575 (3d Cir. 1989). Because Plotkin has submitted no sworn declaration asserting that she expected her communication with Kipnees to remain confidential, she "may assert the attorney-client privilege only if in the circumstances of the meeting, [s]he could have reasonably expected that [Kipnees] would understand that [she] intended that the communications be confidential." Id.

Plotkin cannot meet that burden here because she knew that Kipnees was relaying a specific request for responsive documents from Government and that he would convey her response to federal prosecutors. Plawker Cert. Exh. C (Kipnees Aff. ¶ 6). Beyond that, Plotkin's brief in support of her motion to dismiss Counts 30 & 31 concedes that she was aware that federal prosecutors were contacting SSMB's lawyers regarding specific categories of documents and that those lawyers were responding to the Government's queries after discussing the matter with SSMB employees. Under these circumstances, Plotkin cannot credibly claim that she intended her communication to remain confidential. United States v. Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir. 1990) ("The

14

attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed."); see United States v. White, 970 F.2d 328, 334-35 (7th Cir. 1992) (no privilege where client communicated information to an attorney with the intention that it be disclosed in a court pleading); see also 2 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 186, at 324 (2d ed. 1994).

III.    **SSMB PROPERLY WAIVED ANY ATTORNEY-CLIENT PRIVILEGE THAT ATTACHED TO COMMUNICATIONS BETWEEN ITS COUNSEL AND SSMB EMPLOYEES REGARDING SSMB'S COMPLIANCE WITH THE GRAND JURY SUBPOENAS.**

Even assuming, arguendo, that Plotkin enjoyed a personal attorney-client relationship with SSMB's outside counsel and that the communication she has identified was, in fact, privileged, but see supra Points I & II, Plotkin argues that SSMB had no right to authorize counsel to disclose information she communicated for obtaining personal legal advice. Plotkin Moving Br. at 7. As she sees it, because her legal matter was inextricably intertwined with SSMB's, the onus was on SSMB's counsel to warn her when they considered communications with her relevant only to providing legal advice to SSMB, as opposed to her personally. Id. at 7-8. Plotkin's argument is a poorly disguised effort to relitigate Bevill, Bresler & Schulman, 805 F.2d at 120, whose holding and reasoning Plotkin tortures beyond recognition to suit her current litigation posture.

In that case, the District Court had required the corporate employees claiming an individual attorney-client privilege with corporate counsel to bear the burden of proving five elements, the last (and most important) of which was "that the substance of their

15

conversations with [counsel] **did _not_ concern matters within the company or the general affairs of the company.**" Id. at 123 (emphasis added).  The Third Circuit affirmed the use of the test and, in so doing, emphatically rejected the appellants' complaints that the fifth factor "would eviscerate their personal privileges" to the extent "their personal legal problems were inextricably intertwined with those of the corporation:

> under existing law, any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer.  Because a corporation can act only through its agents, a corporation's privilege consists of communications by corporate officials about corporate matters and their actions in the corporation.  A corporate official thus may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters.

Id. at 124-25 (citations omitted).  Thus, so long as a corporate employee's personal legal matter is inextricably intertwined with the corporation's, the corporation has the power to waive the attorney-client privilege as to communications between the employee and corporate counsel.  Accord In re Grand Jury Subpoena, 274 F.3d 563, 572 (1st Cir. 2001) (rejecting request that "that such 'dual' communications be treated as jointly privileged such that the consent of all parties would be required to waive the privilege" because "permitting a joint privilege of this type would unduly broaden the attorney-client privilege by allowing parties outside a given attorney-client relationship to prevent disclosure of statements made by the client").[6]

---

[6] The foregoing gives lie to Plotkin's claim that the Third Circuit "accepted that there are instances where corporate communications are indistinguishable from those that relate[] to . . . personal legal problems" and "**held that such communications were individually privileged.**"  Plotkin's Moving Br. at 9 (emphasis added).  Further,

16

Here, Plotkin's motion papers confirm that her discussions with SSMB counsel concerning her subpoena necessarily involved discussions regarding documents responsive to the subpoenas issued to SSMB:

> With regard to the document referenced in Mr.Kipnees' affidavit, the so-called "skeleton," such a document is, in fact, a Kushner document, which, if at all responsive, is equally responsive to [Plotkin's] subpoena and the subpoena served on the Schonbraun firm.  Whether Ms. Plotkin's alleged statement to Mr. Kipnees was in the context of her personal subpoena or a subpoena to the firm is indistinguishable.

Plotkin Moving Br. at 9.  That admission alone dooms Plotkin's attempt to show that any communications between her and SSMB's counsel "did not concern matters within the company or the general affairs of the company."  805 F.2d at 123.

In fact, Plotkin's brief in support of her motion to dismiss Counts 30 & 31 demonstrates that she and SSMB viewed the subpoena served on her — in her corporate capacity — as indistinguishable from the subpoenas issued to the corporation:

> Service of both subpoenas was accepted by counsel for SSMB, who confirmed to the government that they would authorize production of the 'Schonbraun' documents on behalf of SSMB and Ms. Plotkin pursuant to both subpoenas.
>
> .  .  .
>
> Correspondence between counsel for SSMB and the U.S. Attorneys Office, prior to the search, demonstrates that it was understood by all parties and

---

Plotkin's effort to place the burden on corporate counsel to distinguish between corporate and personal legal advice ignores the fact that she submitted no evidence to "demonstrate that when [she] approached [counsel] [she] made it clear that [she was] seeking legal advice in [her] individual rather than . . . representative" capacity  Bevill, Bresler & Schulman, 805 F.2d at 123.  "A party cannot invoke a privilege by remaining silent."  Id. at 126.

Ms. Plotkin that all Kushner related production obligations would be
handled by SSMB, her employer.

Plotkin Mot. to Dismiss Br. at 3, 6.  Given those assertions, Plotkin understood that her

communications with SSMB counsel about responsive documents allowed SSMB (and

Plotkin, as an SSMB employee)  to comply with their obligations under the subpoenas.

In sum, under clearly controlling Third Circuit law, SSMB had the authority to —

and validly did — waive any privilege that attached to communications between SSMB

employees and SMB counsel regarding SSMB's obligations under the subpoena.

## IV.   THE CRIME-FRAUD EXCEPTION VITIATES ANY CLAIM OF PRIVILEGE AS A MATTER OF LAW.

The attorney-client privilege serves "to encourage clients to make full disclosure

of facts to counsel so that he may properly, competently, and ethically carry out his

representation." In re Grand Jury Proceedings (FMC), 604 F.2d 798, 802 (3d Cir. 1979).

Its "ultimate aim is to promote the proper administration of justice." Id.  "A client's

criminal misuse of advice from counsel clearly serves to frustrate this goal." In re Grand

Jury Investigation, 445 F.3d 266, 274 (3d Cir. 2006).  The crime-fraud exception to the

attorney-client privilege, therefore, "assure[s] that the 'seal of secrecy' between lawyer

and client does not extend to communications made for the purpose of getting advice for

the commission of a . . . crime." United States v. Zolin, 491 U.S. 554, 563 (1989).

The Third Circuit has articulated a two-prong test to determine the crime-fraud

exception's applicability.  The Government "must make a prima facie showing that (1)

the client was committing or intending to commit a fraud or crime, and (2) the

attorney-client communications were in furtherance of that alleged crime or fraud." In re Grand Jury Subpoena, 223 F.3d 213, 217 (3d Cir. 2000). "The burden is not a particularly heavy one," In re Grand Jury Investigation, 445 F.3d 266, 274 (3d Cir. 2006), requiring "something to give colour to the charge," that is, "prima facie evidence that it has some foundation in fact." Clark v. United States, 289 U.S. 1, 15 (1933); compare In re Antitrust Grand Jury, 805 F.2d 155, 166 (6th Cir. 1986) ("evidence produced by the government . . . need not be as strong as that needed to effect an arrest or secure an indictment"), with In re Grand Jury Subpoena Duces Tecum (Rich), 731 F.2d 1032, 1039 (2d Cir. 1984) (equating prima facie showing with "probable cause" since both "require that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof") (citation omitted).

Here, the Government has satisfied its burden as a matter of law. Plotkin claims that her communications with counsel regarding efforts to comply with the grand jury subpoenas are privileged. However, the Grand Jury has returned an indictment charging Plotkin with obstruction of justice by intentionally concealing from the Grand Jury relevant, responsive documents. Further, the affidavits of Himmel and Kipnees — submitted with Plotkin's motion papers — demonstrate that she falsely denied that certain documents were located at SSMB's offices knowing that her false denials would be relayed to the Government.[7]  Since Plotkin used counsel to further her obstructive efforts,

---

[7]This Court may consider the allegedly privileged material in determining whether the crime-fraud exception applies. Zolin, 491 U.S. at 474-75.

19

the Government has satisfied both prongs of the crime-fraud exception.  United States v.

Davis, 1 F.3d 606, 610 (7th Cir. 1993) ("All that is needed is something 'to give color to

the charge' that Davis used Lydon as his agent in obstructing the grand jury's

investigation.  Whether pale or rich or vivid, there is indubitably color here.").

Davis is instructive because it involved a similar motion in a similar procedural

posture.  Davis was indicted for obstruction of justice after evidence surfaced that he had

intentionally concealed a subpoenaed document from the grand jury.  1 F.3d at 606.  The

Government served a trial subpoena on the "attorney who had represented Davis during

the portion of the grand jury's investigation that he allegedly obstructed."  Id. at 607.

That attorney had coordinated the production of records from Davis's employer and from

Davis personally, and he had interacted with federal prosecutors to ascertain precisely

what documents were covered by the subpoena.  Id. at 608.  Davis moved in limine to bar

the attorney's testimony as privileged, and the Government responded by invoking the

crime-fraud exception.  Id. at 609.

The Seventh Circuit carefully described the Government's position and the District

Court's ruling:

> The government's theory that certain of Davis's communications with
> Lydon fall outside the attorney-client privilege rests on the assertion that
> Davis used Lydon as his agent in perpetrating this obstruction.  The district
> court concluded that the government had established a "prima facie" case
> that Davis had "trick[ed] [Lydon] into providing false information to a
> grand jury during an investigation" and that their conversations in the
> course of this conduct are "not protected by the attorney-client-privilege."

20

Id (citation omitted).  Agreeing that "Davis apparently represented through his attorney that he had complied with the January 3 subpoena when he knew that he had not," the Seventh Circuit held that "[t]his reason . . . alone could support the court's denial of Davis's motion seeking to bar Lydon's testimony."  Id. at 610.

More recently, the Third Circuit held that the crime-fraud exception allowed the Government to compel the lawyer for a target/client to testify before the grand jury.  In re Grand Jury Investigation, 445 F.3d at 266.  The Government in that case had uncovered information indicating a conscious effort by the target/client's employer to delete e-mails she knew were responsive to a grand jury subpoena.  Id. at 268.  The Government, therefore, "sought to compel grand jury testimony regarding [the attorney's] discussions with Jane Doe as to her compliance (or apparent non-compliance) with the prior subpoenas for production of the Organization's email."  Id. at 269.  The Third Circuit agreed with the District Court that the crime-fraud exception applied because the client was obstructing justice by destroying (or encouraging the destruction of) subpoenaed materials.  Id. at 275.  The Court also agreed that the crime-fraud exception's "in furtherance of" prong is satisfied when a lawyer informs her client as to what documents the Government is seeking, and the client uses that information to place those documents beyond the reach of the grand jury,.  Id. at 278-79.

Taken together, the Third Circuit's decision in In re Grand Jury Investigation and the Seventh Circuit's decision in Davis show that the crime-fraud exception applies

where, as here, Plotkin used information she obtained from counsel to conceal relevant

documents from the grand jury.

## V.  PLOTKIN WAIVED ANY PRIVILEGE BY AFFIRMATIVELY RELYING ON COMMUNICATIONS WITH SSMB'S COUNSEL IN MOVING TO DISMISS COUNTS 30 AND 31 OF THE SUPERSEDING INDICTMENT.

Plotkin's motion falters yet another reason.  In moving to dismiss Counts 30 and

31, she contended that, "[t]hroughout the process . . . there were frequent communications

back and forth between the government and SSMB as to the documents to be produced.

In this complex scenario, **the fact that Marci Plotkin had not been asked by SSMB**

**counsel for documents . . . cannot establish a corrupt intent to obstruct**."   Plotkin

Mot. to Dismiss Br. at 13 (emphasis added).  Plotkin therefore put in issue

communications with counsel as a factual defense to the charges.  Her decision to do so

implicitly waives any attorney-client privilege regarding any such communications.

"The attorney-client privilege cannot at once be used as a shield and a sword."

United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (noting that "the privilege

may implicitly be waived when defendant asserts a claim that in fairness requires

examination of protected communications").  Thus, "[t]he attorney-client privilege is

waived for any relevant communication if the client asserts as a material issue in a

proceeding that: (a) the client acted upon the advice of a lawyer or that the advice was

otherwise relevant to the legal significance of the client's conduct."  Livingstone v. North

Belle Vernon Borough, 91 F.3d 515, 537 (3d Cir. 1996) (quoting Restatement of the Law

Governing Lawyers § 130(1) (Final Draft No. 1, 1996)); accord Rhone-Poulenc Rorer

22

Inc., 32 F.3d at 863 ("a party can waive the attorney client privilege by asserting claims that put his or her attorney's advice in issue in the litigation.").

Plotkin's prior motion took the position that she could not be convicted of obstructing justice merely because, as a matter of fact, SSMB's counsel had not yet asked her for the specific documents she is alleged to have concealed. Now, however, Plotkin takes a completely contrary position: she claims that when counsel does ask for specific documents that the Government asserts are responsive to a grand jury subpoena, her response is protected by the attorney-client privilege. A defendant may not use the privilege to prejudice her opponent's case or to disclose some selected communications for self-serving purposes. In re von Bulow, 828 F.2d 94, 101-02 (2d Cir. 1987). Because Plotkin's prior motion asserted "a claim that in fairness requires examination of protected communications," Bilzerian, 926 F.2d at 1292, she has implicitly waived any attorney-client privilege that attached to the communication identified in the Kipnees Affidavit, and to all similar communications on the same subject. See Spohler, 95 F.R.D. at 502 ("A party cannot voluntarily disclose facts in his favor before a judicial tribunal, when they are helpful to his cause, and then invoke the attorney-client privilege as a shield to prevent a searching inquiry so that a court may determine the truthfulness of the facts initially presented.").

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that Plotkin's motion should be denied.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

s/ Thomas J. Eicher

By:   THOMAS J. EICHER
       Assistant U.S. Attorney

s/ Rachael A. Honig

By:   RACHAEL A. HONIG
       Assistant U.S. Attorney

s/ Hallie Mitchell

By:   HALLIE MITCHELL
       Assistant U.S. Attorney

s/ Steven G. Sanders

By:   STEVEN G. SANDERS
       Assistant U.S. Attorney

DATED:      February 5, 2008
             Newark, New Jersey

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of February 2008, true and correct copies of the

foregoing Memorandum of the United States in Opposition to Defendant Marci Plotkin's

Motion To Suppress Affidavits and Bar Testimony Relative to Attorney-client Privileged

Communications" were served via ECF on:


Justin P. Walder, Esq.
K. Roger Plawker, Esq.
Lin Claire Solomon, Esq.
Walder, Hayden & Brogan, P.A.
5 Becker Farm Road
Roseland, NJ 07068

 Robert S. Fink, Esq.
Kostelanetz & Fink, LLP
530 Fifth Avenue
New York, NY 10036

Richard J. Schaeffer, Esq.
Dornbush Schaeffer Strongin &
  Venaglia, LLP
747 Third Avenue
New York, NY 10017


Edward J. Plaza, Esq.
Weir & Plaza, LLC
321 Broad Street
Red Bank, NJ 07701


s/Steven G. Sanders
Steven G. Sanders
steven.sanders@usdoj.gov


Dated: February 5, 2008