UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 05-249 (JLL) |
| v. | : | |
| RICHARD STADTMAUER | : | Hon. Jose L. Linares |

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO
DEFENDANT STADTMAUER'S MOTION FOR PRODUCTION OF TAX RETURNS

CHRISTOPHER J. CHRISTIE
United States Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102
(973) 645-2700

On the Brief:
Thomas J. Eicher
Rachael A. Honig
Assistant United States Attorneys

## **PRELIMINARY STATEMENT**

The United States submits this memorandum of law in response to defendant Richard Stadtmauer's Motion For Production of Tax Returns Necessary to Calculate Tax Loss. The United States respectfully reserves its right to supplement its responses by oral argument.

## BACKGROUND

On June 3, 2008, the jury returned a verdict of guilty in this matter on Count One of the Superseding Indictment, which charged the defendant with conspiring to defraud the United States and to aid and assist the preparation of false income tax returns, in violation of 18 U.S.C. § 371, and Counts Two through Five, Twelve, Thirteen, Seventeen, and Eighteen, which each charged him with in fact aiding and assisting the preparation of specific returns, in violation of 26 U.S.C. § 7206(2). All of the counts of conviction relate to defendant's involvement, during the years 1997 to 2003, in a scheme to file false and fraudulent U.S. partnership tax returns for various residential real estate partnerships that formed part of the Kushner Companies real estate empire. The tax returns in question were shown at trial to be false in four specific respects:

- The returns mischaracterized non-deductible charitable and political contributions as fully deductible "office expenses," including "contributions" that were not charitable at all but rather were private school tuition payments made for the benefit of various individuals.

- The returns mischaracterized 50 percent deductible or non-deductible meal and entertainment expenses as well as gift expenses that may only be deducted up to a $25 limit as fully deductible "office expenses."

- The returns included, and fully deducted, expenses that were incurred on behalf of and for the benefit of other taxpayers and were therefore not deductible at all.

- The returns mischaracterized capital expenditures, which must be depreciated over time, as immediately deductible business expenses.

At trial, the government presented evidence summarizing these false deductions through the testimony of and summary charts prepared by Internal Revenue Service ("IRS") Revenue Agent Susan Grant. These charts showed that at least $6,333,258 in false deductions were claimed on the partnership returns in question during the years alleged in the Superseding Indictment.

On June 18, 2008, fifteen days after the jury's verdict, defense counsel wrote to the government and demanded to know the basis for the estimated sentencing range set forth in the press release issued by the U.S. Attorney's Office after the verdict was returned. (See September 12, 2008 Declaration of Robert Fink (hereinafter, "Fink Decl."), Exhibit A.) The government responded on June 23, 2008, and indicated that the tax loss calculations underlying the estimated sentencing range provided in the press release were based on Agent Grant's charts and that discussion of specific sentencing issues should be reserved until a Presentence Report ("PSR") could be prepared, giving each party a chance to respond and present its position to this Court. (See Fink Decl., Exhibit B.) Sentencing currently is scheduled for November 5, 2008, and no PSR has yet been finalized, nor has either party filed a sentencing memorandum with the Court.

Nevertheless, defendant has filed the instant motion, attacking "the government's shortcut, formulaic percentage calculation of tax loss" (Memorandum in Support of Motion for Production of Tax Returns Necessary to Calculate Tax Loss (hereinafter "Def. Br.") at 4) and demanding that the Court order that the government "collect from the IRS" and produce to the defendant every tax return of every partner in the real estate partnerships involved in this case for the eleven-year period from 1997 through and including 2007 so that defendant may endeavor to prove that the "actual tax loss" in this matter is far lower than the figure that results from the application of the presumptive tax rate set forth in the Guidelines to the total amount of false deductions summarized in Agent Grant's charts. For the reasons set forth below, defendant's motion must be denied.

3

**ARGUMENT**

**I.        Section 6103 of the Internal Revenue Code Does Not Permit Either the "Collection" or the "Production" that Defendant Seeks.**

Defendant Stadtmauer's motion makes the audacious request that this Court "order the prosecution to collect from the Internal Revenue Service and produce to the defense all tax returns of partners in Kushner Companies' real estate partnerships . . . for the tax years 1997 to 2007 . . . ." (Def. Br. at 1.) The slender reed upon which defendant attempts to support this request is Section 6103 of the Internal Revenue Code, which authorizes the government — not the defense — to request certain tax returns from the IRS in connection with a grand jury or other judicial proceeding and, once received, permits the government to disclose them under certain specified circumstances. As this Court previously noted in the section of its January 10, 2008 Order ruling on the government's motion to quash certain trial subpoenas issued to the IRS,[1] Section 6103 is not a vehicle for defense discovery requests, and it nowhere provides that the government may be compelled to collect from the IRS and produce to the defense tax returns that the defense has decided that it wishes to view for its own reasons. To recast Section 6103 in this light turns it on its ear and threatens to eradicate its purpose of strictly limiting the dissemination and public release of taxpayer information.

Defendant cites several cases dealing with the issue of *disclosure* under Section 6103, primarily cases in which the prosecution already had certain tax returns or return

---

[1]        In that Order, the Court concluded that it "agrees with the Chamberlain [v. Kurtz, 589 F.2d 827 (5th Cir. 1979)] court and finds that § 6103(h) governs the release of return and return information primarily to Federal officers and employees rather than taxpayers or third parties" and that § 6103(h)(4) (relied upon here by defendant) "would most likely only permit disclosure of documents *that had already been delivered to other federal officers or employees*." (January 10, 2008 Order at 20, 21) (emphasis added).

4

information in its possession and itself sought to disclose that information in a public proceeding. See Davidson v. Brady, 559 F. Supp. 456 (W.D. Mich. 1983) (prosecution attached return information to publicly-filed sentencing memorandum); Tavery v. United States, 32 F.3d 1423 (10th Cir. 1994) (prosecution disclosed return in proceeding regarding whether taxpayer's husband qualified for court-appointed counsel). This is an issue that falls squarely within the four corners of the statute, which expressly provides that "[a] return or return information may be disclosed in a Federal or State judicial . . . proceeding pertaining to tax administration" so long as either the treatment of an item reflected on the return is directly related to the resolution of an issue in the proceeding or the return or return information directly relates to a transactional relationship between a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding. 26 U.S.C. § 6103(h)(4). Some courts have extended this somewhat, construing Section 6103 to authorize not only the voluntary disclosure by the prosecution of returns and return information in its possession, but also the compelled production, upon defense request, of such information. See, e.g., United States v. Lloyd, 992 F.2d 348 (D.C. Cir. 1993); Confidential Informant v. United States, 45 Fed. Cl. 556 (U.S. Ct. Fed. Cl. 2000) (cited by defendant).[2] No case cited by defendant, however — and indeed, no case that the government could find — takes the further leap that defendant counsels and holds that a court may, upon a defense request, compel the prosecution to "collect" tax returns that are *not* already in its possession and then turn them over to the defense. To do so would be to

---

[2] Defendant also cites United States v. Schroeder, 536 F.3d 746 (7th Cir. 2008), which stands for the unexceptional proposition that if the prosecution has chosen to disclose certain return information by using it as a basis for its proposed loss figure, then it must make the underlying tax returns available to the defense.

5

subvert Section 6103 utterly and turn it into a defense discovery device.

The government does have certain tax returns already in its possession that are responsive to defendant's request, and, as it has previously informed defendant (see Fink Decl., Exhibit D), is willing to make this return information available to defendant upon entry of the appropriate Order by the Court authorizing such disclosure, limiting the return information that will be disclosed to the specific information that defendant seeks (once that specific information is identified by defendant), and protecting the confidentiality of the third-party taxpayers by restricting further disclosure.[3]  There is no basis in the law, however, for compelling the government to collect hundreds of additional tax returns relating to third parties for disclosure to the defendant, especially, as discussed below, given their exceedingly limited relevance to the matters to be determined at sentencing.

**II.        The Tax Returns Defendant Seeks Are Not "Necessary" to Calculate the Tax Loss In this Matter.**

The lack of authority in Section 6103 for the "collection" and "production" of tax returns upon defense request requires that defendant's motion be denied on that basis alone.  It is worth noting, however, that even if Section 6103 did authorize such disclosures, tax returns and return information may be disclosed to third parties such as the defendant "only to the extent necessary" and "only if [the purpose or activity for which the disclosure is being made] cannot otherwise properly be accomplished without making such disclosure."  26 C.F.R. § 301.6103h(2)-1.  Despite defendant's claims to the contrary, the third-party tax returns he seeks

---

[3] The government will provide a proposed form of order once defendant identifies precisely what return information he requires.  The government does not believe that the entire return should be disclosed to defendant, as it contains a substantial amount of other personal information that is not necessary to the calculations defendant apparently intends to undertake.

6

are not remotely "necessary" to the calculation of the tax loss in this matter.

Defendant correctly states that the government did not try to prove at trial in this matter, and the jury was not asked to find, a specific tax loss. Defendant was convicted of conspiring to aid and assist in and in fact aiding and assisting in the preparation of false tax returns, and the government proved what the statutes of conviction required: that the tax returns at issue contained materially false deductions. Tax loss was not an element of any of the offenses charged. The U.S. Sentencing Guidelines, which are of course advisory only, explicitly provide that in a false deduction case, the tax loss presumptively is to be calculated by adding up all of the false deductions and multiplying the total by 28 percent. See U.S.S.G. § 2T1.1(c)(1) n.B ("If the offense involved improperly claiming a deduction . . . the tax loss *shall* be treated as equal to 28% of the amount of the improperly claimed deduction . . . unless a more accurate determination of the tax loss can be made.") (Emphasis added.) The Application Notes make clear that this presumption *must* be used "unless the government or the defense provides sufficient information for a more accurate assessment of the tax loss." Id., appl. n.1. The Guidelines further recognize that where the amount of the tax loss is uncertain, "the guidelines contemplate that the court will simply make a reasonable estimate based on the facts." Id.

Defendant's brief is replete with misstatements and mischaracterizations of the law. For example, defendant claims that it is "the government's burden to prove an actual tax loss by a preponderance of the evidence." (Def. Br. 2.) This is absolutely false. It is the government's burden to prove the amount of false deductions by a preponderance of the evidence; the Guidelines then provide that the 28 percent calculation presumptively applies unless either the government or the defense chooses to provide information from which a more

7

accurate assessment can be made. Even then, it is entirely up to the sentencing court as to whether it will use such an alternative assessment rather than the presumptive approach set forth in the Guidelines. See United States v. Hatch, 514 F.3d 145, 167 (1st Cir. 2008) (providing that the court "may" accept a different tax loss calculation provided by either the government or the defense). "Actual tax loss" is not an element of any of the offenses of conviction in this case, and it is not a requirement of the Guidelines. See United States v. Gricco, 277 F.3d 339, 356 (3d Cir. 2002) (holding that "[t]he district court was not obligated to pore through the tax returns of all of the participants in the [crime] to determine the exact amount of unreported income").

Defendant also states blithely that "[t]he calculation of tax loss for criminal sentencing must take into account how a deduction would have been treated for tax purposes if it had been properly characterized" and that "tax loss under § 2T1.1 is intended to reflect the revenue loss to the government from the defendant's behavior." (Def. Br. at 8) (citations and punctuation omitted). Defendant conveniently fails to mention that the two cases from which he has derived these alleged principles of law, United States v. Martinez-Rios, 143 F.3d 662 (2d Cir. 1998), and United States v. Gordon, 291 F.3d 181 (2d Cir. 2002), and the principles themselves, have been roundly rejected by every other court of appeals to consider the issue. See United States v. Delfino, 510 F.3d 468, 472 (4th Cir. 2007) (tax loss is attempted or intended loss, not actual revenue loss to the government; court not required to "reconstruct . . . income tax returns *post hoc* in order to determine what tax consequences would have been"); United States v. Chavin, 316 F.3d 666, 677-678 (7th Cir. 2002) (tax loss is attempted or intended loss, not actual revenue loss; court would not attempt to "recreate a 'perfect' tax return" in order to calculate actual tax loss); United States v. Spencer, 178 F.3d 1365, 1368 (10th Cir. 1999)

8

(holding that it would be "unreasonable" to require either the government or the court to closely scrutinize a large number of tax returns in order to generate an actual loss figure). The reason is clear, especially in a case such as this one. It would be unreasonable, impractical, and contrary to the plain language of the Guidelines to require first the government and then the Court to (a) reconstruct what each partnership tax return would have looked like had it been properly prepared; (b) hypothesize as to what would have been reported to each of the partnerships' partners on their individual Forms K-1 on the basis of these reconstructed returns; (c) speculate as to how each of these individual partners would have reported this information on their individual income tax returns; and then (d) calculate the so-called "actual revenue loss" to the government as a result.

Not only would this be incredibly time-consuming, given the hundreds of tax returns that would have to be scrutinized, it would also involve rank speculation. For example, while defendant correctly notes that charitable contributions, if properly reported on the partnership returns, "may yet have been properly deductible if passed through to the partners," (Def. Br. at 3), the critical term in that phrase is "may." There is no way to know which charitable contributions would have been passed through to which partners, and what those partners would have chosen to do with that information had it appeared on their Forms K-1. For example, the charitable contributions made by Westminster Management, which was owned approximately 50 percent each by Charles Kushner and the defendant, were in some years passed through on a pro rata basis (*i.e.*, shared equally by Kushner and the defendant) and in other years passed through entirely to the defendant. Indeed, given that the evidence at trial demonstrated that the charitable contributions in this case were often wholly personal to Kushner, it would be

9

reasonable to assume that the majority of the contributions at issue in this should have been passed through to him and, eventually, lost, given that Kushner consistently reported a negative adjusted gross income and therefore was unable to claim deductions for charitable contributions. Again, however, this is pure speculation.

In addition, the data that defendant seeks may very well be incomplete at this point. Defendant argues that the IRS may have suffered little to no tax loss from the artificially-inflated losses that the partnerships passed through to their partners as a result of the false deductions, given that partners may not have been able to deduct these passive-activity losses in full in the year the losses were reported. (Def. Br. at 10.) But as defendant further acknowledges, those unused losses simply would have been carried forward from year to year pursuant to 26 U.S.C. § 469, and could have been claimed at the time the properties were sold, an event that occurred in 2007. Tax returns for 2007 were due to be filed on April 15, 2008 (mid-trial in this matter), but taxpayers who requested an automatic extension have until October 15, 2008, to file. Therefore, it is very possible that many of the documents that defendant seeks do not yet exist, or at least, are not in the hands of the IRS. Moreover, the fact that the artificially-inflated losses could have been claimed as a deduction at *some* point, be it in the year they were first reported or in 2007, tends to disprove defendant's claim that the actual tax loss in this matter is likely to be minimal in relation to the presumptive estimate provided by the Guidelines. And again, how various partners "might have" deducted partnership losses at different points in time had they been reported differently is the kind of speculation that simply cannot lead to a "more accurate assessment" of the tax loss in this matter.

10

In sum, it is neither the obligation of the government nor the Court to attempt to calculate an actual tax loss in this matter, nor is such a number "reasonably ascertainable" under the facts and circumstances if this case. U.S.S.G. § 2T1.1, appl. n.1. Therefore, there is no necessity for the information defendant seeks. While defendant is free to proffer whatever calculations he would like the Court to consider based on available evidence, the Court is not bound to accept them, nor is the Court permitted by Section 6103 to authorize the disclosure of hundreds of third-party tax returns in aid of defendant's endeavor. Such disclosure would not only breach the established law of taxpayer confidentiality; it would cause serious delay to the sentencing proceedings in this matter and unnecessarily complicate the Court's inquiry with unhelpful, *post hoc* speculation about what might have happened in a world where the co-conspirators in this case chose to follow the law rather than violate it brazenly.

**CONCLUSION**

For the foregoing reasons, the United States respectfully submits that defendant's Motion For Production of Tax Returns must be (1) denied as to tax returns and return information not in the possession of the prosecution; and (2) granted as to return information in the possession of the prosecution, subject to the entry of an appropriate protective order setting forth precisely what return information must be disclosed and restricting the further disclosure of such information.

        Respectfully submitted,

        CHRISTOPHER J. CHRISTIE
        United States Attorney

        s/Rachael A. Honig

By:   THOMAS J. EICHER
      RACHAEL A. HONIG
      Assistant U.S. Attorneys

DATED:   September 25, 2008
              Newark, New Jersey

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 25th day of September, 2008, a true and correct copy of the foregoing Memorandum of the United States In Opposition to Defendant Stadtmauer's Motion For Production of Tax Returns was sent <u>electronically</u> to:

| | |
|---|---|
| Robert S. Fink, Esq. | David M. Zinn, Esq. |
| Megan L. Brackney, Esq. | Williams & Connolly LLP |
| Kostelanetz & Fink, LLP | 725 Twelfth St., N.W. |
| 7 World Trade Center | Washington, D.C. 20005 |
| New York, NY 10007 | |

             <u>s/Rachael A. Honig</u>
             Rachael A. Honig

Dated: September 25, 2008